No. 14-55873 [DC 2:11-cv-09916-SJO-SS]

IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Charles Nichols,

*Plaintiff-Appellant*

v.

Edmund Brown, Jr., in his official capacity as the Governor of California
and
Kamala Harris in her official capacity as the Attorney General of California

*Defendants-Appellees.*

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
[DC 2:11-cv-09916-SJO-SS]

APPELLANT'S OPENING BRIEF

Charles Nichols
PO Box 1302
Redondo Beach, CA 90278
Tel. No. (424) 634-7381
e-mail: CharlesNichols@Pykrete.info
In Pro Per

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION............................................................1

INTRODUCTION.....................................................................................4

STATEMENT OF THE ISSUES.............................................................11

STATEMENT WITH RESPECT TO ADDENDUM...............................11

STATEMENT OF THE CASE.................................................................12

SUMMARY OF ARGUMENT................................................................23

STANDARDS OF REVIEW...................................................................30

ARGUMENT...........................................................................................33

    I.     Improper Dismissal of the State Law Claims with Prejudice.............33

    II.    Improper Dismissal of Governor Brown with Prejudice....................34

    III.   The Second Amendment Right Extends Beyond the Interior of One's

           Home.................................................................................................37

    IV.   The Prohibitions and Restrictions on Licenses to Openly Carry a

           Firearm Violate The Federal Constitution...........................................63

    V.    PC25850(b) Violates the Fourth Amendment.....................................65

    VI.   Laws Challenged in This Appeal Violate the Due Process and Equal

    Protection Clauses of the Fourteenth Amendment.......................................80

i

VII.   "Prohibited Areas" is Void for Vagueness and Violates Due Process.83

CONCLUSION........................................................................................................92

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*AE ex rel. Hernandez v. County of Tulare,*
  666 F.3d 631 (9th Cir. 2012)..............................................................31

*Am. Acad. of Pain Mgmt. v. Joseph,*
  353 F.3d 1099 (9th Cir. 2004)............................................................30

*Arizona v. Hicks,*
  480 U.S. 321 (US Supreme Court 1987).......................................72, 79

*Atwood v. State,*
  53 Ala. 508 (1875).............................................................................60

*Aymette v. State,*
  21 Tenn. (2 Hump.) 154 (1840).........................................................59

*Baker v. State,*
  49 Ala. 350 (1873).............................................................................60

*Caetano v. Massachusetts,*
  136 S. Ct. 1027 (US Supreme Court 2016)............................38, 52, 53

*Carroll v. State,*
  28 Ark. 99, 18 Am. Rep. 538 (1872)..................................................60

*Carroll v. United States,*
  267 US. 132 (US Supreme Court 1925)..............................................76

*Carson Harbor Village, Ltd. v. City of Carson,*
  353 F.3d 824 (9th Cir. 2004)..............................................................30

*Cholla Ready Mix, Inc. v. Civish,*
  382 F.3d 969 (9th Cir. 2004)..............................................................31

*CITY OF L. A. V. PATEL,*
    135 S.Ct. 2443 (US Supreme Court 2015)...........................................68

*Coalition to Defend Affirmative Action v. Brown,*
    674 F.3d 1128 (9th Cir. 2012)...........................................31

*Commonwealth v. McNulty,*
    28 Leg. Intel., 389, 8 Phila. 610 (Penn. 1871).......................................60

*Conley v. US,*
    79 A. 3d 270, 283 (DC Court of Appeals 2013)...................................90

*Connally v. General Construction Co.*
    269 U.S. 385 (US Supreme Court 1926).......................................84, 86

*Cutsinger v. Commonwealth, 70 Ky.*
    (7 Bush) 392 (1870)...........................................60

*Day v. State, 37 Tenn.*
    (5 Sneed) 495 (1857)...........................................60

*Del Campo v. Kennedy,*
    517 F.3d 1070 (9th Cir. 2008)...........................................30

*Desertrain v. City of L. A.,*
    754 F.3d 1147 (9th Cir. 2014)...........................................86

*Dimaya v. Lynch,*
    803 F.3d 1110 (9th Cir. 2015)...........................................86

*District of Columbia v. Heller,*
    128 S. Ct. 2783 (US Supreme Court 2008)...................................*passim*

*Dunlap v. Credit Protection Ass'n LP,*
    419 F.3d 1011 (9th Cir. 2005)...........................................30

*Eslava v. State,*
    49 Ala. 355 (1873)...........................................60

*Evins v. State,*
  46 Ala. 88 (1871)...............................................................................60

*Fairbanks North Star Borough v. United States Army Corps of Eng'rs,*
  543 F.3d 586 (9th Cir. 2008)................................/...........................30

*FLORIDA v. J. L,*
  529 U.S. 266 (US Supreme Court 2000)............................................74

*Florida v. Jardines,*
  133 S. Ct. 1409 (US Supreme Court 2013).......................................71

*Flowers v. First Hawaiian Bank,*
  295 F.3d 966 (9th Cir. 2002)...........................................................31

*Gallardo v. Lynch,*
  818 F.3d 808, 819 (9th Cir. 2016)....................................................86

*Gasho v. US,*
  39 F.3d 1420 (9th Cir. 1994)....................................................68, 75

*Gholson v. State,*
  53 Ala. 519, 25 Am. Rep. 652 (1875)..............................................60

*Graham v. Richardson,*
  403 U.S. 365 (US Supreme Court 1971)...........................................80

*GRAVES v. CITY OF COEUR D'ALENE,*
  339 F.3d 828 (9th Cir. 2003)...........................................................68

*Hill v. Blind Indus. & Servs. of Md.,*
  201 F.3d 1186 (9th Cir. 2000)..........................................................30

*Hill v. State,*
  53 Ga. 472 (1874)...........................................................................60

*Holley v. California Dep't of Corr.,*
  599 F.3d 1108 (9th Cir. 2010)..........................................................31

iii

*Holz v. Nenana City Pub. Sch. Dist.,*
  347 F.3d 1176 (9th Cir. 2003).................................................................31

*Hopkins v. Commonwealth,*
  66 Ky. (3 Bush) 480 (1868)...................................................................60

*HORTON v. CALIFORNIA,*
  496 U.S. 128 (US Supreme Court 1990)................................................73

*HUNT v. CITY OF LOS ANGELES,*
  638 F.3d 703 (9th Cir. 2011).................................................................85

*Hunter v. Underwood,*
  471 US 222 (US Supreme Court 1985)....................................................9

*Hyland v. Wonder,*
  117 F.3d 405 (9th Cir. 1997).................................................................30

*Hyland v. Wonder,*
  127 F.3d 1135 (9th Cir. 1997)...............................................................30

*In re HH,*
  174 Cal. App. 4th 653 (Cal. App. 2009)................................................67

*In re Rameriz,*
  193 Cal. 633 [226 P. 914, 34 A.L.R. 51] (Cal. Supreme Court 1924)....................8

*ITSI TV Prods., Inc. v. Agric. Ass'ns,*
  3 F.3d 1289 (9th Cir. 1993)...................................................................30

*Jackson v. City and County of San Francisco,*
  746 F. 3d 953 (9th Cir. 2014)..........................................................20, 53

*Jewel v. Nat'l Sec. Agency,*
  673 F.3d 902 (9th Cir. 2011).................................................................31

*Johnson v. United States,*
  135 S. Ct. 2551 (US Supreme Court 2015)......................................85-86

iv

*Jones v. State*,
   51 Ala. 16 (1874)...............................................................................60

*Kitchen v. Herbert*,
   755 F.3d 1193 (10th Cir. 2014)........................................................36

*Lacey v. Maricopa County*,
   693 F. 3d 896 (9th Cir. 2012)....................................................32, 65

*Lockett v. State*,
   47 Ala. 42 (1872)...............................................................................60

*LOS ANGELES COUNTY BAR ASS'N v. EU*,
   979 F.2d 697 (9th Cir. 1992)............................................................35

*Lovell v. Chandler*,
   303 F.3d 1039 (9th Cir. 2002).........................................................31

*Lucas v. Dep't of Corr.*,
   66 F.3d 245 (9th Cir. 1995).............................................................31

*Lyon v. Chase Bank USA, NA*,
   656 F.3d 877 (9th Cir. 2011)...........................................................30

*Maxwell v. State*,
   38 Tex. 170 (1873)............................................................................60

*McDonald v. City of Chicago, Ill.*,
   130 S. Ct. 3020 (US Supreme Court 2010)............................20, 38, 45-48, 53, 78

*Moore v. Madigan*,
   702 F. 3d 933 (7th Cir. 2012)...........................25-26, 49-50, 55-56, 62

*Morton v. State*,
   46 Ga. 292 (1872).............................................................................60

*Murphy v. Robert Guerrero, et al.*,
   1:14-CV-00026, 2016 WL 5508998, (D.N. Mar. Is. Sept. 28, 2016)..............58-59

*Northrup v. City of Toledo Police Dep't,*
    785 F.3d 1128 (6th Cir. 2015).........................................................................76-77

*Nunn v. State,*
    1 Ga. (1 Kel.) 243 (1846)..................................................................................59

*Obergefell v. Hodges,*
    135 S.Ct. 2071 (US Supreme Court 2015)..........................................................82

*Oki Semiconductor Co. v. Wells Fargo Bank,*
    298 F.3d 768 (9th Cir. 2002)..............................................................................32

*Owen v. State,*
    31 Ala. 387 (1858).............................................................................................60

*Palmer v. District of Columbia,*
    59 F.Supp.3d 173 (2014)....................................................................................58

*People v. Aguilar,*
    2 NE 3d 321 (Ill. Supreme Court 2013).............................................................50

*People v. Chance,*
    44 Cal.4th 1164 (Cal. App. 2008)......................................................................53

*People v. Clark,*
    45 Cal. App. 4th 1147, 53 Cal. Rptr. 2d 99 (Cal. App. 1996)..............................85

*People v. Jones,*
    278 P. 3d 821 (Cal. Supreme Court 2012)....................................................44, 79

*PEOPLE v. KNIGHT,*
    121 Cal.App.4th 1568 (Cal. App. 2004).......................................................78, 87

*People v. Mitchell,*
    209 Cal. App. 4th 1364 (Cal. App. 2012)...........................................................59

*People v. Muniz,*
    4 Cal.App.3d 562 (Cal. App. 1970)....................................................................73

vi

*People v. Overturf,*
  64 Cal. App. 3d 1 (Cal. App. 1976)...............................................................43, 71

*People v. Rappard,*
  28 Cal. App. 3d 302 (Cal. App. 1972)....................................................................8

*People v. Seale,*
  274 Cal. App. 2d 107 (Cal. App. 1969)................................................................80

*People v. Strider,*
  177 Cal. App. 4th 1393 (Cal. App. 2009).......................................................43, 72

*People v. Vega,*
  18 Cal. App. 3d 954 (Cal. App. 1971).................................................................88

*People v. VILLASENOR-LOPEZ,*
  1st Appellate Dist., 2nd Div. No.: A142379 (Cal. App. August 14, 2015)...........88

*Peruta v. County of San Diego,*
  824 F. 3d 919 (9th Cir. 2016)........................................................................*passim*

*Peterson v. California,*
  604 F.3d 1166 (9th Cir. 2010)...............................................................................30

*Porter v. State,*
  66 Tenn. (7 Baxt.) 106 (1874)...............................................................................60

*Rupf v. Yan,*
  102 Cal. Rptr. 2d 157 (Cal. App. 2000)................................................................85

*Sears v. State,*
  33 Ala. 347 (1859).................................................................................................60

*Smith v. Pacific Props. & Dev. Corp.,*
  358 F.3d 1097 (9th Cir. 2004)...............................................................................32

*State v. Buzzard,*
  4 Ark. (2 Pike) 18 (1842).......................................................................................59

vii

*State v. Chandler,*
    5 La. Ann. 489, 52 Am. Dec. 599 (1850)...............................................59

*State v. Duzan,*
    6 Blackf. 31 (Ind. 1841).........................................................................59

*State v. Jumel,*
    13 La. Ann. 399 (1858).......................................................................... 60

*State v. Mitchell,*
    3 Blackf. 229 (Ind. 1833).......................................................................59

*State v. Reid,*
    1 Ala. 612, 35 Am. Dec. 44 (1840).................................................56, 59

*State v. Smith,*
    11 La. Ann. 633, 66 Am. Dec. 208 (1856)............................................60

*State v. Wilburn,*
    66 Tenn. (7 Bax.) 57, 32 Am. Rep. 551 (1872)....................................60

*Stockdale v. State,*
    32 Ga. 225 (1860)..................................................................................60

*Stroud v. State,*
    55 Ala. 77 (1876)...................................................................................60

*Sutton v. State,*
    12 Fla. 135 (1867).................................................................................60

*Thinket Ink Info Res., Inc. v. Sun Microsystems, Inc.,*
    368 F.3d 1053 (9th Cir. 2004)...............................................................31

*Thomas v. Dillard,*
    818 F.3d 864, 884 (9th Cir. 2016).........................................................68

*Titus v. State,*
    42 Tex. 578 (1875)................................................................................60

viii

*U.S. v. JOHNSON,*
256 F.3d 895 (9th Cir. 2001)...............................................................75

*U.S. v. PURDY,*
264 F.3d 809 (9th Cir. 2001)...............................................................83

*U.S. V. STRUCKMAN,*
603 F.3d 731 (9th Cir. 2010)...............................................................71

*US v. Black,*
707 F. 3d 531 (4th Cir. 2013)...............................................................70

*US v. Brady,*
819 F. 2d 884 (9th Cir. 1987)...........................................................74-76

*US v. Chovan,*
735 F. 3d 1127 (9th Cir. 2013)......................................................20, 57

*US v. Cureton,*
739 F. 3d 1032 (7th Cir. 2014)............................................................55

*US v. Henry,*
688 F. 3d 637 (9th Cir. 2012)..............................................................63

*US v. Jefferson,*
566 F.3d 928 (9th Cir. 2009)...............................................................66

*US v. Nora,*
765 F. 3d 1049 (9th Cir. 2014)..........................................69-70, 72-73

*US v. Paredes,*
388 F. Supp. 2D 1185 (Dist. Court, D. Hawaii 2005).........................75

*US v. Prescott,*
581 F.2d 1343 (9th Cir. 1978)..............................................................68

*US v. Vongxay,*
594 F. 3d 1111 (9th Cir. 2010)........................................................68-69

ix

*Valle Del Sol Inc. v. Whiting,*
   732 F.3d 1006 (9th Cir. 2013)..................................................................87

*Viewtech, Inc., v. United States,*
   653 F.3d 1102 (9th Cir. 2011)..................................................................30

*Walls v. State,*
   7 Blackf. 572 (Ind. 1845)........................................................................59

*Warren v. Fox Family Worldwide , Inc.,*
   328 F.3d 1136 (9th Cir. 2003)..................................................................30

*Watison v. Carter,*
   668 F.3d 1108 (9th Cir. 2012)..................................................................33

*Wright v. Commonwealth,*
   77 Pa. 470 (1875)...................................................................................60

*Yick Wo v. Hopkins,*
   118 U.S. 356 (US Supreme Court 1886)...................................................80

## Constitutional Provisions

U.S. Const. amend. II……………………………………………....…*passim*

U.S. Const. amend. IV…………………………...……………….…*passim*

U.S. Const. amend. XIV…………………………………...……*passim*

Cal. Const., art. 5, § 1…………………………………...........…………36

Cal. Const., art. 5, § 5…………………………………...............…36

Cal. Const., art. 5, § 13………………………….…...............…35, 36

## California Statutes

Cal. Fish & Game Code § 3004.............................................................89
Cal. Government Code § 20...................................................................88
Cal. Government Code § 12010............................................................36
Cal. Government Code § 12011............................................................36
Cal. Penal Code § 415.........................................................................90
Cal. Penal Code § 626.9.......................................13, 22, 35, 52
Cal. Penal Code § 830.8.......................................................................49
Cal. Penal Code § 16520......................................................................52
Cal. Penal Code § 16530......................................................................44
Cal. Penal Code § 17030......................................................................87
Cal. Penal Code § 25400.................................................................44, 55
Cal. Penal Code § 25605......................................................................63
Cal. Penal Code § 25850................................................................*passim*
Cal. Penal Code § 25900......................................................................48
Cal. Penal Code § 26000......................................................................48
Cal. Penal Code § 26005......................................................................48
Cal. Penal Code § 26010......................................................................49
Cal. Penal Code § 26015......................................................................48
Cal. Penal Code § 26020......................................................................49
Cal. Penal Code § 26025......................................................................48
Cal. Penal Code § 26030......................................................................48
Cal. Penal Code § 26040......................................................................49
Cal. Penal Code § 26050......................................................................49
Cal. Penal Code § 26055......................................................................49
Cal. Penal Code § 26150.......................................22, 23, 49, 64, 92
Cal. Penal Code § 26155........................................22, 23, 49, 64, 92
Cal. Penal Code § 26175..................................................22, 64
Cal. Penal Code § 26350............................................... *passim*
Cal. Penal Code § 26400............................................... *passim*
Cal. Penal Code § 29805......................................................................35

## Other Authorities

Heller, Joseph. Catch-22, a Novel. New York: Simon and Schuster, 1961.
Print................................................................................19, 52, 68

## STATEMENT OF JURISDICTION

Plaintiff-Appellant Nichols is now, and at all relevant times, a native born US citizen and resident of Los Angeles County California who invoked the district court jurisdiction under 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. §§ 1983, 1985, 1986, 1988 against the Defendants-Appellees in their official capacity as Governor and Attorney General of the State of California seeking prospective injunctive and declaratory relief against various State of California *prohibitory* Penal Code laws which prohibit him from openly carrying loaded and unloaded firearms for the purpose of self-defense in the curtilage of his home, on his private property, in and on his motor vehicle including any attached camper or trailer regardless of whether or not they are used as a residence and in non-sensitive public places.

Plaintiff-Appellant Nichols asked for both an application and a license to openly carry a loaded handgun from the Chief of Police for the City of Redondo Beach but was denied both not because he lacked "good cause" (Plaintiff has a documented death threat against him) or lacked "good moral character" or for any presumptively lawful restriction on the issuance of *concealed carry* permits. He

1

was denied a handgun Open Carry license because he resides in a county of 200,000 or more persons and California law prohibits the issuance of handgun Open Carry licenses in counties with 200,000 or more persons. Plaintiff-Appellant Nichols also made vagueness and due process challenges in his Second Amended Complaint "SAC". ER216-256.

The district court entered a final judgment in favor of Defendants on May 1, 2014, which disposed of all of Plaintiff's claims. ER1.

The district court improperly dismissed Governor Brown with prejudice pursuant to the Eleventh Amendment and for lack of subject matter jurisdiction pursuant to Rule 12(b)(6). Plaintiff's claims under the California Constitution were improperly dismissed with prejudice pursuant to the Eleventh Amendment on May 7, 2012. ER109-111.

Plaintiff-Appellant Nichols was instructed by the court below not to file a notice of appeal until judgment was entered by the district court and he was instructed that he may not include any claims dismissed without leave to amend. ER146, 63.

2

Plaintiff filed a timely notice of appeal on May 27, 2014; see Fed. R. App. P. 4(a)(1)(A).   ER148-163.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## INTRODUCTION



**Press Reacts to Black Panther Demonstration at California Capitol Building**



**Members of the Black Panther Party for Self-Defense Being Arrested**

The reason why it is today illegal in California to openly carry loaded firearms for the purpose of self-defense in incorporated cities and in unincorporated county territory where the discharge of firearms is prohibited is because on May 2, 1967, thirty armed men and women of the Black Panther Party for Self-Defense staged an impromptu demonstration in the California State Capitol bearing arms.

They were there to protest a bill which was being heard in committee that day, a bill which was introduced because they had been openly carrying firearms in the City of Oakland, California much to the annoyance of the local police and local government officials.

The two photographs above show the press reaction and their arrest. Although their protest was peaceful and they had not broken any laws, they were ultimately charged with conspiracy to commit a misdemeanor, a felony in California.

The Mulford Act of 1967 was rushed through the legislature as "emergency legislation" and signed into law in July of 1967. The bill created a number of crimes including a prohibition on the carrying of firearms in and around the State

Capitol (which is not at issue here) and a ban on openly carrying loaded firearms (which is at issue here).

On February 29, 1969, the Seattle Washington chapter of the Black Panther Party for Self-Defense held a similar demonstration on the Washington State Capitol steps.



**1969 Black Panther Demonstration at the Washington State Capitol**

The response of the Seattle state police and the Washington legislature was very different from that of California's. *They did nothing.* No arrests. No Open Carry bans. It remains legal today to openly carry loaded and unloaded firearms in

6

the cities (incorporated and unincorporated) and counties of Washington State and to do so without a license.

Two different West Coast states, two very different reactions. Perhaps the different reactions can be attributed to the long history of racist laws in California? When the members of the Black Panther party staged their demonstrations it was illegal for Latinos and Chinese to even possess a concealable firearm in the State of California let alone to carry one in public thanks to legislation sponsored by the National Rifle Association and enacted in 1923.

The National Rifle Association also helped write the Mulford Act of 1967 and fought vigorously to uphold California's Loaded Open Carry ban (and the two recently enacted bans on openly carrying unloaded firearms) in *Edward Peruta, et al v. County of San Diego, et al* No.: 10-56971. And let us not forget that the NRA also argued in *Peruta* in support of the California Gun-Free School Zone Act of 1995 which bans the possession of handguns within 1,000 feet of a K-12 public or private school unless one has a license to carry a handgun (or has permission from the school) unless the handguns are transported unloaded and in a fully enclosed locked container.

7

In 1924, the California Supreme Court would uphold this state's racist handgun ban in *In re Rameriz*, 193 Cal. 633 [226 P. 914, 34 A.L.R. 51] (1924). That racist California handgun ban was eventually struck down in *People v. Rappard*, 28 Cal. App. 3d 302 (1972) but that does not negate the racial motivation for enacting the California Loaded Open Carry ban or negate its disproportionate enforcement against minorities. Neither are the more recently enacted bans on openly carrying unloaded firearms untainted. The California legislature enacted those two bans "to close the loophole" in the 1967 Black Panther Loaded Open Carry ban.

And, of course, the racially discriminatory effect of California's handgun licensing scheme remains as licenses to openly carry loaded handguns (which in turn exempts one from the Unloaded Open Carry bans) are only available in the predominantly White counties of the State of California which have a population of fewer than 200,000 people and are only valid in the county of issuance.

The court below did not hold that race wasn't a motivation in enacting the 1967 Loaded Open Carry ban (now codified as California Penal Code section "PC" 25850 in part). Indeed, the evidence submitted left no doubt that race was the sole

motivating factor.  Nor did the court below hold that PC25850 is not

disproportionately enforced against racial minorities, as the evidence proving that

came from Defendant-Appellee Harris' own official website and her Department of

Justice which maintains a database of arrests which includes the race of the persons

arrested.  The court below did not hold that PC25850 wasn't enforced against

Plaintiff-Appellant Nichols because it was and he submitted video proof of its

enforcement.

Instead, the court below held that Plaintiff-Appellant Nichols could not

challenge the ban because he did not plead that the ban had been enforced against

him *because of his race.*  Curiously, Victor Underwood of *Hunter v. Underwood*,

471 US 222 - Supreme Court (1985) was White *Id* at 224 and therefore could not

have plead that the law, which was racially motivated against Blacks, had been

enforced on him because of his White race and yet he prevailed.

Nevertheless, Plaintiff-Appellant Nichols has decided to forfeit on appeal

any race based claims for the very simple reason that it takes years for a Second

Amendment lawsuit to be decided in this circuit and a state's attorney once told

9

him that although he thought it likely he will win his race based challenge, "So what!" We'll just reenact the ban and you won't have the Black Panthers to blame.

True enough. This Court could easily strike down all of the laws at issue in this appeal without ever reaching the Second Amendment Open Carry question. Within a year the bans would be back in place, a new lawsuit would have to be filed and it would take the better part of a decade before this Court rendered its decision.

## STATEMENT OF THE ISSUES

1.      Did the district court err in dismissing Governor Brown with prejudice?

2.      Did the district court err in dismissing with prejudice the state law claims?

3.      Does the Second Amendment extend past the doors of one's home?

4.      Do the prohibitions and restrictions on licenses to openly carry a firearm violate the Federal Constitution?

5.      Does PC25850(b) violate the Fourth Amendment?

6.      Do laws challenged in this appeal violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment?

7.      Are parts of the laws at issue void for vagueness?

## STATEMENT WITH RESPECT TO ADDENDUM

An addendum setting out relevant statutory and regulatory provisions is submitted separately from this brief.

## STATEMENT OF THE CASE

Note:  The Second Amended Complaint (operative complaint) ER216-257 and Statement of Uncontroverted Facts  ER164-204 will be the most frequently referenced Excerpts of Record "ER" and will be referenced as "SAC" and "SUF." Most of the SUF in turn references the SAC, Declarations by Plaintiff-Appellant Nichols and the California Penal Code "PC."  California Government Code sections will be referenced as "GOV."  Business and Professions Code as BPC. Welfare and Institutions Code as "WIC."  Fish and Game Code as "FGC."

The Redondo Beach Defendants and Plaintiff-Appellant Nichols' challenges to the City of Redondo Beach ordinances were voluntarily dismissed by him. ER211.  Therefore, only the state laws are at issue here and the only Defendants are the two state officials who have direct enforcement authority over the laws at issue here: California Governor Brown and California Attorney General Harris, both of whom are sued solely in their official capacity as governor and attorney general of the state of California for solely declarative and prospective injunctive relief.

Under California law, convicted felons and/or those who commit a crime which entails a greater punishment than for violating California's ban on openly carrying loaded firearms (PC25850), openly carrying modern unloaded handguns (PC26350), openly carrying modern unloaded long guns (PC26400) or violating California's Gun-Free School Zone Act of 1995 (PC626.9) cannot also be punished for the crime of carrying a loaded or unloaded firearm, openly or concealed, registered or unregistered regardless of where the offense occurs. SUF13, 51.

The State of California does not prohibit one from *having* a loaded firearm for the purpose of self-defense. There is no duty to retreat in California. Indeed one can even pursue his attacker until the danger is over regardless of whether or not standing his ground or pursuing his assailant results in the death of the assailant. SUF134-135. Prior to the enactment of California's ban on openly carrying loaded firearms in 1967, a firearm was not loaded unless it had an unexpended shell or cartridge in the firing chamber. SUF114.

What it does prohibit is *carrying* a loaded firearm, openly or concealed, for the purpose of self-defense in incorporated cities, city and county, and "prohibited areas" of unincorporated county territory. SUF1. The same prohibition applies to

13

unloaded handguns. The prohibition on openly carrying unloaded long guns

applies to incorporated cities and the city and county of San Francisco. SUF1-4.

In incorporated cities and the city and county of San Francisco, an unloaded long

gun outside of a motor vehicle must be in a locked container or encased and can

only be transported directly between two places where it is lawful to possess the

firearm. SUF18. Handguns, other than when hunting, must be unloaded and

transported in fully enclosed locked containers. SUF26.

Hunters are exempt from the prohibitions on carrying loaded firearms and

unloaded firearms either while hunting in an incorporated city or going to and from

their hunting expedition. SUF27-28.

A substantial number of California Penal Code sections were renumbered

effective January 1, 2012. For example, former PC12031 is now renumbered (in

part) as PC25850. SUF31-34, 42-44.

The attorney general admits that her office publishes California crime

statistics information and maintains one or more databases containing information

about arrests for weapons offenses. SUF81-82. According to the California

Department of Justice publication "Homicide in California 2011", homicide

14

victims are predominately male. SUF45, 49. Over half of White victims were age 40 and over. SUF46. Of the homicides where location was reported to the DOJ, 35.3% occurred on the street or sidewalk, 24.1% in the victim's residence and 13.5% in a residence other than the victim's. SUF47. The largest proportion of male victims were killed on the street or sidewalk. SUF48. Homicide victims are not limited to minorities nor do these homicides occur predominantly within the home. 74% of homicides of White males occur outside of the victim's residence. SUF136. Of the 136 justifiable homicides committed in California, 101 were committed by police officers and 35 were committed by a private citizen. SUF50.

District attorneys are required to report to the Attorney General individuals charged with carrying a concealed or loaded firearm which she maintains in a database. SUF52. Effective January 1, 2000, the number of circumstances in which a person could be charged with a felony for carrying a loaded firearm was increased and indictments increased against males and minorities. SUF53-58, 66, 68-69. Males and racial minorities are disproportionately arrested for weapons violations regardless of whether they are for misdemeanor or felony violations. SUF60-61, 67. Contrary to popular belief, domestic violence calls involving firearms are rare (804 out of 157,634). SUF62.

15

California law provides for the entirely discretionary issuance of a license to carry a loaded firearm either concealed, in which case the license is valid statewide, or openly to residents of counties with fewer than 200,000 people. Licenses to openly carry loaded handguns are only valid in the county of issuance and only available in counties with a population of fewer than 200,000 people. These are counties where less than 6% of the population resides and where the population is, and has been, predominantly White in race. SUF5-6, 70-73. These licenses can only be issued to persons who are not prohibited by law from possessing firearms and the licenses immediately expire if one changes his county of residence. SUF16-17.

Defendant-Appellee Harris admits to instructing all issuing authorities not to issue a license to openly carry a loaded handgun to Plaintiff-Appellant Nichols and all similarly situated persons on her statewide standard application to carry a concealable weapon which she has the authority under state law to revise. SUF78.

There are many, many laws which severely restrict and prohibit where a firearm can be possessed and who may possess a firearm which Plaintiff-Appellant Nichols explicitly did not seek to enjoin, not because they are constitutional but

because of the practical limitations of civil rights lawsuits. SUF7-12, 14-15, 19-25, 35-37, 77

Defendant-Appellee Harris has twice performed a criminal background check on Plaintiff-Appellant Nichols and has issued two letters stating that he is not prohibited under state or Federal law from possessing a firearm. SUF96-98, 84-88.

Plaintiff-Appellant Nichols is a male resident of Los Angeles County. He lives in an incorporated city which does not have a police chief. SUF91-92, 94. State law prohibits the issuance of a license for him to openly carry a loaded handgun because Los Angeles County has a population of 200,000 or more persons. SUF122. It is the policy of the Sheriff not to issue licenses to carry concealed handguns and he has issued only 400 licenses (approximately) in a county with a population of approximately 10 million people. SUF89-90. 122.

Most importantly, even if Plaintiff-Appellant Nichols lived in a county or city where licenses to carry concealed handguns are issued and he had a license to carry a loaded, concealed handgun it would still substantially burden his ability to defend himself. SUF132.

17

Plaintiff-Appellant Nichols has "good cause" to be issued a license to openly carry a loaded handgun. He has a well-documented death threat against him which he reported to the Los Angeles County Sheriff's Department and Defendant-Appellee Harris. SUF118. The Sheriff's department determined that for the death threat to be a criminal threat under California law the person making the threat must use the word "kill." According to the LASD a threat to shoot Plaintiff-Appellant Nichols and a call on others to track him down and shoot him is not a crime. SUF123. Defendant-Appellee Harris refused to prosecute the person who made the death threat against Plaintiff-Appellant Nichols. SUF124. Plaintiff-Appellant Nichols attempted to file a copy of the police report with this court but his application was denied. SUF119.

Plaintiff-Appellant Nichols asked for both an application and a license to openly carry a loaded firearm from the City of Redondo Beach police chief but was denied not because he lacked "good cause" or because he is not a person of "good moral character" but because California law prohibits the issuance of handgun Open Carry permits. SUF120-121.

18

Plaintiff-Appellant Nichols has standing to challenge the laws which: prevent him from openly carrying loaded and unloaded firearms in the curtilage of his home and in and on his motor vehicle including any attached camper or trailer regardless of whether or not it is being used as a temporary or permanent residence, the denial of a license to openly carry a loaded handgun, and any other law which prohibits him from openly carrying loaded and unloaded firearms in these and non-sensitive public places. SUF98-113, 115-117, 125-133.

Defendant-Appellee Harris admits to enforcement of the laws enumerated in Plaintiff-Appellant Nichols operative complaint (SAC) as well as to laws unspecified by code section in the SAC. SUF83. She has never promised not to enforce these laws. SAC133.

> "There was only one catch and that was Catch-22, which specified that a concern for one's safety in the face of dangers that were real and immediate was the process of a rational mind. Orr was crazy and could be grounded. All he had to do was ask; and as soon as he did, he would no longer be crazy and would have to fly more missions. Orr would be crazy to fly more missions and sane if he didn't, but if he were sane he had to fly them. If he flew them he was crazy and didn't have to; but if he didn't want to he was sane and had to." Heller, Joseph. Catch-22, a Novel. New York: Simon and Schuster, 1961. Print.

19

The court below created its own version of Catch-22. It held that Plaintiff-Appellant Nichols was prohibited from bringing as-applied challenges and could only challenge the bans facially. It then held that facial challenges are subject to the *Salerno* test and upheld the challenged laws. ER1-51.

The court below feigned ignorance as to the relevance of Plaintiff-Appellant Nichols' citation to *Jackson v. City and County of San Francisco*, 746 F. 3d 953 (9th Circuit 2014) at 961-962 which held that one can bring both facial and as-applied challenges under the Second Amendment. ER5.

The court below also held, sua sponte, that any challenge to California's Open Carry bans is barred by the now vacated three judge panel decision in *Peruta v. County of San Diego* No.: 10-56971 and upheld the Open Carry bans under rational-basis review which is explicitly precluded by this Court in *US v. Chovan*, 735 F. 3d 1127, 1137 (9th Circuit 2013) and by the US Supreme Court in *Heller* and *McDonald*. ER30

An en banc panel of this Court subsequently held in *Peruta* that there is no right under the Second Amendment to carry a weapon concealed in public and did not decide the Second Amendment Open Carry question. *Id* Slip Op at pg 52.

20

The court below also held that persons who openly carry firearms in places where it is legal to openly carry firearms, loaded and unloaded, fall entirely outside the scope of the Fourth Amendment protections. ER30.

The court below dismissed Defendant-Appellee Governor Brown with prejudice pursuant to the Eleventh Amendment and likewise dismissed the state law claims with prejudice. ER109. The court below simply accepted the governor's claim that he has "an insufficient connection to the enforcement of PC 25850" ER271.

In his MPA in opposition, Plaintiff-Appellant Nichols cited both California constitutional and statutory direct enforcement authority the governor has in enforcing the California penal code ER270 and asked for a hearing which the court below denied. ER262.

Under California law it is illegal for Plaintiff-Appellant Nichols to step even one inch outside the door of his home into the curtilage of his home while carrying a loaded firearm for the purpose of self-defense. The only firearms he is allowed to carry in incorporated cities are unloaded antiques and even then he is prohibited from openly carrying even an unloaded antique handgun within 1,000 feet of a K-

21

12 public or private school (PC626.9) without a license, a license which is unavailable to him by statute because he does not reside in a county with fewer than 200,000 people.

Despite the obvious danger that concealed carry presents in public, this Court has upheld California's concealed carry laws because they provide exceptions for persons who have "good cause" *Peruta v. County of San Diego*, 824 F. 3d 919, 942 (9th Circuit 2016). There are no "good cause" exceptions to PC25850, PC26350 or PC26400 and the good cause requirement for PC26150 and PC26155 (licenses) is unconstitutional as applied to Open Carry as are all the other ancillary conditions and restrictions as applied to Open Carry licenses.

In effect, a license to openly carry a loaded handgun is merely an entry in an electronic database maintained by the attorney general who is solely charged under the law in conducting a background check on applicants. On September 26, 2016, Governor Brown signed Assembly Bill 2510 which amended PC26175 and requires the Attorney General to develop a uniform license that may be used as indicia of proof of licensure throughout the state.

22

## SUMMARY OF ARGUMENT

California law (PC25850), as it has been interpreted by its courts, has defined the curtilage of the home as a "public place" where one is prohibited from carrying a loaded firearm. Plaintiff-Appellant Nichols seeks declaratory and prospective injunctive relief against this and various California Penal Code statutes and any other California law that infringes on his Second, Fourth and Fourteenth Amendment rights.

In violation of the US Constitution, PC25850 prohibits the carrying of loaded firearms within and beyond the curtilage of one's home in "public places" and in motor vehicles in incorporated cities (and in the city and county of San Francisco) and in prohibited areas of unincorporated county territory. PC26350 similarly prohibits the Open Carry of unloaded handguns in these same places. PC26400 prohibits the Open Carry of unloaded long guns outside of a motor vehicle in incorporated cities regardless of whether or not they are carried in a public place. PC26150 and PC26155 prohibit the issuance of licenses to openly carry loaded handguns to residents of a county with a population of 200,000 or more people and limit the validity of those licenses to the county of issuance.

23

Plaintiff-Appellant Nichols is physically disabled. He has a well-documented death threat against him. He has never been convicted of a crime of moral turpitude or any other crime which prohibits his possession of a firearm. He is not prohibited from possessing firearms under state or Federal law. Defendant-Appellee Harris has twice run a background check on Plaintiff-Appellant Nichols as required by state law and has twice issued a letter stating that he is not a person who is prohibited from possessing firearms.

California law makes no exceptions under his circumstances. Plaintiff-Appellant Nichols is prohibited from stepping even one inch outside the door of his home into the curtilage of his home while carrying a loaded firearm for the purpose of self-defense while his neighbors directly across the street from him are free to do so because their private residential property is enclosed by a fence of sufficient height so as to make their residential property not a "public place" where the bans at issue in this appeal apply.

Plaintiff-Appellant Nichols seeks to vindicate his Second Amendment right to openly carry loaded and unloaded firearms (handguns, rifles, and shotguns) for the purpose of self-defense and for other lawful purposes in the curtilage of his

24

home, in and on his motor vehicle including any attached camper or trailer regardless of whether or not they are being used as his residence (temporarily or permanent) and in non-sensitive public places throughout the state of California.

Concealed carry was not at issue in the district court in any shape or form and concealed carry is not at issue here on appeal in any shape or form. This is a pure Open Carry case.

The bans at issue in this appeal and the decision by the court below are, for all intents and purposes, identical to the bans struck down by the 7th Circuit Court of Appeals in *Moore v. Madigan*, 702 F. 3d 933 (7th Circuit 2012) as are the district court holdings in this case and in *Moore*.

Although the bans facially struck down in *Moore* prohibited the carrying of firearms in incorporated cities off of one's private property and places of business, they did not prohibit the carrying of loaded and unloaded firearms, antique or modern, on one's residential or private property, including the curtilage of one's home. In that regard, the California bans are more restrictive than those facially invalidated in *Moore*.

25

Here, as in *Moore*, the defendants did not present any evidence to justify the bans under any level of heightened scrutiny, or even under rational-basis review. Indeed, there is no evidence that the defendants in this case could have provided as it was all tainted with racial animus. In any event, the defendants did not present any evidence, or any declaration (expert or otherwise), to justify the bans at issue here, though no evidence could support a ban on a fundamental, enumerated right.

Plaintiff-Appellant Nichols seeks an unrestricted license to openly carry a loaded handgun throughout the state of California which was (and is) denied to him because California law prohibits the issuance of licenses to otherwise qualified persons who reside in counties with a population of 200,000 or more persons and which limits the validity of handgun Open Carry licenses to the county of issuance. Neither the State of California nor this Court can require that one first have a license to exercise his fundamental, enumerated right to openly carry a firearm for the purpose of self-defense or to have a license before he is afforded the protections of the Federal Constitution but once the state provides for a license, he cannot be denied a license to openly carry a firearm, loaded or unloaded, simply because he resides in a county with a population of 200,000 or more people. Nor can the state impose a "good cause" or "good moral character" requirement or any

26

of the ancillary restrictions on the issuance of handgun Open Carry licenses at issue here.

Plaintiff-Appellant Nichols seeks to vindicate his Fourth Amendment right throughout the state of California while openly carrying loaded and unloaded firearms for the purpose of self-defense and for other lawful purposes in the curtilage of his home, in and on his motor vehicle including any attached camper or trailer regardless of whether or not they are being used as his residence (temporarily or permanent), and in non-sensitive public places.

There is no automatic firearms exception to the Fourth Amendment and his mere refusal to consent to the search and seizure of his person and property cannot constitute probable cause for his arrest or constitute even a reasonable suspicion that he is engaged in criminal activity and yet California Penal Code section 25850(b) states that merely *refusing* to allow a police officer to take one's firearm constitutes *probable cause* for his arrest.

Plaintiff-Appellant Nichols seeks declaratory and prospective permanent injunctive relief against various California Penal Code statutes and any other California law that violates his Fourth Amendment right.

27

Plaintiff-Appellant Nichols seeks declaratory and prospective permanent injunctive relief against California laws which violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

Plaintiff-Appellant Nichols seeks declaratory and prospective permanent injunctive relief against California laws which are unconstitutionally vague.

Plaintiff-Appellant Nichols seeks to reverse the dismissal with prejudice of California Governor Brown who is sued in his official capacity. Appellee Brown bore the burden of proof that the Eleventh Amendment bars his being sued in his official capacity as Governor of the State of California. He presented no such proof. The court below simply accepted his claim that he has no direct enforcement authority and disregarded the Constitutional and statutory proof of the Governor's direct enforcement authority presented by Plaintiff-Appellant Nichols who asked for a hearing but was denied a hearing by the court below. ER262

Plaintiff-Appellant Nichols seeks to reverse the dismissal with prejudice of his state law claims. The court below was required to wait until his Federal claims had been disposed of before dismissing his state law claims, and it is well established that the dismissal of state law claims cannot be dismissed with

28

prejudice. Yet his claims under the California Constitution were dismissed with prejudice by the court below and were dismissed before disposition of his Federal claims.

Plaintiff-Appellant Nichols seeks declaratory and prospective permanent injunctive relief against California Governor Brown in his official capacity as governor of California and against California Attorney General Harris in her official capacity as attorney general of California.

## STANDARDS OF REVIEW

Constitutional questions are reviewed de novo. *Am. Acad. of Pain Mgmt. v. Joseph*, 353 F.3d 1099, 1103 (9th Cir. 2004).

Dismissal on the pleadings pursuant to Rule 12(c) is reviewed de novo. See *Lyon v. Chase Bank USA, NA,* 656 F.3d 877, 883 (9th Cir. 2011); *Peterson v. California,* 604 F.3d 1166, 1169 (9th Cir. 2010); *Fairbanks North Star Borough v. United States Army Corps of Eng'rs,* 543 F.3d 586, 591 (9th Cir. 2008); *Dunlap v. Credit Protection Ass'n LP*, 419 F.3d 1011, 1012 n.1 (9th Cir. 2005) (per curiam).

Dismissal for lack of subject matter under Rule 12(b)(1) is reviewed de novo. See *Viewtech, Inc., v. United States*, 653 F.3d 1102, 1103-04 (9th Cir. 2011); *Carson Harbor Village, Ltd. v. City of Carson*, 353 F.3d 824, 826 (9th Cir. 2004); *Warren v. Fox Family Worldwide , Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003).

The party asserting Eleventh Amendment immunity bears the burden of proof. See *Del Campo v. Kennedy,* 517 F.3d 1070, 1075 (9th Cir. 2008); *Hill v. Blind Indus. & Servs. of Md.*, 201 F.3d 1186 (9th Cir. 2000) (order); *Hyland v. Wonder,* 117 F.3d 405, 413 (9th Cir.), amended by 127 F.3d 1135 (9th Cir. 1997); *ITSI TV Prods., Inc. v. Agric. Ass'ns,* 3 F.3d 1289, 1291 (9th Cir. 1993).

Immunity under the Eleventh Amendment presents questions of law reviewed de novo. See *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004); *Lovell v. Chandler*, 303 F.3d 1039, 1050 (9th Cir. 2002). Whether a party is immune under the Eleventh Amendment is also reviewed de novo. See *Coalition to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1133 (9th Cir. 2012); *Holley v. California Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010); *Holz v. Nenana City Pub. Sch. Dist.*, 347 F.3d 1176, 1179 (9th Cir. 2003).

Dismissal without leave to amend is improper unless it is clear, upon de novo review that the complaint could not be saved by any amendment. See *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012); *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 903 n.3 (9th Cir. 2011); *Thinket Ink Info Res., Inc. v. Sun Microsystems, Inc.,* 368 F.3d 1053, 1061 (9th Cir. 2004).

Dismissal of a pro se complaint without leave to amend is proper only if it is clear that the deficiencies of the complaint could not be cured by amendment. *Lucas v. Dep't of Corr.,* 66 F.3d 245, 248 (9th Cir. 1995); see also *Flowers v. First Hawaiian Bank,* 295 F.3d 966, 976 (9th Cir. 2002).

31

A dismissal without leave to amend is reviewed de novo. See *Smith v. Pacific Props. & Dev. Corp.,* 358 F.3d 1097, 1100 (9th Cir. 2004) (noting underlying legal determinations require de novo review); *Oki Semiconductor Co. v. Wells Fargo Bank,* 298 F.3d 768, 772 (9th Cir. 2002).

For claims dismissed with prejudice and without leave to amend, it is not required that they be repled in a subsequent amended complaint to preserve them for appeal. See *Lacey v. Maricopa County*, 693 F. 3d 896, 928 (9th Cir. 2012).

## ARGUMENT

Plaintiff-Appellant Nichols disavowed any desire, intention or plan to carry a weapon concealed in the court below and does so again on appeal. This is, and always has been, a pure Open Carry case.

Plaintiff-Appellant Nichols will endeavor to craft this opening brief into one in which this Court must decide the Second Amendment Open Carry question. He is not an attorney. Should his argument stray and should this Court discern an opportunity to decide this appeal without deciding the Second Amendment Open Carry question then consider that part of his argument forfeited as well.

### I. Improper Dismissal of the State Law Claims with Prejudice

If a court declines to exercise supplemental jurisdiction over state law claims then once the court has dismissed the federal claims, the court should dismiss the state law claims without prejudice. See *Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012).

Appellant Nichols requested a hearing before the district court judge after the magistrate judge issued her report and recommendation to dismiss the state law

33

claims with prejudice but the hearing was denied by the district court judge. ER262.

The district court below dismissed Plaintiff-Appellant Nichols' state law claims with prejudice. ER110. The district court did not have that authority. The dismissal of his claims under the California Constitution with prejudice should be reversed.

## II.  Improper Dismissal of Governor Brown with Prejudice

The party asserting Eleventh Amendment immunity bears the burden of proof. Defendant-Appellee Brown did not present a single iota of proof nor did the district court conduct any inquiry or review of the case law in order to determine whether or not Governor Brown's assertion of Eleventh Amendment immunity was true. Appellant Nichols requested a hearing before the district court judge after the magistrate judge issued her report and recommendation to dismiss Governor Brown in his official capacity with prejudice but the hearing was denied by the district court judge. ER262.

Defendant-Appellee Brown simply told the court in his MPA that he has no connection with enforcement of PC25850 other than his being governor and that was that, he was dismissed with prejudice. ER271.

Under *Ex parte Young*, a state defendant sued in his official capacity must "have some connection with the enforcement" of a challenged provision. *Ex parte Young*, 209 U.S. 123, 157, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

"[T]he Eleventh Amendment does not bar actions seeking only prospective declaratory or injunctive relief against state officers in their official capacities." *LOS ANGELES COUNTY BAR ASS'N v. EU*, 979 F.2d 697, 704  (9th Cir. 1992).

A person who openly carries a loaded or unloaded firearm in violation of PC25850, PC26350, PC26400 is guilty of a misdemeanor.  A violation of PC25850 is potentially a felony.  A misdemeanor conviction within 1,000 feet of a K-12 public or private school in violation of PC626.9 entails a 10-year loss of the right to even possess a firearm PC29805.  Such charges would be filed by a county or district attorney under the supervision of the Attorney General. ***And the Governor could order the Attorney General to assist in such prosecution.***  California Constitution Article 5, Section 13 (emphasis added).

35

The Governor appoints the Attorney General when a vacancy occurs.

California Constitution Article 5, Section 5.

> The supreme executive power of this State is vested in the Governor. The Governor shall see that the law is faithfully executed. California Constitution Article 5, Section 1.

> When required by the public interest *or directed by the Governor, the Attorney General shall assist any district attorney in the discharge of the duties of that office*. California Constitution Article 5, Section 13 (emphasis added).

> The enforcement power of the Governor and Attorney General is direct and

not limited to the authority granted them by the state constitution. California

statutory law also provides the direct enforcement connection.

The Governor shall supervise the official conduct of all executive and

ministerial officers. That includes the Attorney General. GOV12010

The Governor shall see that all offices are filled and their duties performed.

If default occurs, he shall apply such remedy as the law allows. That includes the

Attorney General. GOV12011

There is no Eleventh Amendment bar and there is no lack of Article III

standing against the Governor (or against the Attorney General). See *Kitchen v.*

*Herbert*, 755 F.3d 1193, 1202-1204 (10th Cir. 2014) which held the Utah governor

36

(and attorney general) had enforcement authority under *Ex parte Young* under the State of Utah analogs to California law cited by Plaintiff-Appellant Nichols above and in his MPA.

The dismissal with prejudice of Appellee-Governor Brown was in error. He should not be allowed to escape culpability because of the error of the district court. He has been adequately informed of the nature of the suit. He is represented on appeal by the same attorney who represented him in the court below and who is also the same attorney representing him and Appellee Harris now and in the court below.

The declaratory and prospective injunctive relief against Appellee Governor Brown and Appellee Harris in their official capacities should be granted.

## III. The Second Amendment Right Extends Beyond the Interior of One's Home

*Heller* was an in-depth examination of the Second Amendment right which it said was perfectly captured by "[A] right to carry arms openly: "This is the right guaranteed by the Constitution of the United States..."" *Heller* at 2809.

37

Plaintiff-Appellant Nichols prefaces his argument by asserting that he does not concede that any gun law is constitutional and he made no such concession in the court below.

There are certain restrictions and prohibitions on the Second Amendment right defined by *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008) which he personally embraces, such as the 19th Century prohibition on concealed carry (which excepted travelers while actually on a journey) but these are not at issue here.

This Court is bound by the restrictions that *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008), *McDonald v. City of Chicago, Ill.,* 130 S. Ct. 3020 (2010), and *Caetano v. Massachusetts*, 136 S. Ct. 1027 (2016) has placed upon it.

This Court is not allowed to engage in judicial interest-balancing, ends-means testing, or to engage in its own historical analysis. The Second Amendment comes with its own standard of judicial review. If a law infringes on the Second Amendment right then it is unconstitutional.

The Second Amendment does not fit into the standards of review that courts have applied to the First Amendment. A firearm is either carried openly or it is

38

carried concealed. A firearm is either carried in a sensitive place or it is not. A firearm is either carried for the core right of self-defense against public or private danger or it is not. Nor is there any "alternative" means of exercising one's individual, enumerated, fundamental right to keep and bear arms such as the courts have applied to lesser Federal rights.

But even if the Second Amendment were subject to these standards of review, the bans at issue here fail every level of scrutiny. The court below may have held that the Second Amendment is subject to rational-basis review but this Court and every other Federal Appellate Court and the US Supreme Court have taken rational-basis review off the table.

Moreover, the intermediate scrutiny standards which some Federal courts have applied to infringements on the Second Amendment right, standards which in all candor fall beneath the threshold of rational-basis review, would still result in the bans at issue here being struck down under intermediate-scrutiny applied in those cases.

This ban does not just infringe on the periphery of the Second Amendment right. It strikes to the very core of that right and therefore cannot survive any standard of review, not even rational-basis.

On May 16, 2015, the Solicitor General for the State of California stood before this Court during the en banc hearing of the concealed carry appeal in *Edward Peruta, et al v. County of San Diego, et al* No. 10-56971 and told this Court that he agreed that the Second Amendment right does not change from county to county and in response to direct questioning from this Court he conceded that the Second Amendment extended beyond the curtilage of one's home but not to concealed carry, as per the *Heller* decision. http://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000007886 at 39:40 (last visited October 12, 2016).

And yet the Defendants-Appellees still enforce California laws which they have already conceded violate the Second Amendment and which prohibit Plaintiff-Appellant Nichols from carrying a loaded firearm even in the curtilage of his home (openly or concealed) for the purpose of self-defense because his private

40

residential property is not fully enclosed by a tall fence or other substantial barrier to entry by the public.

At 1:01:57 in the video of the *Peruta* en banc oral arguments, an attorney for one of the Defendants-Appellees invited this Court to "look at hunting" asserting that hunting is a core right under *Heller* and then rhetorically asks if there is anything more restricted in American cities than the "right to hunt?"

Hunting is certainly a right under the Second Amendment *District of Columbia v. Heller*, 128 S. Ct. 2783, 2801 (2008) but it isn't the central component (core) of the Second Amendment right. Self-Defense is the "core right" of the Second Amendment. *Id* at 2801. But let's take a look at the restriction PC25850 places on hunters.

PC25850 exempts hunters from its prohibition on openly carrying loaded firearms as do the bans on openly carrying unloaded, modern firearms.

In California, an eight-year old boy can openly carry loaded long guns while hunting without being accompanied by an adult (except for hunting certain game animals which require tags and has a 12-year minimum age limit) and he is exempt from the PC25850 prohibition. He can carry unloaded long guns as well to and

41

from his hunting expedition unaccompanied by an adult and be exempt from the PC26400 prohibition. In some cases, he does not even need a hunting license to openly carry loaded and unloaded long guns without adult supervision. Technically, there is no age limit on the unloaded or loaded Open Carry of handguns as well in PC26850 and PC26350 but there are other restrictions on the possession of handguns by minors which are not at issue here.

But in those circumstances which require that minor to have a hunting license, the cost to him is just $12.45 for an annual license. He doesn't even have to be a resident of this state. https://www.wildlife.ca.gov/Licensing/Hunting last visited October 23, 2016.

Hunting never occurs inside of one's home and hunting is not an alternative which this Court may substitute for the core right of self-defense.

And yet Plaintiff-Appellant Nichols, who is physically disabled and who has a "heightened need" by virtue of the well-documented death threat against him, is denied his Second Amendment right to openly carry loaded firearms and modern unloaded firearms for the purpose of self-defense, even in the curtilage of his home.

If the Second Amendment Open Carry right, or the substantive due process right to keep and bear arms, which is independent of the Second Amendment, extends even an inch beyond the doors of one's home then Plaintiff-Appellant Nichols prevails because California law (PC25850) prohibits him from carrying a loaded firearm even one inch outside the door of his home into the curtilage of his home for the purpose of self-defense.

The California courts have held that one can "have" but not carry a loaded firearm on his private residential property (See *People v. Overturf*, 64 Cal. App. 3D 1 (Cal. Ct. App. 1976)) unless it is fully enclosed by a tall sturdy fence or other substantial barrier to entry (See *People v. Strider*, 177 Cal.App.4th 1393 (Cal. Ct. App. 2009)). A barrier which Plaintiff-Appellant Nichols does not have around his residential property.

Unless one tosses a loaded firearm outside his window or door into the curtilage of his home, or onto his private residential property, it is impossible to "have" a loaded firearm and it is, of course, illegal for him to pick up that loaded firearm. *Having* a loaded firearm is meaningless if one cannot also *carry* the loaded firearm.

43

Convicted felons, other prohibited persons, and persons who commit crimes with firearms cannot be punished for violating the bans on open and concealed carry which means that only people who fall within the scope of the Second Amendment can be punished for the crime of openly carrying a loaded or unloaded firearm for the purpose of self-defense in their homes, motor vehicles and in non-sensitive public places. *People v. Jones*, 278 P. 3d 821, 352 (2012).

Long guns are, by definition, not concealable weapons PC16530 and "A firearm carried openly in a belt holster" is "not concealed" even if it is carried in a motor vehicle PC25400(b).

Open Carry is the Second Amendment right. "[A] right to carry arms openly: "This is the right guaranteed by the Constitution of the United States, and which is calculated to incite men to a manly and noble defence of themselves, if necessary, and of their country, without any tendency to secret advantages and unmanly assassinations."" *District of Columbia v. Heller*, 128 S. Ct. 2783 - Supreme Court (2008) at 2809.

Concealed carry in public is not a recognized right under the Second Amendment (see *Peruta v. County of San Diego*, 824 F. 3d 919, 924, 942 (9th

44

Circuit 2016) en banc) and to the extent a substantive due process right was raised as applied to concealed carry in *Peruta*, there is no right to carry a weapon concealed in public independent of the Second Amendment beyond the longstanding exception for travelers while actually on a journey which was not at issue in *Peruta* and is not at issue here as Plaintiff-Appellant Nichols does not now seek, nor did he seek in the court below, to carry any weapon concealed anywhere or at any time.

The right to keep and bear arms is an individual right protecting against both public and private violence. *Heller* at 2799.

The Second Amendment, in full, is incorporated against the states. "[W]e hold that the Second Amendment right is *fully applicable* to the States." *McDonald v. City of Chicago, Ill.,* 130 S. Ct. 3020 - Supreme Court (2010) at 3026. (italics added).

The Second Amendment right to both keep and bear arms is a fundamental right in addition to being an enumerated right. "In sum, it is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms

45

among those fundamental rights necessary to our system of ordered liberty." *Id* at 3042.

The pre-existing right independent of the Second Amendment recognized by *Heller* (*Id* at 2797) applies to all states and local governments. The Second Amendment could be repealed but the fundamental, individual right to keep and bear arms would remain.

The Second Amendment right to keep and bear arms has not been repealed and for as long as it remains an enumerated, individual and fundamental right this Court is bound by the holdings in *Heller, McDonald* and *Caetano*. "We therefore hold that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller*." *McDonald* at 3050.

Plaintiff-Appellant Nichols is prohibited from openly carrying modern, unloaded handguns for the purpose of self-defense in the same places he is prohibited from openly carrying a loaded firearm for the purpose of self-defense (PC26350).

46

Plaintiff-Appellant Nichols is prohibited from openly carrying a modern, unloaded long gun outside of his motor vehicle in incorporated cities regardless of whether or not the unloaded long gun is carried in a "public place" (PC26400).

Some have held a myopic view that the Second Amendment right is limited to the questions before the court in *Heller* while at the same time feigning ignorance that the question before the Court in *McDonald* was far broader than the limited questions in *Heller* as were the ramifications of the *McDonald* decision.

*Heller* facially invalidated an in-home ban on the possession of handguns and an in-home ban on the possession of loaded firearms. *McDonald* fully incorporated the Second Amendment to all states and local governments which resulted in a *citywide* ban on handgun possession by residents of the City of Chicago being facially invalidated as well as facially invalidating a similar ban by the village of Oak Park, a Chicago suburb. *Id* at 3026.

City of Chicago residents, with some exceptions, were prohibited from possessing handguns in their homes, in the curtilage of their homes, on their private residential property, in and on their motor vehicles, and in public places

47

regardless of whether or not the public places were sensitive or not.  The Chicago

ban did not apply to non-residents.  *Id* at 3026.

Justice STEVENS, dissenting, recognized that the question before the Court

in *McDonald* went beyond the home.  *Id* at 3087, 3090, 3104.  And he grudgingly

recognized that the "dicta" in *Heller* went beyond the confines of one's home.

Indeed, Justice STEVENS in his dissent lashed out at the majority for not

limiting the scope of incorporation to the home at 3105.

To which the plurality responded at 3047 by citing the presumptively

lawful prohibitions (none of which are at issue here) from *Heller* "at 2816-2817"

and, as importantly, rejected the "judicial interest balancing" and "a watered-down,

subjective version of the individual guarantees of the Bill of Rights..."

What was "dicta" in *Heller* became the holding of the Court in *McDonald*.

PC25850, the ban on openly carrying loaded firearms in public has certain

exceptions.  It does not apply to: police officers (on or off duty) PC25900, 26025

and to certain retired police officers; security guards PC26030, PC26015; military

of this state or the United States while in performance of their duties PC26000;

target ranges or while hunting on the premises of shooting clubs PC26005; those

48

with a license to carry a loaded firearm PC26010 pursuant to PC26150 or

PC26155; certain retired Federal officers or agents PC26020; a businessman

*having* a loaded firearm within his place of business but not carrying as places of

business are "public places" under California law; an area within an incorporated

city while engaged in hunting, provided that the hunting at that place and time is

not prohibited by the city council PC26040; making a lawful arrest PC26050;

having, but not carrying, at the person's place of residence, including any

temporary residence or campsite PC26055; Washoe tribal law enforcement

officers... while performing their official duties on their tribal lands or while

proceeding by a direct route to or from the tribal lands PC830.8.

Nearly every one of these exceptions was present under Illinois laws

banning the carrying of loaded and unloaded firearms in incorporated cities, towns

and villages which were struck down in by the Seventh Circuit in *Moore v.*

*Madigan*, 702 F. 3d 933, 934 (7th Circuit 2012).

As applied to one's home, the Illinois bans were less restrictive as they did

not require a tall fence or other substantial barrier to surround one's private

property in order to carry loaded and unloaded firearms on one's residential property, private property or place of business. That did not salvage the bans.

*Moore* held that the Second Amendment extends beyond the curtilage of one's home into public places and facially invalidated the bans without remanding the case back to the district court to issue the injunction. *Id* at 942. Shortly thereafter, the Illinois Supreme Court affirmed the holding in *Moore. See People v. Aguilar*, 2 NE 3d 321, 327 (2013).

The closest thing there is to a self-defense "exception" to PC25850(a) is an affirmative defense which isn't an exception, it is a burden shifting from the state to the defendant. That "exception" applies only when one is in immediate, grave danger.

As used in this section, "immediate" means the brief interval before and after the local law enforcement agency, when reasonably possible, has been notified of the danger and before the arrival of its assistance. PC25850(c).

It is undisputed that the only firearms Plaintiff-Appellant Nichols is permitted to carry are unloaded, antique firearms and these firearms take many seconds to several minutes to load. Even a modern, unloaded firearm as unloaded

is currently defined under California law cannot be instantaneously loaded. If one waits until he is in "grave, immediate danger" to load a firearm then it is too late. He is already a victim.

The bans on openly carrying modern, unloaded firearms (PC26350 and PC26400) do not have self-defense exceptions, but do have exemptions for hunters either while hunting or traveling to and from their hunting expeditions as well as various exceptions under the BPC and WIC.

Of course those who are permitted to carry loaded firearms can't be reasonably expected to abstain from using, including discharging, their lawfully carried loaded firearms for the purpose of self-defense until they are in "grave, immediate danger" and yet PC25850 prohibits them from doing so.

Likewise, those persons who are not prohibited from openly carrying unloaded firearms such as those who fall within the BPC and WIC exceptions cannot be reasonably expected to abstain from loading their openly carried firearms for the purpose of self-defense until they are in "grave, immediate danger" but they, unlike Plaintiff-Appellant Nichols, are not prohibited from openly carrying modern, unloaded firearms with matching ammunition.

51

Not only is there no duty to retreat in California, one may pursue his attacker until the danger has passed. The bans at issue in this appeal do not prohibit the use or discharge of firearms for the purpose of self-defense, they prohibit the mere carriage of firearms by Plaintiff-Appellant Nichols for the purpose of lawful self-defense. Another Catch-22.

This leaves unloaded antiques as defined by Federal law Section 921(a)(16) of Title 18 of the United States Code PC16520 as the only firearms left for Plaintiff-Appellant Nichols to carry for the purpose of self-defense. Couple this with the prohibition on possessing a handgun, antique or modern, other than an unloaded handgun in a fully enclosed locked container within 1,000 feet of a K-12 public or private school PC626.9, and the only firearms Plaintiff-Appellant Nichols can carry as a practical matter are unloaded, antique long guns which cannot be instantaneously loaded.

The Second Amendment extends prima facie to all bearable arms. *Heller* at 2791-2792. In a unanimous decision, the United States Supreme Court reversed a unanimous decision by the Massachusetts high court in *Caetano v. Massachusetts*, 136 S. Ct. 1027 (2016) which directly conflicted with its holding in *Heller* that the

Second Amendment extends prima facie to all bearable arms. *Caetano* at 1027-1028.

Caetano did not involve in-home possession of a weapon. She was a homeless women found in possession of the weapon (a Taser) while she was in a public place, a parking lot. *Id* at 1028, 1029. If the Second Amendment were confined to the inside of one's home then the Massachusetts high court decision could not have conflicted with *Heller and McDonald*.

"Since 1872, the Penal Code has defined assault as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."" *People v. Chance*, 44 Cal.4th 1164 (Cal. 2008) which reaffirmed prior holdings that an unloaded firearm, as defined under California law, cannot be used to commit an assault unless it is used as a bludgeon. *Id* at [fn7].

And yet PC26350 and PC26400, in addition to creating the crime of openly carrying an unloaded firearm, entail a three-month mandatory minimum for mere possession of matching ammunition while openly carrying an unloaded firearm. "[W]ithout bullets, the right to bear arms would be meaningless." *Jackson v. City and County of San Francisco*, 746 F. 3d 953, 967 (9th Circuit 2014).

53

The California legislature did not even pretend that persons who openly carry unloaded firearms create a danger to the public. Instead, the legislature claimed the need for the ban was because police might overreact and create a danger to the public by killing the person openly carrying an unloaded firearm and those around him. ER28.

What the legislature and court below ignored is that police are prohibited from killing people merely because they are carrying a firearm, even if the firearm is carried unlawfully. Police officers, and those persons assisting police officers are agents of the state and are therefore prohibited by the Fourth Amendment from killing a person for the mere carriage of a firearm.

And if merely carrying a firearm openly presents such a danger then why allow firearms to be openly carried at all? How is a police officer to know that a person openly carrying a Winchester rifle or Colt revolver isn't legally carrying one manufactured before January 1, 1899? How is a police officer to know that a person openly carrying a firearm doesn't fall into one of the exceptions to PC25850, PC26350, or PC26400?

"The act of firearm possession, by itself, is innocent." *Jones* at 356.

If this Court were to accept the finding of the California legislature and the court below that police officers in this state are so poorly trained and trigger happy that they are going to go around killing people for the mere carriage of firearms, which the California Supreme Court in *Jones* says is an innocent act, then the better solution is for this Court to enjoin the laws which permit police officers and those assisting the police from carrying firearms.

A statute which punishes the mere use, carriage, or possession of a firearm runs afoul of the Second Amendment. *US v. Cureton*, 739 F. 3d 1032, 1043 (7th Circuit 2014). "If the mere possibility that allowing guns to be carried in public would increase the crime or death rates sufficed to justify a ban, *Heller* would have been decided the other way..." *Moore* at 939.

*Moore* facially invalidated the Illinois bans on carrying loaded and unloaded firearms in Illinois' incorporated cities, towns and villages which were virtually identical to the California bans with a notable exception that they applied to both open and concealed carry whereas California has a separate concealed carry ban PC25400 which is not at issue here.

When *Moore* facially struck down the Illinois bans it did not say that the Illinois legislature may ban Open Carry in favor of concealed carry. It did not say that Illinois may choose between concealed and open carry. *Moore* said that Illinois could require firearms to be carried openly as per the *Heller* decision. *Id* at 938.

"A statute which, under the pretence of regulating, amounts to a destruction of the right, or which requires arms to be so borne as to render them wholly useless for the purpose of defence, would be clearly unconstitutional" *Heller* at 2818 citing *State v. Reid,* 1 Ala. 612, 35 Am. Dec. 44 (1840).

And what was that right *Heller* was referring to? It was the Open Carry right. *Reid* explicitly considered the hypothetical case where a legislature had banned Open Carry in favor of concealed carry and rejected such a scenario saying that would still result in the destruction of the right:

> "[S]upposes one Legislature to prohibit the bearing arms secretly, and a subsequent Legislature to enact a law against bearing them openly; and then asks the question, whether the first, or last enactment would be unconstitutional. Under the provision of our constitution, we incline to the opinion that the Legislature cannot inhibit the citizen from bearing arms openly, because it authorizes him to bear them for the purposes of defending himself and the State, and it is only when carried openly, that they can be efficiently used for defence." *Reid* at 619. "The question recurs, does the

56

act, "To suppress the evil practice of carrying weapons secretly," trench upon the constitutional rights of the citizen? We think not." *Id* at 616.

Concealed carry is the effective and efficient way to go if one seeks "secret advantages and unmanly assassinations" *Heller* at 2809 but that isn't the path Plaintiff-Appellant Nichols desires to travel and that isn't the Second Amendment right defined in *Heller*. He seeks to carry his firearms in a manner which is noble (openly) in defense of himself *Id* at 2809, in case of confrontation *Id* at 2797. He does not seek secret advantage, unmanly assassination, or to seek out confrontations.

Few states ban the Open Carry of firearms in incorporated cities, towns and villages and none of the bans are longstanding. See *US v. Chovan*, 735 F. 3d 1127, 1137 (9th Circuit 2013) saying Federal firearm restrictions enacted in 1938 are *not* longstanding.

Hawaii did not become a state until 1959. The State of Illinois bans were enacted in the early 1960s and reenacted in 2013. South Carolina's ban on the Open Carry of handguns (but not long guns) as well as New York's ban on handgun Open Carry (but not long guns) were enacted in the 1960s. Likewise, the

permit requirement for handguns carried openly (but not long guns) in New Jersey was enacted in the mid 1960s. Florida's ban on the Open Carry of both handguns and long guns was not enacted until 1987. California's ban on the Open Carry of loaded firearms was not enacted until 1967, its ban on the Open Carry of unloaded handguns went into effect on January 1, 2012 and its ban on the Open Carry of unloaded long guns went into effect on January 1, 2013.

The District of Columbia did not require a license to openly carry a handgun until 1943. It's ban on carrying firearms in public was enacted after the *Heller* decision. The ban on carrying handguns, openly or concealed, was struck down in *Palmer v. District of Columbia* 59 F.Supp.3d 173 (2014) (the long gun ban has not been challenged). The District would shortly thereafter enact a new ban on the Open Carry of handguns.

A challenge to the Florida Open Carry ban is currently under submission by the Florida Supreme Court http://jweb.flcourts.org/pls/docket/ds_docket?p_caseyear=2015&p_casenumber=650 (last visited October 24, 2016).

The ban on carrying handguns in the Commonwealth of Northern Mariana Islands was struck down as applied to Open Carry in *Murphy v. Robert Guerrero,*

*et al.,* 1:14-CV-00026, 2016 WL 5508998, (D.N. Mar. Is. Sept. 28, 2016) Case 1:14-CV-00026 Presiding Judge: Ramona V. Manglona.

> "The policy underlying the prohibition against concealed weapons is based on the protection of those persons who may come into contact with a weapon bearer. If a weapon is not concealed, one may take notice of the weapon and its owner and govern oneself accordingly, but no such opportunity for cautious behavior or self-preservation exists for one encountering the bearer of a concealed weapon." *People v. Mitchell*, 209 Cal. App. 4th 1364 (2012) at 1371.

A few of the 19th Century post-Civil War state court decisions incorrectly limited the scope of the Second Amendment's purpose outside of the home to public defense but all but one held that there is no right to carry a weapon concealed. All of them held that Open Carry is the right, even if that right were limited to men banding together to overthrow tyrants and tyrannical governments, in public.

Here are but a few: *State v. Mitchell*, 3 Blackf. 229 (Ind. 1833); *State v. Reid*, 1 Ala. 612, 35 Am. Dec. 44 (1840); *Aymette v. State*, 21 Tenn. (2 Hump.) 154 (1840); *State v. Duzan*, 6 Blackf. 31 (Ind. 1841); *State v. Buzzard*, 4 Ark. (2 Pike) 18 (1842); *Walls v. State*, 7 Blackf. 572 (Ind. 1845); *Nunn v. State*, 1 Ga. (1 Kel.) 243 (1846); *State v. Chandler*, 5 La. Ann. 489, 52 Am. Dec. 599 (1850);

59

*State v. Smith*, 11 La. Ann. 633, 66 Am. Dec. 208 (1856); *Day v. State*, 37 Tenn. (5 Sneed) 495 (1857); *State v. Jumel*, 13 La. Ann. 399 (1858); *Owen v. State*, 31 Ala. 387 (1858); *Sears v. State*, 33 Ala. 347 (1859); *Stockdale v. State*, 32 Ga. 225 (1860); *Sutton v. State*, 12 Fla. 135 (1867); *Hopkins v. Commonwealth*, 66 Ky. (3 Bush) 480 (1868); *Cutsinger v. Commonwealth*, 70 Ky. (7 Bush) 392 (1870); *Commonwealth v. McNulty*, 28 Leg. Intel., 389, 8 Phila. 610 (Penn. 1871); *Evins v. State*, 46 Ala. 88 (1871); *State v. Wilburn*, 66 Tenn. (7 Bax.) 57, 32 Am. Rep. 551 (1872); *Morton v. State*, 46 Ga. 292 (1872); *Lockett v. State*, 47 Ala. 42 (1872); *Carroll v. State*, 28 Ark. 99, 18 Am. Rep. 538 (1872); *Maxwell v. State*, 38 Tex. 170 (1873); *Eslava v. State*, 49 Ala. 355 (1873); *Baker v. State*, 49 Ala. 350 (1873); *Porter v. State*, 66 Tenn. (7 Baxt.) 106 (1874); *Jones v. State*, 51 Ala. 16 (1874); *Hill v. State*, 53 Ga. 472 (1874); *Wright v. Commonwealth*, 77 Pa. 470 (1875); *Titus v. State*, 42 Tex. 578 (1875); *Gholson v. State*, 53 Ala. 519, 25 Am. Rep. 652 (1875); *Atwood v. State*, 53 Ala. 508 (1875); *Stroud v. State*, 55 Ala. 77 (1876).

None of them, not even in those states under occupation during the Reconstruction period, prohibited long guns from being carried in public. *Heller* has resolved the question as to whether or not handguns or concealable firearms

are protected by the Second Amendment.  They are protected, and this appeal is not limited to the carrying of handguns.

Handguns will always be the quintessential firearm for in-home and close quarters self-defense but once one moves out of the interior of one's home, the distance between one and his attacker may be beyond the effective range of a handgun in a self-defense situation.

It is one thing to brag about how accurate a shot one is with a handgun when shooting at a paper target at a shooting range but paper targets don't shoot back and they don't move.

Beyond 30 feet or so, a shotgun becomes the quintessential firearm for the purpose of self-defense but its effectiveness ends somewhere within 20-25 yards at which point the rifle becomes the quintessential firearm for the purpose of self-defense.

Handguns, rifles and shotguns each have their advantages and disadvantages in a particular situation.  Both this is not a case as in *Nunn* where handguns were banned from being carried in public but not long guns.  California has banned ALL loaded firearms from being carried in public for the purpose of self-defense and

61

has banned ALL modern firearms from being carried in public by nearly everyone who doesn't fall into one of its special interest exceptions.

"[A] ban as broad as [California's] can't be upheld merely on the grounds that it is not irrational." *Moore* at 939-940. Here, as in *Moore*, the Appellees did not introduce any evidence to support these bans under any standard of review. Enacting a ban on Loaded Open Carry in 1967 (PC25850) with a harassment provision (PC25850(b)) because the California legislature reacted arbitrarily and irrationally to Black men and women with unpopular views bearing arms fails the rational-basis test as does enacting the unloaded Open Carry bans "to close the loophole" in the 1967 ban. The reasons for enacting the unloaded Open Carry bans from the California legislature, particularly the legislative finding that the bans are required because police might kill people engaged in what the California Supreme Court in *Jones* held is an entirely innocent act, fails the rational-basis test as well.

Plaintiff-Appellant Nichols submits that all of the bans at issue in this appeal violate the Second Amendment and this Court should issue a permanent injunction against them.

"[T]he Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *US v. Henry*, 688 F. 3d 637, 640 (9th Circuit 2012).

## IV. The Prohibitions and Restrictions on Licenses to Openly Carry a Firearm Violate The Federal Constitution

California law does not require a license to openly carry a handgun PC25605 and this Court may not compel the state to enact a licensing law. California does provide for the issuance of licenses to openly carry a loaded handgun but those licenses are limited to counties with a population of fewer than 200,000 people.

Were it in Plaintiff-Appellant Nichols' power, he would strike down all firearms licensing laws and he encourages this Court to do just that. But if for some reason this Court decides not to strike them down in their entirety then the state cannot withhold licenses to openly carry handguns merely because one resides in a county with 200,000 or more people and the state certainly cannot arbitrary decide who has "good cause" or "good moral character" or place any other qualifications or restrictions on the exercise of what is one's Second Amendment right.

Ultimately, a license to openly carry a loaded handgun is an entry is an electronic database. It is the attorney general who maintains the database, who runs the background checks, who issues the approvals and denials to the county sheriffs and police chiefs who are in turn prohibited from granting licenses without her approval because they are preempted by state law from doing so.

California law does not allow for the issuance of these licenses to convicted felons or other persons prohibited by law from possessing a firearm. Were one to subsequently become a prohibited person and his name entered into the database of prohibited persons, the license would immediately become void.

Plaintiff-Appellant Nichols requests that this Court instruct Defendant-Appellee Harris to immediately enter Plaintiff-Appellant Nichols name into her database of licenses granted pursuant to PC26150 and PC26155 to openly carry a loaded handgun, to send him a proof of license, to automatically renew his license and to issue him a standardized proof of license pursuant to the recently enacted Assembly Bill 2510 which amended PC26175. He also requests that this Court enjoin PC26150, PC26155 and the ancillary provisions he sought to enjoin in his SAC as applied only to licenses to openly carry.

## V.    PC25850(b) Violates the Fourth Amendment

"The act of firearm possession, by itself, is innocent." *Jones* at 356.

Let us assume, for the sake of argument, that this Court cannot find any Second Amendment or substantive due process right to Keep and Bear Arms beyond the door to one's home for the purpose of self-defense.  PC25850(b) still violates the Fourth Amendment independent of the Second Amendment and independent of any self-defense right.

The court below provided a citation to an en banc decision of this Court which should have resolved the question in favor of Plaintiff-Appellant Nichols:

> "Probable cause" is "knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." Id. Accordingly, a determination of probable cause generally requires a factual analysis of "the totality of the circumstances known to the officers at the time of the search." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012) (en banc).  ER38.

Instead, the district court held that persons who openly carry firearms in a place where it is legal to openly carry firearms (loaded by some persons such as hunters) are not entitled to the protections guaranteed by the Fourth Amendment. The district court held that persons who lawfully possess firearms in a place where

65

it is legal to possess a firearm (e.g., in a motor vehicle including the trunk of a motor vehicle) and where hunters are fully exempt from the prohibition on carrying loaded firearms by PC25850 are not entitled to the protections guaranteed by the Fourth Amendment.

The district court held that persons who openly carry firearms in the curtilage of their home fall outside the protections guaranteed by the Fourth Amendment.

It is the district court's judgment that no warrant, probable cause, or even a reasonable suspicion that a person has committed, is committing or is about to commit a crime and that person is armed AND dangerous is required. In short, the district court held that there is an automatic firearms exception to the Fourth Amendment and equated the possession of firearms, even those lawfully possessed, to the possession of illegal drugs citing *US v. Jefferson*, 566 F.3d 928, 933 (9th Cir. 2009) for the proposition that there is no "possessory interest" in carrying firearms. ER38.

It is unclear whether or not PC25850(b) is a substantive crime in and of itself or is merely an authorizing statute but this subsection clearly states that refusal constitutes probable cause for an arrest.

It is well established that mere refusal to consent does not, and cannot, constitute even reasonable suspicion that a crime has been, is being, or will be committed. To hold otherwise, as the district court below did, would render the Fourth Amendment null and void.

In the case of a minor who was too young to legally possess or carry a handgun and too young to obtain a license to carry a handgun thereby removing any doubt that he was in lawful possession of a handgun, the California court of appeal held:

> "The minor contends the assertion of his Fourth Amendment rights, without more, did not create reasonable suspicion he was armed and dangerous. We agree. "A refusal to consent to a search cannot itself form the basis for reasonable suspicion: `it should go without saying that consideration of such a refusal would violate the Fourth Amendment.' [Citations.] If refusal of consent were a basis for reasonable suspicion, nothing would be left of Fourth Amendment protections. A motorist who consented to a search could be searched; and a motorist who refused consent could be searched, as well." (*United States v. Santos* (10th Cir. 2005) 403 F.3d 1120, 1125-1126, quoting *United States v. Wood* (10th Cir. 1997) 106 F.3d 942, 946.)" *In re HH,* 174 Cal. App. 4th 653, 658 (2009).

See also: *US v. Prescott*, 581 F.2d 1343, 1351 (9th Cir. 1978); *Gasho v. US* 39 F.3d 1420, 1431 (9th Cir. 1994); *GRAVES v. CITY OF COEUR D'ALENE*, 339 F.3d 828, 842 (9th Cir. 2003); *Thomas v. Dillard*, 818 F.3d 864, 884 (9th Cir. 2016).

Similarly, the US Supreme Court affirmed an en banc panel decision of this Court in *CITY OF L. A. V. PATEL*, 135 S.Ct. 2443 (2015) which facially invalidated, under the Fourth Amendment, a City of Los Angeles ordinance which made it a crime to merely refuse to consent to the turning over of hotel registries for inspection. The court below had held that laws were not subject to facial Fourth Amendment challenges. That, coupled with the holding of the court that Plaintiff-Appellant Nichols was prohibited from bringing any as-applied challenge created a Catch-22 which the court below held fast through final judgment.

This court has in numerous cases held that consent to a search and seizure must be freely and voluntarily given, even when firearms are involved. See *Dillard, supra*. In *US v. Vongxay*, 594 F. 3d 1111 (9th Circuit 2010) this court held that Vongxay was required to do what California has criminalized and that is

68

refuse to consent to a search and seizure in order for him to be protected by the Fourth Amendment.

Had Vongxay not consented to the search and seizure, his conviction for being a felon in possession of a handgun would have been overturned. If Appellant Nichols refuses to consent to the search and seizure of his person and property even though there is not any basis for believing he is engaged in any criminal activity then, under California law (PC25850(b)), he has committed a crime and is subject to arrest, prosecution, fine and imprisonment.

This Court recently held that for there to be a reasonable suspicion [grounds] that a firearm is loaded in violation of PC25850(a) the Court must take "into account the totality of the circumstances…" *US v. Nora*, 765 F. 3d 1049, 1053 (9th Circuit 2014). Ironically, on the same page of the *Nora* decision, this Court gave an example of a firearm left unattended in a vehicle in which it said it was more plausible to assume that the firearm was unloaded and therefore not in violation of PC25850(a).

Appellant Nichols submits that to assume that a firearm openly carried is loaded in violation of PC25850 in a place where it is legal to openly carry an

69

unloaded firearm, and by certain persons under some circumstances loaded, is no different from assuming that a person who openly carries a firearm, loaded or unloaded, is a convicted felon or some other person who is prohibited from even possessing a firearm. See *US v. Black*, 707 F. 3d 531, 540 (2013).

Plaintiff-Appellant Nichols further submits that carrying a firearm, openly or concealed, in a place where the carriage of a firearm is completely forbidden by all but the police would still not constitute probable cause or a reasonable suspicion that the firearm is loaded.

Even the fact that *Nora* was carrying his handgun in his hand "at the ready" was just one element in the analysis as to whether or not *Nora* had carried a loaded firearm in violation of the law. Given the totality of the circumstances this Court concluded that *Nora* had violated PC25850(a) by carrying a loaded firearm off of his property, in a public place but nonetheless overturned his conviction because of the circumstances of where his arrest took place (his home) which this Court concluded violated the Fourth Amendment for a variety of reasons. *Id* at 1054-1055.

70

The Fourth Amendment has erected a series of hurdles a police officer must overcome before he can constitutionally search and seize a person and his property. These hurdles are highest in and around one's home.

The US Supreme Court has always held that the curtilage of one's home enjoys protection as part of the home itself. *Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013).

> "In situations where the underlying offense is only a misdemeanor, law enforcement must yield to the Fourth Amendment in all but the rarest cases*." U.S. V. STRUCKMAN*, 603 F.3d 731, 745 (9th Cir. 2010).
>
> Violation of PC25850(a) when a firearm is openly carried is a misdemeanor.
>
> The *Terry* exception to the warrant requirement does not apply to in-home searches and seizures. *Id* at 738. It is clearly established Federal law that the warrantless search of a dwelling must be supported by probable cause and the existence of exigent circumstances. *Id* at 739. No amount of probable cause can justify a warrantless arrest or entry absent an exception to the warrant requirement. *Id* at 743.

The *Terry* exception, which this Court has held does not apply to the curtilage of one's home in *Struckman* did not prevent the warrantless arrest and conviction in *People v. Overturf*, 64 Cal. App. 3d 1 (1976) which was "surrounded by fencing" *Id* at 3 for violating PC25850(a) in which a California appellate court concluded, over a vigorous dissent, that the exception for "owning, possessing, or

71

keeping" a firearm at one's place of residence or business does not equate with "carrying" such a weapon. *Id* at 7.

A California appellate court would subsequently hold in *People v. Strider*, 177 Cal. App. 4th 1393 (2009) that residential property surrounded by fencing four and a half feet high (possibly at least three and a half feet high) is not a "public place" where the carriage of a loaded firearm is prohibited by PC25850(a) even if one can see through the fence, the gate is unlocked (or even standing open).

Even if one were to construe that *Strider* now applies statewide via this Court's decision in *Nora*, it is an undisputed fact that the *Strider* exception does not apply to Appellant Nichols because his property is not fully enclosed by a "substantial barrier" as described in *Strider*.

> "It is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. There are, moreover, two additional conditions that must be satisfied to justify the warrantless seizure. First, not only must the item be in plain view; its incriminating character must also be "immediately apparent." Id., at 466; see also *Arizona v. Hicks*, 480 U.S., at 326-327. Thus, in *Coolidge*, the cars were obviously in plain view, but their probative value remained uncertain until after the interiors were swept and examined microscopically. Second, not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also

have a lawful right of access to the object itself. *HORTON v. CALIFORNIA*, 496 U.S. 128, 136 (1990).

That an openly carried firearm is *loaded* in violation of PC25850(a) is something which cannot be "plainly viewed" and cannot be "immediately apparent."

The only way to determine that a firearm is loaded is to examine the firing chamber of the firearm. That the mere sight of an openly carried firearm gives a police officer the lawful right to the search and seizure of the person and property of a person who openly carries a firearm in a place where it is legal to openly carry a firearm, even a loaded one under certain circumstances, in order to discover whether or not the "crime" of carrying a loaded firearm has been committed cannot be held to be a "reasonable" search and seizure under the Fourth Amendment.

Merely observing a firearm, without additional grounds for suspicion, does not provide probable cause to believe the firearm is loaded in violation of section PC25850 and thus subject to search and seizure as evidence of the commission of a crime. (See *People v. Muniz*, 4 Cal.App.3d 562, 567(1970) [84 Cal.Rptr. 501] and *Nora, supra*).

The district court grievously erred when it held that there is an automatic firearms exception, contrary to *FLORIDA v. J. L*, 529 U.S. 266, 272 (2000), to the Fourth Amendment which was compounded by its reliance on a 1970 drug case (*Delong* ER39) where the California court held that the mere sight of a firearm in the trunk of a motor vehicle (in a place where PC25850 did not even apply) was all that was required to search the trunk of the motor vehicle and uphold the conviction for possessing illegal drugs.

The one citation from this Court mentioning PC25850(b) which the district court relied upon, but which was never raised by the Defendants-Appellees is *US v. Brady*, 819 F. 2d 884 (9th Circuit 1987) in which this Court, in its alternate holding, acknowledged that the California courts were divided on the constitutionality of PC25850(b):

"Some California courts have held that the police must have probable cause to believe that a firearm is loaded before they may inspect it." Without conducting any analysis or giving due consideration to the alternate holdings of the California courts, this court sided with what it considered to be "the prevailing view that the

police may inspect a firearm which they know is in a vehicle, regardless of whether they have probable cause to believe that it is loaded" *Id* at 889

The principle holding in *Brady* was that the police had probable cause for a variety of reasons unrelated to PC25850(b).

> "Of course, not every statement of law in every opinion is binding on later panels. Where it is clear that a statement is made casually and without analysis, where the statement is uttered in passing without due consideration of the alternatives, or where it is merely a prelude to another legal issue that commands the panel's full attention, it may be appropriate to re-visit the issue in a later case. *U.S. v. JOHNSON*, 256 F.3d 895, 915 (9th Cir. 2001).

> In the nearly thirty years since *Brady*, only two courts, both district courts,

have cited the alternate section of *Brady* which the court below held was controlling and that other court in *US v. Paredes,* 388 F. Supp. 2D 1185 (2005) cited *Brady* for the proposition that "the mere possibility that Paredes was engaged in lawful conduct does not defeat a showing of probable cause" and based its decision on the "totality of the circumstances" according to *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir.1994). *Id* at 1198.

*Brady's* alternate holding *is not* constrained by a totality of the circumstances. *Brady's* alternate holding is that a person in possession of a firearm falls outside the scope of the Fourth Amendment regardless of the circumstances.

75

There is one longstanding exception to the warrant requirement for automobiles - *Carroll v. United States*, 267 US. 132 (1925). But none of the exceptions expressed in *Carroll* and its progeny were present in *Brady's* alternate holding which the district court below held was controlling.

There is no authorizing statute applicable to the twin bans on openly carrying modern, unloaded concealable and non-concealable firearms to see if they are unloaded or antiques, let alone to verify whether or not a person openly carrying a firearm falls into the BPC, WIC and other exceptions.

Other Federal courts of appeal have published decisions which have met the Fourth Amendment question head on as they relate to the carriage of firearms, openly and concealed, and they directly conflict with the judgment of the district court and with this Court if *Brady's* alternate conclusion is not discounted as the outlier it is. The Sixth Circuit has also addressed Open Carry and the Fourth Amendment head on.

> Clearly established law required Bright to point to evidence that Northrup may have been "armed and dangerous." *Sibron v. New York*, 392 U.S. 40, 64, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (emphasis added). Yet all he ever saw was that Northrup was armed—and legally so. To allow stops in this setting "would effectively eliminate Fourth Amendment protections for

lawfully armed persons." *United States v. King*, 990 F.2d 1552, 1559 (10th Cir.1993); accord *United States v. Ubiles*, 224 F.3d 213, 218 (3d Cir.2000); *United States v. Black*, 707 F.3d 531, 540 (4th Cir.2013); *United States v. Roch*, 5 F.3d 894, 899 (5th Cir.1993). *Northrup v. City of Toledo Police Dep't*, 785 F.3d 1128, 1132 (6th Cir. 2015)

The analogy cited in *Northrup* at 1133 from *Ubiles* is directly on point. A wallet might contain counterfeit currency but merely knowing that a person is carrying a wallet does not justify violating the Fourth Amendment by stopping that person and searching his wallet for counterfeit bills. Similarly, a firearm might be unlawfully loaded (or it might be lawfully loaded), but simply knowing that a person is openly carrying a firearm in a place where it is legal for him to openly carry a firearm does not justify violating the Fourth Amendment by stopping that person, taking his firearm and inspecting the firearm in order to determine whether or not the "crime" of carrying a loaded firearm has been committed.

California law purportedly permits unloaded long guns, both antique and modern, to be prominently displayed inside the cab of a motor vehicle, such as in a gun-rack. According to the district court the police are free to stop these motorists absent probable cause or reasonable suspicion and even absent a pretextual stop such as a minor traffic infraction (no seat belt, expired tags, etc) in order to determine whether or not those firearms are in violation of PC25850(a).

77

A police "officer's mistaken belief that there has been a violation does not provide the required objective facts leading to a reasonable belief." *PEOPLE v. KNIGHT*, 121 Cal.App.4th 1568 (Cal. Ct. App. 2004) at [fn 4] as occurred in *Knight* at 1568-1572.

The Fourth Amendment argument thus far has been independent of the Second Amendment.

In the district court the Appellees took the position that the Second Amendment did not extend even one inch outside the doors of one's home. More precisely the Appellees never even conceded that the Second Amendment exists inside of one's home which is not surprising given that Appellee Harris' position is that the *Heller* decision was wrongly decided and, as attorney general, Appellee Brown wrote an Amicus brief in *McDonald* which asked the US Supreme Court to limit the scope of incorporation of the Second Amendment right to one's home.

The Appellees have never cited a case where one must give up his Fourth Amendment right in order to exercise his Second Amendment right because there isn't one. SAC ¶57 ER242.

78

Under California law, the act of firearm possession, by itself, is innocent and cases depend upon when and where that innocent possession becomes unlawful such as when the person possessing the firearm is a felon, the firearm is concealed, and the firearm is loaded. *People v. Jones*, 278 P. 3d 821 - Cal: Supreme Court (2012) at 356.

The Second Amendment makes the act of firearm possession more than innocent; it makes firearms possession, carriage and use of a firearm for the purpose of self-defense an enumerated, fundamental, individual right which elevates firearms above ordinary objects and certainly does not allow for firearms to be presumptively contraband as the court below held.

According to the district court below, presumptively lawful firearms possession is no better than the illegal possession of drugs. Worse, the district court below held that there is no possessory interest in firearms even if those firearms are lawfully possessed.

A search is a search, even if it happens to disclose nothing but the bottom of a turntable. *Arizona v. Hicks*, 480 U.S. 321 , 325 (1987), or in the case of an involuntary search under PC25850(b), nothing but an empty firing chamber.

PC25850(b) grants police officers unbridled discretion to search and seize a person and his property. The purpose of this law should not be overlooked. It was enacted in order to harass racial minorities and that is how it was used. See *People v. Seale*, 274 Cal. App. 2d 107 (1969) (Bobby Seale was the co-founder of the Black Panther Party for Self-Defense).

Plaintiff-Appellant Nichols submits that PC25850(b) violates the Fourth Amendment and asks this Court to issue a permanent injunction against its enforcement and to issue a declaration that mere refusal to consent to a search and seizure does not constitute probable cause or reasonable suspicion.

## VI.  Laws Challenged in this Appeal Violate The Due Process and Equal Protection Clauses of the Fourteenth Amendment

U.S. Const. amend. XIV, § 1 "[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws"; *Graham v. Richardson*, 403 U.S. 365, 371 (1971) (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886)).

80

To find a similarly situated person to Plaintiff-Appellant Nichols' who is not banned from openly carrying a loaded firearm in violation of PC25850 one need travel no further than directly across a narrow residential street to his neighbors' homes or to simply walk around his block.

Those with sufficiently tall fences are exempt from the ban in the curtilage of his home. Walk a few more blocks and you'll find yourself in unincorporated county territory. Walk another mile or so and you'll find yourself in an unincorporated village where, under the canons of judicial construction, the loaded and unloaded Open Carry bans do not apply.

Hunters and other similarly situated persons have previously been listed as were the BPC, WIC and other exceptions to the loaded and unloaded Open Carry bans. The tens of thousands of persons with concealed carry permits in this state are likewise exempt from the ban on carrying loaded firearms (concealed or openly depending upon the population of the county) and are exempt as well from the bans on openly carrying modern, unloaded firearms and are exempt state-wide.

Contrary to the holding of the district court below, the handgun Open Carry licenses are not restricted based on whether or not a county or city is "rural." The

81

dividing line is the population of a county. Los Angeles County has far more rural

acreage than most of these "rural" counties and it has cities that are far less

populated (rural) by any metric (density or number).

Los Angeles County has the smallest and largest incorporated cities and

cities with a comparable population to every city in a county with a population of

fewer than 200,000 people in this state.

The incorporated city of Redding (Shasta County) with a population of

89,861, is not prohibited from issuing handgun Open Carry licenses. Redding

California is not some wilderness outpost. Yet California City (Kern County) is an

incorporated city encompassing 203 square miles but a population of only 14,120

people and handgun Open Carry licenses are not available there.

Marriage, including same sex marriage, is not an *enumerated*, fundamental

right and yet same sex couples cannot be denied marriage licenses regardless of

whether of where they live. See *Obergefell v. Hodges*, 135 S.Ct. 2071 (2015).

Plaintiff-Appellant Nichols submits that the denial of his handgun Open

Carry license, which was based solely on the population of the county in which he

lives, is a violation of the Due Process Clause of the Fourteenth Amendment and

82

the equal protection clause of the Fourteenth Amendment as are the bans on openly

carrying loaded and unloaded firearms. He also submits that there is no rational-

basis for subjecting him to these bans while at the same time exempting similarly

situated persons from the bans. And as the Second Amendment right is an

individual, fundamental, enumerated right, the bans fail any level of judicial

scrutiny.

## VII. "Prohibited Areas" is Void for Vagueness and Violates Due Process

The citation to *U.S. v. PURDY*, 264 F.3d 809 (9th Cir. 2001) by the court

below and its conclusion that vagueness challenges are not cognizable outside of

the First Amendment conflicts with *Purdy*. This court in *Purdy* decided that

although it would not entertain a facial challenge it would decide whether or not

the statute is impermissibly vague in the circumstances of the case before it. *Id* at

811. An "as-applied" vagueness challenge is far less of a hurdle than a facial

vagueness challenge because a law can be unconstitutionally vague as applied to a

specific circumstance but not in other circumstances.

"[A]statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Connally v. General Construction Co.* 269 U.S. 385, 391 (1926).

A man of common intelligence knows that an unloaded firearm is not loaded and if the California courts had construed the term "loaded" in a manner which precluded an arrest, prosecution, fine and conviction under this statute for carrying an unloaded firearm then the term "loaded" would not be vague. They have not.

An example of a law which better defines "loaded", albeit incompletely and only partially for firearms with magazines, is California Fish and Game Code section 2006(b) which defines loaded as having an unexpended cartridge or shell in the firing chamber but a firearm is not loaded if they are in the attached magazine.

The Defendants-Appellees would vigorously argue in the court below that the "attached in any manner" definition was not vague but then turned around and vehemently claimed that Appellant-Nichols firearm, which had a .223 caliber bullet taped to the stock of his single-shot, breech-loading 12-gauge shotgun during his protest, was not loaded under the statute.

84

In denying Appellee Harris' motion to dismiss the First Amended Complaint the court below held that a firearm is not loaded if the shell is placed elsewhere and not in the firing position citing *People v. Clark*, 45 Cal. App. 4th 1147, 1153, 53 Cal. Rptr. 2d 99 (1996). ER57.

Prior to 1967, a revolver was unloaded if the firing chamber did not have a live round in it. *Clark* also seemed to say that an unloaded firearm is "loaded" if a magazine or clip is attached which is how *Clark* was construed in *Rupf v. Yan*, 102 Cal. Rptr. 2d 157 (2000) at 172 and [fn 7].

The court below held that vagueness claims are not cognizable outside of the First Amendment. ER42. This Court has held, citing US Supreme Court precedent, that "In making a vagueness challenge, a plaintiff actually raises a due process, as opposed to First Amendment, claim...Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment." *HUNT v. CITY OF LOS ANGELES*, 638 F.3d 703, 710 (9th Cir. 2011) (internal citations omitted).

The US Supreme Court recently held that the Armed Career Criminal Act's ("ACCA") residual clause is void for vagueness *Johnson v. United States*, 135 S.

85

Ct. 2551 (2015). *Johnson* was not a First Amendment case. It was a successful

challenge to a criminal law involving a felon in possession of a firearm. *Id* at

2555. Specifically, "a short-barreled shotgun." *Id* at 2556. Crucial to the analysis

as well is "[O]ur holdings squarely contradict the theory that a vague provision is

constitutional merely because there is some conduct that clearly falls within the

provision's grasp." *Id* at 2561.

"The prohibition of vagueness in criminal statutes "is a well-recognized

requirement, consonant alike with ordinary notions of fair play and the settled rules

of law," and a statute that flouts it "violates the first essential of due process.""

*Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322

(1926). These principles apply not only to statutes defining elements of crimes, but

also to statutes fixing sentences. *United States v. Batchelder*, 442 U.S. 114, 123, 99

S.Ct. 2198, 60 L.Ed.2d 755 (1979). *Id* at 2556.

This Court has struck down laws for being unconstitutionally vague outside

of a First Amendment context. See *Gallardo v. Lynch*, 818 F.3d 808, 819 (9th Cir.

2016); *Dimaya v. Lynch*, 803 F.3d 1110, 1111 (9th Cir. 2015); *Desertrain v. City

of L. A.,* 754 F.3d 1147, 1155 (9th Cir. 2014).

And when this Court has clung to the notion that vagueness claims outside the First Amendment are subject to a higher hurdle, it has invalidated a law despite the higher hurdle because the terms were incomprehensible and provided no standard of conduct at all. *Valle Del Sol Inc. v. Whiting*, 732 F.3d 1006, 1019 (9th Cir. 2013).

Plaintiff-Appellant Nichols submits that the prohibition on carrying firearms in "prohibited areas," even as defined by PC17030, is void for vagueness.

For example, discharging a firearm in order to commit a murder is always unlawful. Discharging a firearm in order to prevent a murder is always lawful.

Some counties have ordinances prohibiting the discharge of firearms, others have none. Los Angeles County says none of its ordinances should be construed as prohibiting the carrying of loaded firearms for the purpose of self-defense or in defense of property. See Los Angeles County Municipal Code section 13.66.010 http://lacounty-ca.elaws.us/code/coor_title13_div8_ch13.66_pt1_sec13.66.010 (last visited 10/15/2016).

*People v. Knight*, 18 Cal. Rptr. 3d 384, 389 (2005) rejected the state's position that PC25850 prohibits the carrying of loaded firearms *"in any public*

87

*place"* and the court emphasized that the ban applies to "*incorporated cities*" at 387 but made no mention of unincorporated cities, towns and villages. See also *People v. Vega*, 18 Cal. App. 3d 954, 957, 958 (1971).

The state would later take the position that the ban (PC25850(a)) applies to unincorporated cities as well. This position would be rejected by the California Court of Appeals. Unfortunately the decision is unpublished. See *People v. VILLASENOR-LOPEZ*, pgs 7-8, Cal: Court of Appeal, 1st Appellate Dist., 2nd Div. No.: No. A142379 (August 14, 2015).

California has many unincorporated cities, unincorporated towns, and villages. Does PC25850 ban loaded firearms from being openly carried in those places? Does PC26350 ban the Unloaded Open Carry of handguns in those places? We don't know and it is impossible to know from a plain English reading of the text of the bans. GOV20 excludes "unincorporated towns" and villages from the definition of "City" but see *VILLASENOR-LOPEZ* where the court said it could find nothing which made the Government Code applicable to the Penal Code.

Does a county ordinance which prohibits the discharge of a firearm in certain locations of unincorporated county territory for certain reasons, such as

hunting or target shooting (or for no reason), but not for the purpose of self-defense, fall within the "prohibited area" of PC25850 and PC26350? What about the "prohibited areas" of unincorporated county territory where the county (e.g., Sacramento) has no self-defense exception in its county ordinances? How is Plaintiff-Appellant Nichols, or anyone for that matter, going to know if openly carrying a loaded firearm (or openly carrying an unloaded handgun (PC26350(a)(1)) in an unincorporated city, town or village is doing so in a "prohibited area" if he can't tell by a plain English reading of the statutes? Never mind the lack of a published court decision clearly defining when and where these bans apply outside of an incorporated city. What if a state law or county ordinance prohibits the *reckless discharge* of a firearm but not the mere discharge of a firearm as well? Are those prohibited areas as well?

The Attorney General Opinion No. 68-175 of October 3, 1968 isn't much help either, at least not in terms of resolving the ambiguities in PC25850 other than concluding that persons who fall within the exemption of FGC3004 are not prohibited from openly carrying loaded firearms "while within 150 yards of an occupied dwelling house, residence, or other building, or within 150 yards of a barn or other outbuilding used in connection with an occupied dwelling house,

residence, or other building..." ER257. PC415 no longer prohibits the discharge of a firearm. Does this change now expand (or contract) the prohibited areas? ER260.

"[I]t is no answer to say that the law is on the books, the books are in the public library, and anyone can go read them." *Conley v. US*, 79 A. 3d 270, 283 – DC Court of Appeals (2013).

Here, there is no library, or books or even case law. One has no way of knowing what is a "prohibited area" and an affirmative defense shifts the burden: "shifting of the burden of persuasion with respect to a critical component of the crime is incompatible with due process." *Conley* at 272-273. Also, as a person has no way of knowing if he is in a "prohibited area," his entirely innocent act of openly carrying a loaded firearm (or firearm he believes to be unloaded) or openly carrying an unloaded handgun into a prohibited area "[W]ithout requiring the government to prove that the defendant had notice of any legal duty to behave otherwise... is a defect that we cannot cure by interpreting the statutory language." Id. "[T]he recent definitive recognition of a Second Amendment right to possess guns for self-protection, individuals (especially visitors from other jurisdictions)

90

who do not happen to be well-versed in the intricacies of the District's firearms laws may not see anything wrong in the presence of a gun or realize that the local law may proscribe its possession or transportation." *Id* at 285.

Here is map of the County of Los Angeles.  No man of common intelligence can possibly know which of the areas outside of the 88 incorporated cities is a prohibited area under the law.  The same is true of every other county with the exception of San Francisco, an *incorporated city* which overlaps the county.

**Map of The County of Los Angeles**

**The 88 Cities in the County of Los Angeles**

| City Name | Supervisorial District | City Name | Supervisorial District |
|---|---|---|---|
| Agoura Hills | 3 | La Verne | 5 |
| Alhambra | 5 | Lawndale | 2 |
| Arcadia | 5 | Lomita | 4 |
| Artesia | 4 | Long Beach | 4 |
| Avalon | 4 | Los Angeles | 2,4 |
| Azusa | 1 | Lynwood | 2 |
| Baldwin Park | 1 | Malibu | 3 |
| Bell | 1 | Manhattan Beach | 4 |
| Bell Gardens | 1 | Maywood | 1 |
| Bellflower | 4 | Monrovia | 5 |
| Beverly Hills | 3 | Montebello | 1 |
| Bradbury | 5 | Monterey Park | 1 |
| Burbank | 5 | Norwalk | 4 |
| Calabasas | 3 | Palmdale | 5 |
| Carson | 2 | Palos Verdes Estates | 4 |
| Cerritos | 4 | Paramount | 4 |
| Claremont | 1 | Pasadena | 5 |
| Commerce | 1 | Pico Rivera | 1 |
| Compton | 2 | Pomona | 1 |
| Covina | 5 | Rancho Palos Verdes | 4 |
| Cudahy | 1 | Redondo Beach | 4 |
| Culver City | 2 | Rolling Hills | 4 |
| Diamond Bar | 4 | Rolling Hills Estates | 4 |
| Downey | 4 | Rosemead | 1 |
| Duarte | 5 | San Dimas | 5 |
| El Monte | 1 | San Fernando | 3 |
| El Segundo | 4 | San Gabriel | 5 |
| Gardena | 2 | San Marino | 5 |
| Glendale | 5 | Santa Clarita | 5 |
| Glendora | 5 | Santa Fe Springs | 4 |
| Hawaiian Gardens | 4 | Santa Monica | 3 |
| Hawthorne | 2 | Sierra Madre | 5 |
| Hermosa Beach | 4 | Signal Hill | 4 |
| Hidden Hills | 3 | South El Monte | 1 |
| Huntington Park | 1 | South Gate | 1 |
| Industry | 1 | South Pasadena | 5 |
| Inglewood | 2 | Temple City | 5 |
| Irwindale | 1 | Torrance | 4 |
| La Canada-Flintridge | 5 | Vernon | 1 |
| La Habra Heights | 4 | Walnut | 1 |
| Lakewood | 4 | West Covina | 1 |
| La Mirada | 4 | West Hollywood | 3 |
| Lancaster | 5 | Westlake Village | 3 |
| La Puente | 1 | Whittier | 4 |

**CONCLUSION**

This is an important case but it is not complex. Plaintiff-Appellant Nichols asks that this Court reverse the judgment of the district court and issue an order, or instruct on remand that an order be immediately issued, to the effect of: a permanent injunction against the state laws Plaintiff-Appellant Nichols sought to enjoin here and in his SAC including, but not limited to: PC25850, PC25850(a), PC2580(b), PC26350, PC26400, PC26150, PC26155, and that the permanent injunctions and declaratory relief should be issued against both the Governor and the Attorney General in their official capacity, that these laws shall be enjoined facially, or as-applied to the Open Carry of firearms.

He further asks that this Court issue an order, or instruct on remand that an order be immediately issued, directing the attorney general to enter into her database that Plaintiff-Appellant Nichols is permanently licensed to openly carry a loaded firearm (unrestricted) pursuant to California Penal Code section 26150, 26155, to automatically renew that unrestricted license, to issue him a proof of unrestricted license and for her to instruct all police chiefs and county sheriffs that they are to issue him a proof of license once she has created a state-wide standard

92

proof of license. And for her to modify her state-wide application reflecting the enjoined statutes as-applied to licenses to openly carry handguns and instructing all sheriffs and police chiefs to issue unrestricted licenses to openly carry handguns.

He further asks that this Court issue an order, or instruct on remand that an order be immediately issued, granting the Prayer for Relief sought against the Attorney General in the SAC against both her and the Governor in their official capacity and additional relief this Court deems just and proper.

This Court should state in no uncertain terms that it is not required for someone to violate a law in order to have standing to challenge that law under the Second Amendment. Plaintiff-Appellant Nichols was given little or no choice by the court below. Had he not violated PC25850, his First Amended Complaint would have certainly been dismissed with prejudice and the question before this Court would have been whether or not he has standing instead of the constitutionality of the laws at issue. It would have taken years before the eventual remand back to the district court which would have entailed him starting from the beginning.

As importantly, the decision of this Court should express in no uncertain terms that the rights Plaintiff-Appellant Nichols seeks to vindicate here are fundamental, individual rights and not some sandbox for the inferior courts to uphold the violation of these rights or for Federal, state or local governments to devise new laws to violate these rights. Should Plaintiff-Appellant Nichols prevail here, the California legislature will enact new Open Carry bans and why wouldn't they given their immunity and the reluctance of the courts to enjoin the laws which violate the US Constitution?

The judgment of the district court below should be reversed. If it is remanded then it should be with instructions to enter summary judgment for Plaintiff-Appellant Nichols *in full* (prospective injunctive and declaratory relief) against both the Governor and Attorney General as described above and in his SAC.

## STATEMENT OF RELATED CASES

**Christopher Baker v. Louis Kealoha, et al No.: 12-16258** is the appeal of the denial of a preliminary injunction in which Mr. Baker seeks to carry a handgun in public. He did not apply for a handgun Open Carry license. He has asked for a remand and he promised not to file for a new preliminary injunction. Baker is likely to be remanded before Nichols v. Brown et al is fully briefed.

**George Young, Jr. v. State of Hawaii, et al No.: 12-17808** Mr. Young raises for the first time on appeal a challenge to Hawaii's ban on openly carrying long guns in public.

Dated: November 7, 2016                Respectfully submitted,

Charles Nichols

By:    _s/ Charles Nichols_____

CHARLES NICHOLS
Plaintiff-Appellant In Pro Per

95

**Form 8.    Certificate of Compliance Pursuant to 9th Circuit Rules 29-2(c)(2) and (3), 32-2 or 32-4[1] for Case Number** <u>14-55873</u>

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (check appropriate option):

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b). The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable, and is filed by (1)☐ separately represented parties; (2)☐ a party or parties filing a single brief in response to multiple briefs; or (3)☐ a party or parties filing a single brief in response to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☒ This brief complies with the longer length limit authorized by court order dated [01/21/2015]. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). This brief is [17,993] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Circuit Rule 32-2(a) and is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Circuit Rule 29-2(c)(2) or (3) and is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4. The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Signature of Attorney or Unrepresented Litigant [s/ Charles Nichols]    Date [11/09/2016]

("s/" plus typed name is acceptable for electronically-filed documents)

---

[1] If filing a brief that falls within the length limitations set forth at Fed. R. App. P. 32(a)(7)(B), use Form 6, Federal Rules of Appellate Procedure.

*(Rev.7/1/16)*

9th Circuit Case Number(s)

14-55873

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)  11/09/2016 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)   s/ Charles Nichols

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)