No. 14-55873 [DC 2:11-cv-09916-SJO-SS]

IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Charles Nichols,

*Plaintiff-Appellant*

v.

Edmund Brown, Jr., in his official capacity as the Governor of California
and
Kamala Harris in her official capacity as the Attorney General of California

*Defendants-Appellees.*

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
[DC 2:11-cv-09916-SJO-SS]

APPELLANT'S PETITION FOR APPEAL TO BE HEARD INITIALLY EN BANC

Charles Nichols
PO Box 1302
Redondo Beach, CA  90278
Tel. No. (424) 634-7381
e-mail: CharlesNichols@Pykrete.info
In Pro Per

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... i

INTRODUCTION AND RULE 35 STATEMENT ................................... 1

STATEMENT ........................................................................................... 8

REASONS FOR GRANTING THE PETITION ..................................... 12

    I.    This is the First, and Likely Last, Challenge to California's Open Carry Bans ....................................................................... 12

    II.    The Decision of the Court below Conflicts with United States Supreme Court Decisions ................................................... 14

    III.    The Decision of the Court below Conflicts with Binding Decisions of this Court and Federal Appellate Courts from Other Circuits .......... 14

    IV.    The Court below Created its Own Second Amendment Framework which Conflicts with *US v. Chovan*, 735 F. 3d 1127 (9th Circuit 2013), *Jackson v. City and County of San Francisco*, 746 F. 3d 953 (9th Circuit 2014) and the Framework of Every Other Federal Circuit ................................................................................... 14

    V.    The Questions Presented are Exceptionally Important ..................... 16

CONCLUSION ....................................................................................... 16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM 1

*Nichols v. Harris*, 17 F.Supp.3d 989 (2014).  Challenged Final Judgment of

District Court

ADDENDUM 2

*NICHOLS v. BROWN*, 859 F.Supp.2d 1118 (2012). Challenged dismissal with

prejudice of Plaintiff-Appellants claims under the California Constitution and

dismissal with prejudice of California Governor Brown in his official capacity.

# TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*Arizona v. Hicks*,
  480 U.S. 321 (1987)...................................................................7

*Caetano v. Massachusetts*,
  136 S. Ct. 1027 (Supreme Court 2016) .............................2

*Carnegie-Mellon Univ. v. Cohill*,
  484 US 343 (Supreme Court 1988) ...................................6

*Carroll v. United States*,
  267 US. 132 (1925).........................................................6

*CITY OF L. A. V. PATEL*,
  135 S. Ct. 2443 (Supreme Court 2015) ..............................7

*Conley v. US*,
  79 A. 3d 270 (DC Court of Appeals (2013) .......................7

*Connally v. General Construction Co*.
  269 U.S. 385 (Supreme Court 1926) .................................7

*Del Campo v. Kennedy*,
  517 F.3d 1070 (9th Cir. 2008) ..........................................6

*Desertrain v. City of L. A.*,
  754 F.3d 1147 (9th Cir. 2014) ..........................................8

*Dimaya v. Lynch*,
  803 F.3d 1110 (9th Cir. 2015) ..........................................8

*District of Columbia v. Heller*,
  128 S. Ct. 2783 (Supreme Court 2008) ...................... 2-4, 16

*Drake v. Filko*,
  724 F. 3d 426 (3rd Cir. 2013) ...........................................2

i

*Ex parte Young*,
209 US 123 (Supreme Court 1908) ........................................................6

*Florida v. Jardines*,
133 S. Ct. 1409 (2013) ...........................................................................7

*Furnace v. Sullivan*,
705 F. 3d 1021 (9th Cir. 2013) ...........................................................16

*Gallardo v. Lynch*,
818 F.3d 808 (9th Cir. 2016) .................................................................8

*Gasho v. United States*,
39 F.3d 1420 (9th Cir.1994) ..................................................................7

*Graham v. Richardson*,
403 U.S. 365 (Supreme Court 1971) .....................................................7

*Hightower v. City of Boston*,
693 F. 3d 61 (1st Cir. 2012) .................................................................2

*Hill v. Blind Indus. & Servs. of Md.*,
201 F.3d 1186 (9th Cir. 2000) ..............................................................6

*HORTON v. CALIFORNIA*,
496 U.S. 128 (1990) ..............................................................................7

*HUNT v. CITY OF LOS ANGELES*,
638 F.3d 703 (9th Cir. 2011) ................................................................8

*Hunter v. Underwood*,
471 US 222 (Supreme Court 1985) .....................................................16

*Hyland v. Wonder*,
117 F.3d 405 (9th Cir.) ..........................................................................6

*ITSI TV Prods., Inc. v. Agric. Ass'ns*,
3 F.3d 1289 (9th Cir. 1993) ...................................................................6

ii

*Jackson v. City and County of San Francisco*,
    746 F. 3d 953 (9th Cir. 2014) ............................................................................14

*Johnson v. United States*,
    135 S. Ct. 2551 (2015)...................................................................................7

*Kachalsky v. County of Westchester*,
    701 F. 3d 81 (2nd Cir. 2012).........................................................................2

*Kitchen v. Herbert*,
    755 F.3d 1193 (10th Cir. 2014) ...................................................................6

*Lacey v. Maricopa Cnty.*,
    693 F.3d 896 (9th Cir. 2012) .......................................................................7

*LOS ANGELES COUNTY BAR ASS'N v. EU*,
    979 F.2d 697 (9th Cir. 1992) .......................................................................6

*Mapp v. Ohio*,
    367 US 643 (Supreme Court 1961) .............................................................6

*McDonald v. City of Chicago, Ill.*,
    130 S. Ct. 3020 (Supreme Court 2010) ................................................. 2-3

*Moore v. Madigan*,
    702 F. 3d 933 (7th Cir. 2012) .................................................................2, 15

*National Rifle Ass'n of America, Inc. v. McCraw*,
    719 F. 3d 338 (5th Cir. 2013) .......................................................................2

*Nichols v. Harris*,
    17 F. Supp. 3d 989 (Dist. Court, CD California 2014)......................................16

*Northrup v. City of Toledo Police Dep't*,
    785 F.3d 1128 (6th Cir. 2015) ......................................................................7

*Obergefell v. Hodges*,
    135 S. Ct. 2071 (2015)..................................................................................7

*Parker v. District of Columbia,*
    478 F. 3d 370 (Dist. of Columbia Cir. 2007)........................................2

*People v. Dykes,*
    209 P. 3d 1 (Cal Supreme Court 2009)................................................3

*People v. Jones,*
    278 P. 3d 821 (Cal Supreme Court 2012)................................... 15-16

*Peruta v. County of San Diego,*
    742 F. 3d 1144 (9th Cir. 2014) .......................................................... 1-4

*Peruta v. County of San Diego (en banc),*
    824 F. 3d 919 (9th Cir. 2016) ................................... 1, 3-4, 12, 13, 17

*Peterson v. Martinez,*
    707 F. 3d 1197 (10th Cir. 2013) .........................................................2

*Robertson v. Baldwin,*
    165 US 275 (Supreme Court 1897) ....................................................2

*Sibron v. New York,*
    392 U.S. 40 (Supreme Court 1968) ....................................................6

*State v. Mitchell, 3 Blackf.*
    229, 1833 WL 2617 (Ind. 1833) .........................................................3

*Terry v. Ohio,*
    392 US 1 (Supreme Court 1968) ........................................................6

*United States v. Black,*
    707 F.3d 531 (4th Cir.2013) ...............................................................7

*United States v. Santos,*
    403 F.3d 1120 (10th Cir. 2005) ..........................................................7

*United States v. Wood.*
    106 F.3d 942, 946) (10th Cir. 1997)...................................................7

iv

*US v. Chovan,*
    735 F. 3d 1127 (9th Cir. 2013) ...........................................................14

*US v. Cureton,*
    739 F. 3d 1032 (7th Cir. 2014) .........................................................15

*US v. Emerson,*
    270 F. 3d 203 (5th Cir. 2001) ............................................................2

*US v. Nora,*
    765 F. 3d 1049 (9th Cir. 2014) ..........................................................7

*US V. STRUCKMAN,*
    603 F.3d 731 (9th Cir. 2010) ............................................................7

*US v. Vongxay,*
    594 F. 3d 1111 (9th Cir. 2010) .........................................................7

*Watison v. Carter,*
    668 F.3d 1108 (9th Cir. 2012) ..........................................................6

*Woollard v. Gallagher,*
    712 F. 3d (4th Cir. 2013) .................................................................2

*Yick Wo v. Hopkins,*
    118 U.S. 356 (Supreme Court 1886) ..................................................7

## Constitutional Provisions

U.S. Const., amend. II ............................................................... *passim*

U.S. Const., amend. IV ..............................................................6-7, 16

U.S. Const., amend. XI ...................................................................6

U.S. Const., amend. XIV ...............................................7-8, 10, 12, 15-16

**Statutes**

Cal. Penal Code § 654 ............................................................................ 15

Cal. Penal Code § 626.9 ......................................................................... 10

Cal. Penal Code § 12031 (repealed) ....................................................... 8

Cal. Penal Code § PC16520(d) ............................................................... 10

Cal. Penal Code § 25850 ................................................................. 6, 8, 11

Cal. Penal Code § 25850(a) ................................................................ 8-9

Cal. Penal Code § 25850(b) .............................................................. 6, 9

Cal. Penal Code § 26150 ......................................................................... 10

Cal. Penal Code § 26155 ......................................................................... 10

Cal. Penal Code § 26350 ................................................................... 9, 11

Cal. Penal Code § 26400 ................................................................... 9, 11

## INTRODUCTION AND RULE 35 STATEMENT

The decision below conflicts with decisions of the United States Supreme Court and with this Court. Consideration by the full court is therefore necessary to secure and maintain uniformity of the court's decisions.

This proceeding involves seven questions of exceptional importance because it involves issues on which the decision below conflicts with the authoritative decisions of other United States Courts of Appeals that have addressed the issue.

Plaintiff-Appellant Nichols voluntarily dismissed, without prejudice, his challenge to the City of Redondo Beach local ordinances and voluntarily dismissed the Redondo Beach and John Doe defendants. The only defendants on appeal are the governor and attorney general of California, both of whom are sued solely in their official capacity and solely for declaratory and prospective injunctive relief.

The court below relied on the now vacated and overruled three judge panel decision in *Peruta v. County of San Diego*, 742 F. 3d 1144 (9th Cir. 2014) in disposing of Plaintiff-Appellant Nichols' claim under the Second Amendment. Therefore, the reasons for granting this petition are the same reasons why this Court granted the en banc petitions in *Edward Peruta, et al v. County of San Diego, et al* No.: 10-56971 and *Adam Richards, et al v. Ed Prieto, et al* No.: 11-16255: 824 F. 3d 919 (9th Cir. 2016).

1

The decisions of the three judge panel in *Peruta* and *Richards* conflicted with three decisions of the United States Supreme Court regarding the Second Amendment in: *Robertson v. Baldwin*, 165 US 275 (Supreme Court 1897); *District of Columbia v. Heller*, 128 S. Ct. 2783 (Supreme Court 2008); *McDonald v. City of Chicago, Ill.*, 130 S. Ct. 3020 (Supreme Court 2010). Had the three judge panel decisions been upheld, they would have conflicted with the subsequent decision in *Caetano v. Massachusetts*, 136 S. Ct. 1027 (Supreme Court 2016) as well.

Here, as in *Peruta*, the opinion of the court below directly conflicts with the authoritative decisions of other United States Courts of Appeals that have addressed the Second Amendment issue.

The decisions of the three judge panel also conflicted with the existing decisions of: *Hightower v. City of Boston*, 693 F. 3d 61 (1st Cir. 2012); *Kachalsky v. County of Westchester*, 701 F. 3d 81 (2nd Cir. 2012); *Drake v. Filko*, 724 F. 3d 426 (3rd Cir. 2013); *Woollard v. Gallagher*, 712 F. 3d (4th Cir. 2013); *National Rifle Ass'n of America, Inc. v. McCraw*, 719 F. 3d 338 (5th Cir. 2013); *US v. Emerson*, 270 F. 3d 203 (5th Cir. 2001); *Moore v. Madigan*, 702 F. 3d 933 (7th Cir. 2012); *Peterson v. Martinez*, 707 F. 3d 1197 (10th Cir. 2013); *Parker v. District of Columbia*, 478 F. 3d 370 (Dist. of Columbia Cir. 2007), *aff'd sub nom District of Columbia v. Heller*, 128 S. Ct. 2783 (Supreme Court 2008) as well as conflicting with state court decisions on the right to keep and bear arms dating

back to *State v. Mitchell*, 3 Blackf. 229, 1833 WL 2617 (Ind. 1833) not to mention conflicting with post-*Heller* state high court decisions on concealed carry including the California Supreme Court concealed carry decision *People v. Dykes*, 209 P. 3d 1 (Cal Supreme Court 2009).

*Peruta* and *Richards* sought concealed carry permits. Both sets of Plaintiffs-Appellants argued that the Second Amendment Open Carry right defined in *Heller* and applied against the states in *McDonald* could be banned in favor of concealed carry permits which would, at the time, have allowed them to carry concealed, loaded handguns in all public and private K-12 schools and on college and university campuses..

Plaintiff-Appellant Nichols' claim under the Second Amendment is a pure Open Carry claim limited to: the curtilage of his home, in and on his motor vehicle including any attached camper or trailer regardless of whether or not they are being used as a residence (temporary or permanent) and in *non-sensitive* public places. He does not seek to carry a weapon concealed anywhere, anytime or for any purpose.

In this Circuit there are only two related cases on appeal where the Defendants-Appellees have taken the position that the Second Amendment right to keep and bear arms for the purpose of self-defense is limited to one's home: *Christopher Baker v. Louis Kealoha*, et al No.: 12-16258 and *George Young, Jr. v.*

3

*State of Hawaii*, et al No.: 12-17808. Neither of these cases is a good vehicle for en banc review.

*Baker* is the appeal of the denial of a preliminary injunction. Mr. Baker applied for and was denied a license to carry a concealed handgun in conjunction with his job as a process server. A job he had voluntarily abandoned.

On September 6, 2016, Mr. Baker filed a Supplemental Brief (Dkt No.: 90) in response to the Order of the Court of August 16, 2016, "in light of the en banc decision in *Peruta v. County of San Diego*, No. 10-56971 and *Richards v. Prieto*, No. 11-16255" (Dkt No.: 82). (*Peruta v. County of San Diego*, 824 F. 3d 919 (9th Cir. 2016)).

In the first paragraph of Mr. Baker's Supplemental Brief he stated "For the reasons explained by the dissent, Mr. Baker believes that holding was in error. Mr. Baker therefore respectfully preserves the point for further review."

Given that Mr. Baker seeks to carry a handgun concealed in public and his candid statement that he disagrees with the en banc decision in *Peruta* which held that there is no right under the Second Amendment for the general public to carry a concealed weapon in public, his is a poor vehicle to argue in defense of the Second Amendment Open Carry right defined in *Heller*. Unsurprisingly, Mr. Baker does not seek to openly carry long guns in public.

Mr. Young for the first time on appeal challenges the State of Hawaii's prohibition on openly carrying long guns in public. His attorney is Mr. Alan Beck who also represents Mr. Baker. Attorney Beck asks for an order either enjoining HRS 134-9 or compelling local Defendants to adopt policies to allow it to survive constitutional muster. HRS 134-9 is Hawaii's handgun licensing law for both concealed and Open Carry of handguns. Enjoining HRS 134-9 would not give Mr. Young a license. And to the extent that it is even possible to attack state law through the City Defendants, Mr. Young's attorney did not state what policies he would have this Court compel upon the local officials who are obliged to follow state law.

Plaintiff-Appellant Nichols' appeals a final district court judgment. As his is a pure Open Carry appeal in which he seeks to openly carry *both* handguns and long guns and because he was denied a license to openly carry a handgun (not for lacking good-cause as he has a well documented death threat against him, or for lack of good moral character or for any other reason than he resides in a county with a population of 200,000 or more people), his is the perfect case for en banc consideration of the scope of the Second Amendment right to openly carry loaded and unloaded firearms for the purpose of self-defense beyond the doors to one's home.

The additional questions presented by Plaintiff-Appellant Nichols in his appeal and the conflicts are (the cited cases are by no means an exhaustive list):

1.    Did the district court err in dismissing Governor Brown with prejudice?

*Ex parte Young*, 209 US 123 (Supreme Court 1908); *Kitchen v. Herbert*, 755 F.3d 1193, 1202-1204 (10th Cir. 2014); *LOS ANGELES COUNTY BAR ASS'N v. EU*, 979 F.2d 697, 704 (9th Cir. 1992); *Del Campo v. Kennedy*, 517 F.3d 1070, 1075 (9th Cir. 2008); *Hill v. Blind Indus. & Servs. of Md.*, 201 F.3d 1186 (9th Cir. 2000) (order); *Hyland v. Wonder*, 117 F.3d 405, 413 (9th Cir.), amended by 127 F.3d 1135 (9th Cir. 1997); *ITSI TV Prods., Inc. v. Agric. Ass'ns*, 3 F.3d 1289, 1291 (9th Cir. 1993).

2.    Did the district court err in dismissing with prejudice the state law claims?

*Carnegie-Mellon Univ. v. Cohill*, 484 US 343 (Supreme Court 1988); *Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012).

5.    Does PC25850(b) violate the Fourth Amendment?

*Carroll v. United States*, 267 US. 132 (1925); *Mapp v. Ohio*, 367 US 643 (Supreme Court 1961); *Terry v. Ohio*, 392 US 1 (Supreme Court 1968); *Sibron v. New York*, 392 U.S. 40, 64, 88 S. Ct. 1889, 20

6

L.Ed.2d 917 (Supreme Court 1968); *HORTON v. CALIFORNIA*, 496 U.S. 128, 136 (1990); *Arizona v. Hicks, 480 U.S. 321 , 325 (1987); Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013); *CITY OF L. A. V. PATEL*, 135 S. Ct. 2443 (Supreme Court 2015); *United States v. Black*, 707 F.3d 531, 540 (4th Cir.2013); *Northrup v. City of Toledo Police Dep't*, 785 F.3d 1128, 1132 (6th Cir. 2015); *United States v. Santos* 403 F.3d 1120, 1125-1126, (10th Cir. 2005); *United States v. Wood* 106 F.3d 942, 946 (10th Cir. 1997); *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir.1994); *US v. Vongxay*, 594 F. 3d 1111 (9th Cir. 2010); *U.S. V. STRUCKMAN*, 603 F.3d 731, 745 (9th Cir. 2010); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012) (en banc); *US v. Nora*, 765 F. 3d 1049, 1053 (9th Cir. 2014).

6. Do laws challenged in this appeal violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment?

*Yick Wo v. Hopkins*, 118 U.S. 356, 369 (Supreme Court 1886);

*Graham v. Richardson*, 403 U.S. 365, 371 (Supreme Court 1971);

*Obergefell v. Hodges*, 135 S. Ct. 2071 (2015);

7. Are parts of the laws at issue void for vagueness?

*Connally v. General Construction Co*. 269 U.S. 385, 391 (Supreme Court 1926); *Johnson v. United States*, 135 S. Ct. 2551 (2015); *Conley*

7

*v. US*, 79 A. 3d 270, 283 (DC Court of Appeals (2013); *HUNT v.*
*CITY OF LOS ANGELES*, 638 F.3d 703, 710 (9th Cir. 2011);
*Gallardo v. Lynch*, 818 F.3d 808, 819 (9th Cir. 2016); *Dimaya v.*
*Lynch*, 803 F.3d 1110, 1111 (9th Cir. 2015); *Desertrain v. City of L.*
*A.*, 754 F.3d 1147, 1155 (9th Cir. 2014).

## STATEMENT

The Operative Complaint (Second Amended Complaint (SAC)) is located at
ER216-256. Paragraph (¶) references are to the SAC. The Statement of
Uncontroverted Facts (SUF) is located at ER164-204 and will be referenced as
"SUF." The Addendum will be referenced as "ADD."

In July of 1967, the State of California enacted a series of laws in response
to a peaceful, armed protest by 30 men and women who were members of The
Black Panther Party for Self-Defense. They had staged an impromptu protest of a
bill which was being heard in committee at the state capitol. Despite the fact that
they had not broken any law, they were arrested. One of those laws enacted was
California Penal Code ("PC") section 12031 which was subsequently renumbered
as PC25850 (in part) SUF31-34. PC25850 makes it a crime to openly carry a
loaded firearm and to refuse to consent to a search and seizure. It states in relevant
part:

> (a) A person is guilty of carrying a loaded firearm when the person carries a
> loaded firearm on the person or in a vehicle while in any public place or on

8

any public street in an incorporated city or in any public place or on any
public street in a prohibited area of unincorporated territory.
(b) In order to determine whether or not a firearm is loaded for the purpose
of enforcing this section, peace officers are authorized to examine any
firearm carried by anyone on the person or in a vehicle while in any public
place or on any public street in an incorporated city or prohibited area of an
unincorporated territory. Refusal to allow a peace officer to inspect a firearm
pursuant to this section constitutes probable cause for arrest for violation of
this section.  SUF1

Hunters are exempt from the ban regardless of age.  SUF28

On January 1, 2012, PC26350 went into effect.  It makes it a crime to openly

carry an unloaded handgun and states in relevant part:

(a) (1) A person is guilty of openly carrying an unloaded handgun when that
person carries upon his or her person an exposed and unloaded handgun
outside a vehicle while in or on any of the following:
(A) A public place or public street in an incorporated city or city and county.
(B) A public street in a prohibited area of an unincorporated area of a county
or city and county.
(C) A public place in a prohibited area of a county or city and county.
(2) A person is guilty of openly carrying an unloaded handgun when that
person carries an exposed and unloaded handgun inside or on a vehicle,
whether or not on his or her person, while in or on any of the following:
(A) A public place or public street in an incorporated city or city and county.
(B) A public street in a prohibited area of an unincorporated area of a county
or city and county.
(C) A public place in a prohibited area of a county or city and county.  SUF2

Licensed hunters are exempt from the ban regardless of age.  ADD145

On January 1, 2013, PC26400 went into effect.  It makes it a crime to openly

carry an unloaded long gun (rifle and/or shotgun) and states in relevant part:

(a) A person is guilty of carrying an unloaded firearm that is not a handgun
in an incorporated city or city and county when that person carries upon his

9

or her person an unloaded firearm that is not a handgun outside a vehicle while in the incorporated city or city and county.  SUF3

Licensed hunters are exempt from the ban regardless of age.  ADD147

Exempt from the bans on openly carrying unloaded firearms are unloaded antique firearms which are openly carried PC16520(d) which cannot be instantaneously loaded.  SUF105-106.  Neither can firearms which use cartridges be instantaneously loaded.  SUF107-108.  PC626.9 prohibits handguns (antique and modern, loaded or unloaded) within 1000 feet of a K-12 public or private school regardless of whether or not that school is in session unless carried unloaded and in a fully enclosed locked container. An exemption to this prohibition is a license to carry a loaded handgun (openly or concealed) issued pursuant to PC26150, PC26155.  ADD100

On May 21, 2012, Plaintiff-Appellant Nichols was denied both an application and a license to *openly carry* a loaded handgun by the Chief of Police for the City of Redondo Beach, California, not because he lacks good cause for a license or because he is lacking in good moral character or because he is prohibited from possessing a firearm under state or Federal law but because California law (PC26150 and PC26155) prohibit police chiefs and county sheriffs from issuing handgun Open Carry licenses to residents of counties with a population of 200,000 or more people. SAC ¶47.

It is undisputed that concealed carry substantially burdens Plaintiff-Appellant Nichols' ability to defend himself even if he lived in a jurisdiction which issues concealed carry permits and he, himself, had a concealed carry permit. SUF132. Likewise, it is undisputed that unloaded firearms be they encased or not substantially burdens his ability to defend himself. SUF111-113.

Plaintiff-Appellant Nichols seeks a permanent injunction and declaratory relief against California's bans on openly carrying loaded and unloaded firearms. SAC ¶¶55-69. In addition, he challenges California's licensing requirements in their entirety and seeks to have the licensing statutes permanently enjoined in their entirety.

Should this Court not strike down the licensing statutes in their entirety then he challenges all of the ancillary subsections and statutes but only as-applied to licenses to openly carry firearms. The good-cause, good moral character, etc., restrictions would remain for licenses to carry a concealed handgun but not for licenses to openly carry handguns. SAC ¶¶64-67. A handgun Open Carry license is not sought as an alternative to enjoining the bans on openly carrying loaded and unloaded firearms (PC25850, PC26350 and PC26400). The handgun Open Carry license is sought only as *additional* relief and only if the handgun licensing statutes are not struck down in their entirety.

The state bans are challenged both in his SAC and Appellant Opening Brief facially and as applied. Appellant alleges in his SAC and submits on appeal that all of the challenged bans (including any licensing requirement for Open Carry) fail any level of scrutiny.

Plaintiff-Appellant Nichols has forfeited his race-based Fourteenth Amendment claims on appeal and has crafted his Opening Brief as to not allow this Court to evade the Second Amendment Open Carry question.

## REASONS FOR GRANTING THE PETITION

### I. This is the First, and Likely Last, Challenge to California's Open Carry Bans.

The self-described "gun rights" groups oppose the Second Amendment Open Carry right. The National Rifle Association, through its official state organization the California Rifle and Pistol Association, the Second Amendment Foundation and the CalGuns Foundation were all Plaintiffs in *Peruta* and *Richards*. They have spent the better part of a decade arguing to uphold California's Open Carry bans. Many other groups and organizations were Amici who filed briefs in support of *Peruta* and *Richards*. Of all the Amicus briefs filed, only Plaintiff-Appellant Nichols filed a brief defending the Second Amendment Open Carry right.

Plaintiff-Appellant Nichols filed his appellant opening brief on November 9, 2016.  Not a single Amicus brief was filed in support of his appeal.

On August 17, 2016, the National Rifle Association, through its official state organization the California Rifle and Pistol Association filed what it purports to be an Open Carry lawsuit.  It should come as no surprise that nowhere in the Complaint do the Plaintiffs state that they seek to openly carry firearms (loaded or unloaded) which means they don't have standing to challenge California's Open Carry bans.

Instead, their Complaint alleges, contrary to this Court's en banc decision in *Peruta*, that concealed carry is a Second Amendment right and therefore they are entitled to the concealed carry permits they have been denied because Open Carry is not available.

We are now in the sixth year of litigation since the initial Complaint was filed in this case.  How many more years must we wait for a decision on whether or not the Second Amendment extends even one inch outside the doors to our home let alone beyond the curtilage of our homes?

A right which the State of California conceded extends to Open Carry beyond the curtilage of one's home during the *Peruta/Richards* en banc oral arguments.

## II.     The Decision of the Court below Conflicts with United States Supreme Court Decisions.

The non-exhaustive list of cases in which the decision below conflicts with binding US Supreme Court precedents was previously cited.

## III.     The Decision of the Court below Conflicts with Binding Decisions of this Court and Federal Appellate Courts from Other Circuits.

The non-exhaustive list of cases in which the decision below conflicts with binding decisions of this Court and from Other Circuits was previously cited.

## IV.     The Court below Created its Own Second Amendment Framework which Conflicts with *US v. Chovan*, 735 F. 3d 1127 (9th Cir. 2013), *Jackson v. City and County of San Francisco*, 746 F. 3d 953 (9th Cir. 2014) and the Framework of Every Other Federal Circuit.

When final judgment was entered by the Court below it was bound by the Second Amendment framework articulated in *Chovan* at 1136-1137.  Instead, it created its own framework.  Instead of following the two-step framework the court below held that: 1) one cannot bring both a facial and as-applied challenge under the Second Amendment, which conflicts with *Jackson* and 2) not being allowed to bring an as-applied challenge, the bans must be invalid under every set of circumstances (the infamous *Salerno* Test) or they will be upheld.

Neither the court below nor the Appellees cited a single circumstance in which the bans were valid. *People v. Jones*, 278 P. 3d 821 (Cal Supreme Court 2012) held that an 1872 statute (PC654) prohibits multiple punishments for the same act even if the punishment runs concurrently. *Id* at 352-353.

The *Jones* court held that he could only be punished for being a felon in possession of a firearm and could not be punished for the other counts of carrying a *loaded*, unregistered, concealed handgun in a motor vehicle. As a concealed handgun does not have to be loaded to be in violation of the law, one cannot be punished for *both* carrying a concealed handgun and for the separate crime of carrying it loaded.

PC654 applies to machine-guns, prohibited weapons, persons prohibited from possessing firearms, the use of a firearm to commit a crime, carrying firearms in prohibited places…every state crime. No wonder neither the court below nor the Appellees could articulate any circumstance which would fail the *Salerno* Test.

A statute "which punish[es] the mere use, carriage, or possession of a firearm…would run afoul of the Second Amendment." *US v. Cureton*, 739 F. 3d 1032, 1043 (7th Cir. 2014).

The Seventh Circuit struck down the State of Illinois' bans on openly carrying loaded and unloaded firearms in incorporated cities, towns and villages in *Moore v. Madigan*, 702 F. 3d 933 (7th Cir. 2012) which leads us to FRAP 35-1.

15

**V.    The Questions Presented are Exceptionally Important.**

Any one of the questions presented alone is grounds for en banc review.

FRAP 35-1 "When the opinion of a panel directly conflicts with an existing opinion by another court of appeals and substantially affects a rule of national application in which there is an overriding need for national uniformity, the existence of such conflict is an appropriate ground for petitioning for rehearing en banc."

Regrettably, Plaintiff-Appellant Nichols must forfeit any race-based challenge to the Open Carry bans in order to obtain a decision on the Second Amendment Open Carry question.  It will be up to a future court to decide if *Furnace v. Sullivan*, 705 F. 3d 1021 (9th Cir. 2013) overruled *Hunter v. Underwood*, 471 US 222 (Supreme Court 1985) and its progeny.

## CONCLUSION

"The act of firearm possession, by itself, is innocent." *Jones* at 356. "[A] right to carry arms openly: "This is the right guaranteed by the Constitution of the United States, and which is calculated to incite men to a manly and noble defence of themselves, if necessary, and of their country, without any tendency to secret advantages and unmanly assassinations."" *Heller* at 2809.

And yet it was the final judgment of the court below in *Nichols v. Harris*, 17 F. Supp. 3d 989 (Dist. Court, CD California 2014) that there is no Second Amendment right to openly carry a firearm outside the interior of one's home. That a person who openly carries a firearm is not protected by the Fourth Amendment, even where it is legal to openly carry firearms and that his various 14th Amendment claims failed in their entirety.

16

The Second Amendment issue would be grounds enough alone to grant this petition just as it was in *Peruta* and *Richards*. But Mr. Nichols appeal is not limited to the Second Amendment. There are seven issues raised on appeal. The decision of the court below conflicts with decisions of the United States Supreme Court, with this Court and with other Federal Appellate Courts. The questions are all of exceptional importance. Consideration by the full court is therefore necessary.

For the foregoing reasons, this Court should grant Plaintiff-Appellant Nichols' Petition for initial hearing en banc.

Dated: December 14, 2016                          Respectfully submitted,

                                                   s/ Charles Nichols
                                                  CHARLES NICHOLS
                                                  PO Box 1302
                                                  Redondo Beach, CA 90278
                                                  Tel. No. (424) 634-7381
                                                  e-mail: CharlesNichols@Pykrete.info
                                                  Plaintiff-Appellant - In Pro Per

17

**Form 11.    Certificate of Compliance Pursuant to
9th Circuit Rules 35-4 and 40-1 for Case Number** <u>14-55873</u>

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the back of each copy of the petition or answer.*

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for panel rehearing/petition for rehearing en banc/answer to petition (check applicable option):

☒ Contains ⬚3,900⬚ words (petitions and answers must not exceed 4,200 words), and is prepared in a format, type face, and type style that complies with Fed. R. App. P. 32(a)(4)-(6).

**or**

☐ Is in compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

Signature of Attorney or
Unrepresented Litigant | s/ Charles Nichols          Date | Dec. 14, 2016

("s/" plus typed name is acceptable for electronically-filed documents)

*(Rev.12/1/16)*

9th Circuit Case Number(s)  14-55873

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)  12/14/2016 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)  s/ Charles Nichols

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)  .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)

ADDENDUM 1
Nichols v. Harris, 17 F.Supp.3d
989 (2014).  Challenged Final
Judgment of District Court

# Nichols v. Harris

Charles NICHOLS, Plaintiff, v. Kamala D. HARRIS, in her official capacity as Attorney General of California, Defendant.

17 F.Supp.3d 989

United States District Court, C.D. California.

Decided May 01 2014

Charles Nichols, Redondo Beach, CA, pro se.Jonathan Michael Eisenberg, Office of the California Attorney General, Lisa Marie Bond, Richards Watson & Gershon, Los Angeles, CA, for Defendants.

\* \* \*

Plaintiff's motion denied; defendant's motion granted.

[17 F.Supp.3d 992] Charles Nichols, Redondo Beach, CA, pro se.

Jonathan Michael Eisenberg, Office of the California Attorney General, Lisa Marie Bond, Richards Watson & Gershon, Los Angeles, CA, for Defendants.

## ORDER ACCEPTING FINDINGS, CONCLUSIONS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

### S. JAMES OTERO, District Judge.

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Second Amended Complaint, all the records and files herein, the Report and Recommendation of the United States Magistrate Judge, Plaintiff's Objections, and Defendant's Response to Plaintiff's Objections. After having made a de novo determination of the portions of the Report and Recommendation to which Objections were directed, the Court concurs with and accepts the findings and conclusions of the Magistrate Judge. In addition, the Court will address certain arguments raised by Plaintiff in his Objections.

Plaintiff asserts that the Ninth Circuit's recent decision in Peruta v. County of San Diego, 742 F.3d 1144 (9th Cir.2014), has been "stayed" and is neither binding on this Court nor relevant to his claims. (Obj. at 8). Plaintiff is mistaken.

[17 F.Supp.3d 993] On February 28, 2014, the Ninth Circuit stayed the issuance of the mandate in Peruta pending briefing and a decision on a motion for rehearing en banc. See Peruta v. County of San Diego, 9th Cir. Case No. 10–56971 (Dkt. No. 126, entered Feb. 28, 2014) (order extending time for filing petition for rehearing en banc and staying mandate). However, entry of the mandate is merely a "ministerial act," White v. Klitzkie, 281 F.3d 920, 924 n. 4 (9th Cir.2002), that "formally marks the end of appellate jurisdiction."

Northern California Power Agency v. Nuclear Regulatory Com'n, 393 F.3d 223, 224 (D.C.Cir.2004) (internal quotation marks omitted). A panel decision of the Ninth Circuit is binding on lower courts as soon as it is published, even before the mandate issues, and remains binding authority until the decision is withdrawn or reversed by the Supreme Court or an en banc court. See, e.g., Gonzalez v. Arizona, 677 F.3d 383, 389 n. 4 (9th Cir.2012) ( en banc ) ("[A] published decision of this court constitutes binding authority which 'must be followed unless and until overruled by a body competent to do so.' ") (quoting Hart v. Massanari, 266 F.3d 1155, 1170 (9th Cir.2001)); United States v. Gomez–Lopez, 62 F.3d 304, 306 (9th Cir.1995) ("The government first urges us to ignore Armstrong since we have stayed the mandate to allow filing of a petition for certiorari; this we will not do, as Armstrong is the law of this circuit."); Castillo v. Clark, 610 F.Supp.2d 1084, 1122 n. 17 (C.D.Cal.2009) ("Although the Ninth Circuit has granted a stay of the mandate in Butler [ v. Curry, 528 F.3d 624 (9th Cir.2008) ] the panel decision remains the law of the Circuit."). Indeed, three weeks after the stay in Peruta issued, the Ninth Circuit vacated a district court decision in another matter and remanded the case "for further proceedings consistent with Peruta." See Baker v. Kealoha, 564 Fed.Appx. 903, 905, 2014 WL 1087765 at *1 (9th Cir. Mar. 20, 2014). As of the date of this Order, Peruta remains binding precedent on this Court.

Plaintiff further appears to misinterpret the import of the Peruta court's clarification in footnote 19 that it was not "ruling on the constitutionality of California statutes." (Obj. at 2) (quoting Peruta, 742 F.3d at 1173 n. 19). This footnote is part of the discussion in which the Ninth Circuit explained that because the Second Amendment does not protect any particular mode of carry, a claim that a state must permit a specific form of carry, such as open carry, fails as a matter of law. See id. at 1172–73 ("As the California legislature has limited its permitting scheme to concealed carry—and has thus expressed a preference for that manner of arms-bearing—a narrow challenge to the San Diego County

regulations on concealed carry, rather than a broad challenge to the state-wide ban on open carry, is permissible."). Accordingly, Peruta did not rule on the overall constitutionality of California statutes because it accepted the lawfulness of California's firearms regime, including the state's preference for concealed carry over open carry. Id. at 1172.

Plaintiff suggests that the Ninth Circuit's recent decision in Jackson v. City and County of San Francisco, 746 F.3d 953 (9th Cir.2014), is helpful to his case as he opens his Objections with a lengthy quotation from that decision. ( See Obj. at 1–2) (quoting Jackson, 746 F.3d at 961–63). However, Plaintiff does not explain why the passages he quotes support his claims. The Jackson court found that two San Francisco Police Code regulations that prohibit the unsecured storage of handguns in residences and the sale of "hollow point" ammunition passed constitutional muster. Id. at 957–59. In the passages quoted by Plaintiff, the court determined that the plaintiff could bring a facial challenge

**[17 F.Supp.3d 994]** to section 4512, which requires that handguns in residences be stored in a locked container, disabled with an approved trigger lock, or carried on the person over the age of 18, despite the Jackson plaintiff's concession that locked storage is appropriate in some circumstances. Id. at 962–63. Again, as Plaintiff has failed to articulate in his Objections why he believes Jackson changes the outcome here, the Objections do not alter the Court's ultimate resolution of Plaintiff's claims.

Finally, Plaintiff asserts that he does in fact have standing to assert an equal protection challenge to California Penal Code Section 25850 due to its allegedly racist origin and application because contrary to the criminal complaint on which the Magistrate Judge relied, he is not white but of "mixed race" heritage. (Obj. at 16). Plaintiff's equal protection claim still fails, however, because as the Magistrate Judge observed, Plaintiff did not squarely raise a race-based challenge to Section 25850 against the Attorney General. (Report

and Recommendation at 26–27).

To state an equal protection claim under section 1983, a plaintiff typically must allege that " 'defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.' " Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir.2013) (quoting Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir.1998) (emphasis added)). Even liberally construed, the Second Amended Complaint fails to make any connection between Plaintiff's race and the allegedly racist design motivating the passage of the facially race-neutral predecessor to Section 25850. Indeed, the record in this case, including Plaintiff's Second Amended Complaint and Plaintiff's Motion for Partial Summary Judgment, is devoid of any allegation that Plaintiff is a member of a racial minority whose members were the intended target of the legislature's alleged racial animus in enacting the predecessor to Section 25850. Despite three opportunities to state his claims, Plaintiff simply did not raise a race-based Fourteenth Amendment claim in this action. Assertion of a new claim on summary judgment is improper. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir.2000). Accordingly, even if Plaintiff is of "mixed race" heritage, he may not raise new claims at this late stage of the litigation.

IT IS ORDERED that Plaintiff's Motion for Partial Summary Judgment is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Judgment on the Pleadings is GRANTED and that Judgment be entered in favor of Defendant Kamala D. Harris.

LET JUDGMENT BE ENTERED ACCORDINGLY.

# REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

### SUZANNE H. SEGAL, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable S. James Otero, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California.

# I.

# INTRODUCTION

This civil rights action purports to challenge the constitutionality of seventeen California statutes that regulate the open carry of firearms and the issuance of firearm licenses solely as they relate to open carry. Plaintiff, a California resident proceeding

**[17 F.Supp.3d 995]** pro se, filed the operative Second Amended Complaint pursuant to 42 U.S.C. § 1983 on March 29, 2013. ("SAC," Dkt. No. 83). The Court denied Plaintiff's Motion for a Preliminary Injunction on July 3, 2013, 2013 WL 3368922. ("PI Order," Dkt. No. 108). On July 18, 2013, the Court denied Plaintiff's ex parte application for a stay pending appeal of the denial of his preliminary injunction motion. (Dkt. No. 121). Plaintiff voluntarily dismissed Defendants City of Redondo Beach ("CRB") and Does 1–10 on August 5, 2013, leaving only his claims against Defendant Kamala D. Harris in her official capacity as the Attorney General of the State of California. (Dkt. No. 125).

On November 8, 2013, Plaintiff filed a Motion for Partial Summary Judgment, (Dkt. No. 131), including a Memorandum in support of the Motion, ("MSJ," Dkt. No. 132), and the Declaration of Plaintiff Charles Nichols. ("Nichols MSJ Decl.," Dkt. Nos. 133–34). Plaintiff also lodged a Statement of Uncontroverted Facts and Conclusions of Law pursuant to Local Rule 56–1. ("SUF," Dkt. No. 136). On December 2, 2013, Defendant filed a Memorandum in Opposition to the MSJ, (Dkt. No. 140), including a Statement of Genuine Disputes, ("SGD," Dkt. No. 140.1), and the Declaration of Jonathan M. Eisenberg. ("Eisenberg MSJ Decl.," Dkt. No. 140.2). The following day, December 3, 2013,

Defendant filed a Notice of Errata and a corrected Memorandum in Opposition to the MSJ. ("MSJ Opp.," Dkt. No. 141). On December 9, 2013, Plaintiff filed a Reply in support of the MSJ, ("MSJ Reply," Dkt. No. 143), and a "reply" to Defendant's Statement of Genuine Disputes. ("Reply SGD," Dkt. No. 144). On the same day, Plaintiff also filed Objections to Defendant's Notice of Errata, (Dkt. No. 145), and Objections to the Declaration of Jonathan M. Eisenberg.[1] (Dkt. No. 146).

On November 12, 2013, Defendant filed a Motion for Judgment on the Pleadings, (Dkt. No. 129), including a Memorandum in support of the Motion, ("MJP," Dkt. No. 129.1), and a Request for Judicial Notice. ("MJP RJN," Dkt. No. 129.2). On November 26, 2013, Plaintiff filed an Opposition to the MJP, ("MJP Opp.," Dkt. No. 139), and Objections to Evidence. [2]

**[17 F.Supp.3d 996]** ("P MJP Evid. Obj.," Dkt. No. 138). Defendant filed a Reply in support of the MJP on December 3, 2013. ("MJP Reply," Dkt. No. 142). Plaintiff subsequently filed five separate Notices of Supplemental Authority, each of which included a supplemental brief and a separately-filed declaration in addition to a copy of a recent court decision.[3] (Dkt. No. 157 at 2).

For the reasons discussed below, it is recommended that Plaintiff's Motion for Partial Summary Judgment be DENIED. It is further recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED and that this action be DISMISSED WITH PREJUDICE.

# II.

# FACTUAL ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

As amended by Plaintiff's voluntary dismissal of City of Redondo Beach and the Doe Defendants, the SAC sues only Defendant Kamala D. Harris in her official capacity as the Attorney General of the State of California. (SAC at 1–2). The SAC raises a facial challenge to the

constitutionality of seventeen California statutes that Plaintiff contends violate the fundamental right to openly carry loaded and unloaded firearms.[4] ( Id. at 25–30; see

[17 F.Supp.3d 997]

also PI Order at 4 ("The Court notes at the outset that Plaintiff is mounting a facial challenge.")).

According to the SAC, on May 21, 2012, Plaintiff openly carried an unloaded firearm in a beach zone within City of Redondo Beach as part of a peaceful protest in support of the open carry movement. (SAC at 19–20). CRB Police Officer Heywood took the firearm from Plaintiff without Plaintiff's permission and conducted a chamber check to determine if it was loaded. ( Id. at 19). Officer Heywood and an unidentified officer informed Plaintiff that he was in violation of city ordinances prohibiting the carrying of firearms in public areas and seized his firearm and carrying case. ( Id. at 20). The CRB City Prosecutor later filed a misdemeanor charge against Plaintiff for carrying a firearm in a city park in violation of a city ordinance.[5] ( Id.).

Also on May 21, 2012, CRB Police Chief Leonardi informed Plaintiff that his request for an application and license to openly carry a loaded handgun could not be approved. ( Id. at 21). Leonardi's email explained that state law (1) prohibits municipalities in counties with populations exceeding 200,000 persons from issuing open carry licenses and (2) limits a municipality's authority to issue any state handgun license to that city's residents only. ( Id.). Because CRB is located in Los Angeles County, which has a population exceeding 200,000, and Plaintiff is not a resident of CRB, Plaintiff was unable to secure an open carry license from CRB. ( Id.).

Plaintiff generally alleges that in addition to the incident on May 21, 2012, he "has frequently and countless times violated California Penal Code Section 25850, the Redondo Beach City Ordinances and other California statutes prohibiting firearms from being carried in non-sensitive public places." ( Id. at 22). Plaintiff states that he will continue to "openly carry a loaded holstered handgun, loaded rifle and loaded shotgun," as well as unloaded firearms, in public places in CRB and around the state of California. ( Id. at 23). Plaintiff specifically alleges that he will openly carry a firearm on August 7, 2013 in CRB and Torrance and on the seventh day of every month thereafter. ( Id. at 22).

## III.

## PLAINTIFF'S CLAIMS

The SAC raises a single, multi-faceted claim under the Second, Fourth and Fourteenth Amendments against the California Attorney General. (SAC at 25–30). At issue are three California statutes that collectively prohibit, subject to numerous exceptions, the open carry of loaded and unloaded firearms and handguns in public, and fourteen statutes that govern the issuance of licenses to carry concealable firearms to the extent that they infringe on the alleged "fundamental right" to open carry. ( Id.). Plaintiff emphasizes that "[n]one of his challenges should be construed as challenging any California statute as it pertains to the carrying of a weapon concealed on one's person in a public place." ( Id. at 29). Instead, Plaintiff appears to claim that the Second Amendment not only extends beyond the home, but also affirmatively requires states to authorize the open carry of firearms. ( See id. at 27).

[17 F.Supp.3d 998] Specifically, the SAC challenges California Penal Code section 25850, which prohibits carrying a loaded firearm on the person or in a vehicle while in any public place or on any public street and authorizes peace officers to conduct warrantless chamber checks of any firearm carried by a person in a public place. ( Id. at 26–28) (citing Cal.Penal Code § 25850).[6] Similarly, Plaintiff also challenges California's prohibitions on openly carrying unloaded handguns and firearms in public places.[7] ( Id. at 28) (citing Cal.Penal Code §§ 26350 & 26400). Finally, Plaintiff challenges

California's firearm licensing regime to the extent that it infringes on the right to open carry. (SAC at 29) (citing Cal.Penal Code §§ 26150, 26155, 26160, 26165, 26175, 26180, 26185, 26190, 26200, 26202, 26205, 26210, 26215 & 26220). However, although Plaintiff summarily lists nearly every statute in the chapter of California's Penal Code governing the issuance of licenses to carry concealable firearms, the only provisions specifically relating to open carry that the SAC squarely addresses concern the population cap on counties that may issue open carry licenses.[8] ( See SAC at 29). Sections 26150 and 26155 respectively provide that where the population of the county is less than 200,000 persons, a county sheriff or head of a municipal police department may issue "a license to carry loaded and exposed in only that county a pistol, revolver, or other firearm capable of being concealed upon the person." Cal.Penal Code §§ 26150(b)(2) & 26155(b)(2); ( see also SAC at 29).

Plaintiff asserts four primary arguments to support his claims. First, Plaintiff alleges

**[17 F.Supp.3d 999]** that the "Second Amendment invalidates [all of the challenged] California Statutes to the extent they prevent private citizens who are not otherwise barred from exercising their Second Amendment Right (examples of prohibited persons include convicted felons, mentally ill, etc.) from openly carrying firearms in non-sensitive public places, loaded and unloaded, for the purpose of self-defense and for other lawful purposes." (SAC at 27). Second, Plaintiff alleges that Section 25850(b) violates the Fourth Amendment by authorizing peace officers to inspect openly carried firearms to determine if they are loaded, and to arrest any person who does not consent to a chamber check, without a warrant. ( Id. at 26). Third, Plaintiff raises a Fourteenth Amendment equal protection challenge to Sections 26150 and 26155 because they "restrict licenses to openly carry a loaded handgun only to persons [who reside] within counties of a population of fewer than 200,000 persons which is [sic] valid only in those counties...." ( Id. at 29). Fourth, Plaintiff alleges that Section 25850's prohibition on

loaded open carry of weapons is unconstitutionally vague.[9] ( Id. at 28).

Plaintiff seeks declaratory and injunctive relief prohibiting the enforcement of the challenged California statutes "to the extent that [they are] applied to prohibit private citizens who are otherwise qualified to possess firearms" from openly carrying loaded and unloaded firearms "on their own property, in their vehicles and in non-sensitive public places," or "prohibit or infringe private citizens" from obtaining licenses to engage in these activities. ( Id. at 36–38).

## IV.

## THE PARTIES' MOTIONS

### A. Plaintiff's Motion For Partial Summary Judgment

Plaintiff's MSJ challenges the constitutionality only of Sections 25850, 26350 and 26400, which collectively prohibit the open carry of loaded and unloaded firearms and handguns. ( See MSJ at 2). Plaintiff does not seek summary judgment on his claims in the SAC relating to California's firearm licensing scheme or on his Section 25850 void-for-vagueness claim.[10]

Plaintiff raises three general arguments that he believes show his entitlement to summary judgment. First, Plaintiff argues that summary judgment is warranted because the Second Amendment protects the "basic right" of law-abiding gun owners to openly carry loaded and unloaded firearms for the purpose of self-defense in all non-sensitive public places. (MSJ at

**[17 F.Supp.3d 1000]** 10–11). According to Plaintiff, "[t]o carry arms openly (Open Carry) is the right guaranteed by the Constitution according to Heller." ( See MSJ at 8; MSJ Reply at 12–13). Furthermore, to the extent that exceptions to the general prohibitions on open carry exist, Plaintiff contends that they are too narrow.[11] (MSJ at 9). Second, Plaintiff argues that section 25850's

prohibition on carrying loaded firearms in public violates the Fourteenth Amendment's equal protection clause due to the statute's allegedly racist origins and disproportionate impact on minorities. ( Id. at 11–12). Third, Plaintiff argues that Section 25850(b) violates the Fourth Amendment because the "mere refusal" to consent to a chamber check by an officer to verify whether an openly carried firearm is loaded cannot constitute probable cause for an arrest. ( Id. at 10).

## B. Defendant's Motion For Judgment On The Pleadings

Defendant argues in her Motion for Judgment on the Pleadings that all four of Plaintiff's claims in the SAC—(1) the Second Amendment challenge to all statutes at issue, (2) the Fourth Amendment challenge to Section 25850's warrantless chamber check authorization, (3) the Fourteenth Amendment equal protection challenge to the restriction on open carry licenses to residents of counties with fewer than 200,000 persons, and (4) the claim that Section 25850 is unconstitutionally vague—fail as a matter of law. First, Defendant argues that open carry is not a core right protected by the Second Amendment, and even if the Second Amendment reaches outside the home, California's numerous exceptions to the general prohibition on open carry satisfy the requisite level of scrutiny. (MJP at 7–10; MJP Reply at 4–5). Second, Defendant argues that pursuant to Heck v. Humphrey, 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), Plaintiff's misdemeanor conviction for violation of a CRB city ordinance bars his Fourth Amendment challenge to the warrantless chamber check authorized by section 25850(b). (MJP at 11). Furthermore, Defendant contends that because none of the open carry laws challenged by Plaintiff violates the constitution, an "officer seeing [a] person openly carry [a] firearm in a public place necessarily has probable cause to search the firearm to see if it is loaded." ( Id. at 12; see also MJP Reply at 6–7) (emphasis omitted). Third, Defendant argues that California's restriction on open carry licenses to residents of counties with fewer than 200,000

person rationally furthers a legitimate state purpose and is therefore constitutional. ( Id. at 11). Fourth, Defendant argues that Plaintiff's vagueness arguments are not cognizable, and even if they were, the challenged statutes are not vague. (MJP at 13).

## V.

## STANDARDS

## A. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, a moving party's entitlement to

**[17 F.Supp.3d 1001]** summary judgment depends on whether or not the evidence, viewed in the light most favorable to the nonmoving party, contains genuine issues of material fact. See Adams v. Synthes Spine Co., LP, 298 F.3d 1114, 1116–17 (9th Cir.2002). The moving party bears the initial burden of production and the ultimate burden of persuasion to establish the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the moving party carries its burden of production, the nonmoving party must go beyond the pleadings and produce evidence that shows a genuine issue for trial. Id. at 324, 106 S.Ct. 2548; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party is entitled to summary judgment if the nonmoving party "fails to produce enough evidence to create a genuine issue of material fact...." Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1103 (9th Cir.2000).

## B. Judgment On The Pleadings

After the pleadings are closed, Federal Rule of Civil Procedure 12(c) permits a party to seek judgment on the pleadings. Fed.R.Civ.P. 12(c). "A Rule 12(c) motion

challenges the legal sufficiency of the opposing party's pleadings and operates in much the same manner as a motion to dismiss under Rule 12(b)(6)." Morgan v. County of Yolo, 436 F.Supp.2d 1152, 1154–1155 (E.D.Cal.2006). Under that standard, a complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." Id. at 570, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The court must "accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir.2009). However, the court may properly "discount[ ] conclusory statements, which are not entitled to the presumption of truth...." Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir.2012).

"When considering a motion for judgment on the pleadings, this court may consider facts that are contained in materials of which the court may take judicial notice." Heliotrope General, Inc. v. Ford Motor Co., 189 F.3d 971, 981 n. 18 (9th Cir.1999) (internal quotation marks omitted). Judicial notice may be taken "where the fact is 'not subject to reasonable dispute,' either because it is 'generally known within the territorial jurisdiction,' or is 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.' " Castillo–Villagra v. I.N.S., 972 F.2d 1017, 1026 (9th Cir.1992) (quoting Fed.R.Evid. 201(b)). Courts may take judicial notice of matters of public record without converting a motion for judgment on the pleadings into a motion for summary judgment. Xcentric Ventures, L.L.C. v. Borodkin, 934 F.Supp.2d 1125, 1134 (D.Ariz.2013).

## C. Facial Challenges

As previously noted, a "claim is 'facial' [if] ... it is not limited to plaintiffs' particular case, but challenges the application of the law more broadly...." John Doe No. 1, 130 S.Ct. at 2817. Facial challenges are disfavored.

**[17 F.Supp.3d 1002]** Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 450, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008). A facial challenge to a legislative Act is " 'the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [statute] would be valid.' " Alphonsus v. Holder, 705 F.3d 1031, 1042 (9th Cir.2013) (quoting United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (brackets in original)); see also Isaacson v. Horne, 716 F.3d 1213, 1230–31 (9th Cir.2013) ( Salerno's "no set of circumstances" standard applies to all facial challenges except in First Amendment and abortion cases); Alphonsus, 705 F.3d at 1042 n. 10 (same). "[A] generally applicable statute is not facially invalid unless the statute 'can never be applied in a constitutional manner,' " United States v. Kaczynski, 551 F.3d 1120, 1125 (9th Cir.2009) (quoting Lanier v. City of Woodburn, 518 F.3d 1147, 1150 (9th Cir.2008) (emphasis in original)), or "lacks any 'plainly legitimate sweep.' " United States v. Stevens, 559 U.S. 460, 472, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010) (quoting Washington v. Glucksberg, 521 U.S. 702, 740 n. 7, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (Stevens, J., concurring in judgments) (internal quotation marks omitted)).

## VI.

## DISCUSSION

## A. Plaintiff's Motion For Partial Summary Judgment

### 1. Second Amendment

Plaintiff contends that the Supreme Court's decision in District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), which was applied to the

states in McDonald v. City of Chicago, Ill., 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), should be interpreted to support a blanket right for qualified persons to openly carry arms outside the home "except in certain public places the Court called 'sensitive,' " such as schools and government buildings. (MSJ at 8–9). According to Plaintiff, the Supreme Court's finding that individual self-defense is a "basic right" and the "core component" of the Second Amendment means that the right to carry arms openly for the purpose of self-defense is fundamental and does not "evaporate [ ] the moment one steps outside of his home." ( Id. at 8 & 11; see also MSJ Reply at 15).

Following this Court's decision denying Plaintiff's preliminary injunction motion, the Ninth Circuit formally adopted a two-step inquiry to be applied in Second Amendment challenges. See United States v. Chovan, 735 F.3d 1127, 1136 (9th Cir.2013) (citing with approval and explicitly adopting two-step inquiry taken by United States v. Chester, 628 F.3d 673, 680 (4th Cir.2010), and United States v. Marzzarella, 614 F.3d 85, 89 (3d Cir.2010), cert. denied, ––– U.S. ––––, 131 S.Ct. 958, 178 L.Ed.2d 790 (2011)). First, the court "asks whether the challenged law burdens conduct protected by the Second Amendment" as historically understood. Chovan, 735 F.3d at 1136. Second, if the challenged law does burden protected conduct, or if the lack of historical evidence in the record renders the court unable to say that the Second Amendment's protections did not apply to the conduct at issue, the court " 'must assume' " that the plaintiff's Second Amendment rights " 'are intact' " and "apply an appropriate level of scrutiny." Chovan, 735 F.3d at 1136–37 (quoting Chester, 628 F.3d at 681). The level of scrutiny depends on (1) " 'how close the law comes to the core of the Second Amendment right,' " and (2) " 'the severity of the law's burden on the right.' " Chovan, 735 F.3d at 1138 (quoting

[17 F.Supp.3d 1003] Ezell v. City of Chicago, 651 F.3d 684, 703 (7th Cir.2011)). According to the Chovan Court, "the core of the Second Amendment is 'the right of law-abiding, responsible citizens to use arms in

defense of hearth and home.' " Chovan, 735 F.3d at 1138 (quoting Heller, 554 U.S. at 635, 128 S.Ct. 2783).[12]

On February 13, 2014, the Ninth Circuit issued a decision in 742 F.3d 1144 (9th Cir.2014) in which it held that "the right to bear arms includes the right to carry an operable firearm outside the home for the lawful purpose of self-defense...." Id. at 1166. Peruta involved a challenge to San Diego County's policy concerning the procedures for obtaining a concealed carry license.[13] Id. at 1147–48. As a preliminary matter, the Peruta Court noted that "California law has no permitting provision for open carry" in San Diego County. Id. at 1168. Accordingly, under California's licensing scheme, only concealed carry permits are available to San Diego County residents. Id. (citing Cal.Penal Code §§ 26150, 26155). The Peruta Court found that in light of California's choice to prohibit open carry "in virtually all circumstances," San Diego County's policy limiting the issuance of concealed carry licenses only to applicants who can show "good cause" amounted to the "destruction" of the Second Amendment rights of "the typical, responsible, law-abiding citizen" who desired to carry a loaded weapon outside the home for self-protection, even in the absence of a showing of immediate, articulable danger. ( Id. at 1168–69).

Importantly, and fatal to Plaintiff's open carry claims in this case, in reaching this conclusion the Peruta Court also found that:

[T]he state has a right to prescribe a particular manner of carry, provided that it does not "cut[ ] off the exercise of the right of the citizen altogether to bear arms, or, under the color of prescribing the mode, render [ ] the right itself useless." [ Nunn v. State, 1 Ga. 243, 243 (1846) ]. California's favoring concealed carry over open carry does not offend the Constitution, so long as it allows one of the two.

To put it simply, concealed carry per se does not fall outside the scope of the right to bear arms; but insistence upon a particular mode of carry does. As we

have explained previously, this is not the latter type of case. Peruta seeks a concealed carry permit because that is the only type of permit available in the state. As the California legislature has limited its permitting scheme to concealed carry-and has expressed a preference for that manner of arms-bearing- a narrow challenge to the San Diego County regulations on concealed carry, rather than a broad challenge to the state-wide ban on open carry, is permissible.

Peruta, 742 F.3d at 1172–73 (footnotes omitted; emphasis added).

Plaintiff's claim is exactly the type of "broad challenge" insisting on a purported right to a particular mode of carry that the Peruta Court found does not implicate the Second Amendment. Unlike the plaintiffs in Peruta, who claimed that the Second Amendment required the state to "permit some form of carry for self-

**[17 F.Supp.3d 1004]** defense outside the home," Plaintiff claims that the Second Amendment affirmatively requires California to permit a specific mode of carry, i.e., open carry.[14] Id. However, the Ninth Circuit has found that the Second Amendment does not protect a purported "right" to one mode of carry over another and a state "has a right to prescribe a particular manner of carry...." Id. Therefore, Plaintiff's Second Amendment challenge fails at the first step of the two-step analysis adopted by the Chovan Court. Chovan, 735 F.3d at 1136. Because the Ninth Circuit instructs that the Second Amendment as it is historically understood is not implicated by a state's decision to favor (or disfavor) one mode of carry, there is no "burden" on any constitutional right to analyze at the second step of the Chovan analysis. Accordingly, rational basis review applies.[15] See Peruta, 742 F.3d at 1172–73; Nordyke v. King, 681 F.3d 1041, 1043 n. 2 (9th Cir.2012) ( en banc ) ("[B]ecause we hold that the ordinance does not violate either the First or Second Amendments, rational basis scrutiny applies.").

Under rational basis review, a court will uphold a statute

if "the ordinance is rationally-related to a legitimate government interest." Honolulu Weekly, Inc. v. Harris, 298 F.3d 1037, 1047 (9th Cir.2002); see also Wright v. Incline Village General Improvement Dist., 665 F.3d 1128, 1140 (9th Cir.2011). As this Court has previously found, the governmental objective at issue here is more than just "legitimate" because "California has a substantial interest in increasing public safety by restricting the open carry of firearms, both loaded and unloaded." (PI Order at 7). California courts have explained that the statutory regime regulating the carrying of loaded firearms in public was designed "to reduce the incidence of unlawful public shootings, while at the same time respecting the need for persons to have access to firearms for lawful purposes, including self-defense." People v. Flores, 169 Cal.App.4th 568, 576, 86 Cal.Rptr.3d 804 (2008) (emphasis in original). Likewise, the Legislative Histories discussing Sections 26350 (unloaded handguns) and 26400 (unloaded firearms) explain in identical language that these statutes were enacted because:

The absence of a prohibition on "open carry" has created an increase in problematic instances of guns carried in public, alarming unsuspecting individuals causing issues for law enforcement.

Open carry creates a potentially dangerous situation. In most cases when a person is openly carrying a firearm, law enforcement is called to the scene with few details other than one or more people are present at a location and are armed.

In these tense situations, the slightest wrong move by the gun carrier could be construed as threatening by the responding officer, who may feel compelled to respond in a manner that could be lethal. In this situation, the practice

**[17 F.Supp.3d 1005]** of "open carry" creates an unsafe environment for all parties involved: the officer, the gun-carrying individual, and for any other individuals nearby as well.

Additionally, the increase in "open carry" calls placed to law enforcement has taxed departments dealing with under-staffing and cutbacks due to the current fiscal climate in California, preventing them from protecting the public in other ways.

(Dkt. No. 104, Eisenberg Decl., Ex. A at AG0021 (legislative history of A.B. No. 144 re unloaded handguns) & Ex. B at AG0092 (legislative history of A.B. No. 1527 re unloaded firearms)).[16]

The Court also finds that the challenged prohibitions are more than merely rationally related to the objective of increasing public safety. California has determined that regulating the carrying of loaded firearms in public reduces public shootings. Allowing the open carry of unloaded handguns and firearms would create an unsafe environment for law enforcement, the person carrying the firearm, and bystanders. At the same time, California has created numerous exceptions that allow for the open carry of loaded and unloaded handguns and firearms.[17] See Cal.Penal Code §§ 25900– 26060, 26361– 26391, 26405. However, even assuming, as the Peruta court found, that despite these exceptions, open carry is illegal in California "in virtually all circumstances," California's choice to prohibit a particular form of carry does not implicate the Second Amendment and the challenged prohibitions on open carry are rationally related to the legitimate state goal of public safety. Accordingly, Plaintiff's Motion for Partial Summary Judgment on his Second Amendment claim as applied to Sections 25850, 26350 and 26400 should therefore be DENIED.

## 2. Fourteenth Amendment

A central argument in the MSJ and its accompanying exhibits appears to be that Section 25850 violates the 14th Amendment's equal protection clause due to the statute's allegedly racist origins and application.[18] (MSJ 11–13). Plaintiff asserts that "[t]he ban on openly carrying loaded firearms was enacted in July of 1967 with the unmistakable purpose of disarming minorities

and that ban is disproportionately enforced against minorities today." (MSJ at 9). Accordingly, Plaintiff contends that Section 25850 is unconstitutional and that summary judgment is proper. ( See MSJ Reply at 5).

There are two procedural infirmities with Plaintiff's race–based equal protection

**[17 F.Supp.3d 1006]** claim as alleged in the MSJ, each of which is independently dispositive. First, the SAC does not assert an equal protection claim against the Attorney General based on Section 25850's allegedly racist origins and application. ( See generally SAC at 25–30). Therefore, the claim cannot be asserted on summary judgment as it has not been properly placed at issue and litigated. See, e.g., Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir.2000) (where plaintiff neither asserted claim in the complaint nor made known his intention to pursue recovery on the claim during discovery, assertion of that ground for relief on summary judgment was improper). While the SAC briefly alleges in its fact section that Section 25850's origins and application reflect racial animus, ( see SAC at 17–19), the SAC cannot be fairly read, even when liberally construed, to elevate this background assertion into a race-based equal protection claim against the Attorney General. ( See SAC at 25–30).

However, even if, as Plaintiff argues, he has always included a race-based "suspect classification" [sic] claim in this action, the claim is not cognizable because Plaintiff does not have standing to assert it. (MSJ Reply at 4); see also Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 954 (9th Cir.2011) (federal courts "are required sua sponte to examine jurisdictional issues such as standing," which is not waivable and must be demonstrated "at the successive stages of the litigation") (internal quotation marks omitted). To have Article III standing to pursue a claim, the plaintiff must show that he has suffered an "injury in fact." Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir.2011). "The Supreme Court has repeatedly refused to recognize a generalized grievance against allegedly illegal government conduct

as sufficient to confer standing." Carroll v. Nakatani, 342 F.3d 934, 940 (9th Cir.2003) (citing United States v. Hays, 515 U.S. 737, 743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995)). "[T]he rule against generalized grievances applies in equal protection challenges." Carroll, 342 F.3d at 940–41. To state an equal protection claim under section 1983, a plaintiff typically must allege that " 'defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.' " Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir.2013) (quoting Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir.1998) (emphasis added)).

According to the criminal complaint filed in CRB's misdemeanor action against Plaintiff, Plaintiff is white. (RJN, Exh. A at 8). In addition, nowhere in the record does Plaintiff contend that he is a member of a racial minority or that he has suffered discrimination because of his race. Therefore, even if Section 25850 was motivated by a racist design and has had a disproportionate impact on racial minorities, facts which Plaintiff has not proved, the statute and its predecessor were not enacted with the intent or purpose to discriminate against Plaintiff and do not threaten to have a disproportionate impact against Plaintiff because of his race. "[E]ven if a government actor discriminates on the basis of race, the resulting injury 'accords a basis for standing only to those persons who are personally denied equal treatment.' " Carroll, 342 F.3d at 940 (quoting Allen v. Wright, 468 U.S. 737, 755, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)); see also Doe ex rel. Doe v. Lower Merion School Dist., 665 F.3d 524, 542 n. 28 (3d Cir.2011) ( "In the equal protection context, an injury resulting from governmental racial discrimination 'accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct.' ")

**[17 F.Supp.3d 1007]** (quoting Hays, 515 U.S. at 744–45, 115 S.Ct. 2431); RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1055 (9th Cir.2002) ( " '[A] white plaintiff generally does not have standing under Section 1983

solely for the purpose of vindicating the rights of minorities who have suffered from racial discrimination.' ") (quoting Maynard v. City of San Jose, 37 F.3d 1396, 1402 (9th Cir.1994)); Halet v. Wend Inv. Co., 672 F.2d 1305, 1307 n. 1 (9th Cir.1982) (white plaintiff denied an apartment due to the complex's adults-only rental policy lacked standing to challenge that policy on the ground that it had a greater adverse effect on minorities).[19]

Because the SAC failed to allege a race-based equal protection claim against the Attorney General and, alternatively, because Plaintiff does not have standing to raise such a claim even if he had attempted to do so, Plaintiff's race-based equal protection challenge to Section 25850 is not cognizable in this action. Accordingly, Plaintiff is not entitled to summary judgment on the ground that Section 25850 violates the Fourteenth Amendment due to its allegedly racist origin and application. See Coleman, 232 F.3d at 1292.

### 3. Fourth Amendment

Pursuant to Section 25850(b), peace officers are authorized to examine "any firearm carried by anyone on the person or in a vehicle while in any public place or on any public street." Cal.Penal Code 25850(b). The statute further provides that "[r]efusal to allow a peace officer to inspect a firearm pursuant to this section constitutes probable cause for arrest for violation of this section." Id. Plaintiff briefly argues in his MSJ that Section 25850(b) violates the Fourth Amendment because "the mere refusal to consent to a search" cannot constitute probable cause for an arrest.[20] (MSJ at 10) (citing United States v. Fuentes, 105 F.3d 487, 490 (9th Cir.1997)).

The Fourth Amendment protects the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" absent a warrant supported by probable cause. U.S. Const. amend. IV. Warrantless arrests must be supported by probable cause. United States v. Lopez, 482 F.3d 1067,

1072 (9th Cir.2007). "Probable cause" is "knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe

**[17 F.Supp.3d 1008]** that an offense has been or is being committed by the person being arrested." Id. Accordingly, a determination of probable cause generally requires a factual analysis of "the totality of the circumstances known to the officers at the time of the search." Lacey v. Maricopa Cnty., 693 F.3d 896, 918 (9th Cir.2012) (en banc).

Plaintiff's argument is predicated on the dual propositions that (1) the inspection of a firearm by a peace officer to see if it is loaded constitutes a "search" under the Fourth Amendment, and (2) the exercise of a constitutional right, i.e., Plaintiff's refusal to consent to a warrantless search, can never provide probable cause for an arrest. As a preliminary matter, it is questionable whether a chamber check constitutes a "search" under the Fourth Amendment. "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." United States v. Jefferson, 566 F.3d 928, 933 (9th Cir.2009) (internal quotation marks omitted); see also Illinois v. Andreas, 463 U.S. 765, 771, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983) ("The Fourth Amendment protects legitimate expectations of privacy.... If the inspection by police does not intrude upon a legitimate expectation of privacy, there is no 'search' subject to the Warrant Clause."). As the California Court of Appeal observed in upholding the constitutionality of the substantively identical predecessor to Section 25850(b):

In the first place, the examination of the weapon may hardly be deemed to be a search at all. The chamber of a gun is not the proper or usual receptacle for anything but a bullet or a shell. The loading of a gun simply affects the condition of the weapon by making it immediately useful for firing. The ammunition becomes, as it were, part of the gun. There is nothing private or special or secret about a bullet. The use of the word 'examine' in the statutes instead of the word

'search' is not at all a devious one. In examining the weapon, the officers are not attempting to find some kind of contraband which is unrelated to the gun itself.

People v. Delong, 11 Cal.App.3d 786, 791–92, 90 Cal.Rptr. 193 (1970). Accordingly, a person who displays a weapon in public does not have a privacy interest that "society is prepared to consider reasonable" in the condition of the gun, i.e., whether it is loaded and presents an immediate potential threat to public safety. Jefferson, 566 F.3d at 933.

However, even if an examination of a firearm to see if it is loaded is properly considered a "search," it still would not appear to implicate the Fourth Amendment. As the Delong court explained:

But if the examination may be called a search, it is not an unreasonable one; and only unreasonable searches are forbidden by the Fourth Amendment. ( Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 [1968].) It is, as we have said, limited to a single purpose. It does not have about it any except the slightest element of embarrassment or annoyance, elements overbalanced by far by the purpose of preventing violence or threats of violence. The minimal intrusion does not begin to approach the indignity of the frisk, as graphically described in Terry v. Ohio, Supra, at p. 17, fn. 13, 88 S.Ct. 1868 [1968].... [¶] [W]e hold that the mere examination of a weapon which is brought into a place where it is forbidden to have a loaded weapon, is not unreasonable and that the statutes authorizing such examination are constitutional.

Delong, 11 Cal.App.3d at 792–93, 90 Cal.Rptr. 193; see also United States v. Brady, 819 F.2d 884, 889 (9th Cir.1987) (citing Delong with approval for the proposition

**[17 F.Supp.3d 1009]** that under the predecessor to current section 25850(b), "police may inspect a firearm which they know is in a vehicle, regardless of whether they have probable cause to believe that it is loaded").

Accordingly, Plaintiff's reliance on United States v. Fuentes for the proposition that "[m]ere refusal to consent to a ... search does not give rise to reasonable suspicion or probable cause" is inapposite. (MSJ at 10); see also Fuentes, 105 F.3d at 490. A chamber check is arguably not a "search" because it does not infringe on a reasonable expectation of privacy and even if it is, the Fourth Amendment is not implicated because such a search is reasonable. Plaintiff's reliance on Patel v. City of Los Angeles, 738 F.3d 1058 (9th Cir.2013) also appears misplaced. ( See Dkt. No. 150, Notice of Supplemental Authority). The Patel Court found that a Los Angeles city ordinance that authorized police officers to inspect private hotel guest records at any time without consent and without a warrant was facially invalid under the Fourth Amendment. Patel, 738 F.3d at 1061. Critical to the court's decision was the recognition that hotels retain a "reasonable expectation of privacy" in the content of their private guest records. Id. at 1061–62. The court noted, however, that if the records were available for public view, they would not be protected by the Fourth Amendment because "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." Id. at 1062 (internal quotation marks omitted). Because the ordinance at issue in Patel systematically authorized warrantless inspections without providing an opportunity for judicial review of the reasonableness of the inspection demand, the ordinance failed a facial challenge. Id. at 1065. Patel is easily distinguishable from the facts alleged here. A person who openly carries a firearm in public does not have the same reasonable expectation of privacy regarding the condition of that weapon, whether it is loaded or unloaded, that a hotel owner has in the contents of privately maintained guest records unavailable for public view. Accordingly, Plaintiff has failed to show the existence of a federal constitutional right by his refusal to allow an officer to inspect a weapon carried in public.

However, Plaintiff's Fourth Amendment claim still fails even if, as a hypothetical matter, there may be some circumstances in which a person openly carrying a firearm in public has a cognizable privacy interest in preventing law enforcement from determining whether the firearm is loaded, which Plaintiff has not shown. Plaintiff is mounting a facial challenge and must therefore establish that "no set of circumstances exists under which the Act would be valid." (PI Order at 10) (quoting Salerno, 481 U.S. at 745, 107 S.Ct. 2095). It is readily apparent to the Court that the refusal to permit a peace officer to inspect an openly carried firearm may provide probable cause in any number of circumstances. Plaintiff has not shown that there are no circumstances under which section 25850(b) may be applied constitutionally. Accordingly, Plaintiff is not entitled to summary judgment on his claim that Section 25850(b) violates the Fourth Amendment.

Plaintiff has failed to show the absence of triable issues of material fact with respect to the constitutionality of Sections 25850, 26350 and 26400. Indeed, the Court has found that all of these Sections easily survive a facial constitutional challenge. Accordingly, it is recommended that Plaintiff's Motion for Partial Summary Judgment be DENIED.

## B. Defendant's Motion For Judgment On The Pleadings

### 1. Second Amendment

The Court has addressed Plaintiff's Second Amendment arguments as applied to

**[17 F.Supp.3d 1010]** the prohibitions on loaded and unloaded open carry in Sections 25850, 26350 and 26400 in Part VI.A.1 above. Because the Court considered only facts included in the pleadings or properly subject to judicial notice in its analysis of Plaintiff's MSJ claims, and because the issues presented in this facial challenge involve solely issues of law, the Court's analysis applies to both Plaintiff's MSJ and Defendant's MJP. Fleming, 581 F.3d at 925 (court must accept facts alleged as true); Xcentric Ventures, 934

F.Supp.2d at 1134 (judicial notice of matters of public record does not convert motion for judgment on the pleadings into motion for summary judgment). After the SAC was filed, the Ninth Circuit has clarified that the Second Amendment does not protect any particular mode of carry in public for self-defense. Peruta, 742 F.3d at 1172–73. The Court therefore concludes that Defendant is entitled to judgment on the pleadings to the extent that the SAC alleges that Sections 25850, 26350 and 26400 violate the Second Amendment.

However, Plaintiff did not move for summary judgment on his claims involving California's firearm licensing regime codified at California Penal Code Sections 26150–26220. The SAC summarily argues that these statutes are "invalid" to the extent that they "prohibit, or infringe, PLAINTIFF and private citizens who are otherwise eligible to possess a firearm from openly carrying a loaded and operable handgun for the purpose of self-defense in non-sensitive places." (SAC at 29). Other than this broad allegation, with the exception of Plaintiff's challenge to the restriction on open carry licenses to residents of counties of fewer than 200,000 people, Plaintiff fails to explain why the specific licensing provisions listed in the SAC inhibit the alleged right to openly carry a firearm or violate the Second Amendment.[21] Accordingly, these claims fail and Defendant is entitled to judgment on the pleadings on Plaintiff's Second Amendment licensing claims. See Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (complaint must contain more than conclusory allegations and formulaic recitations); BankAmerica Pension Plan v. McMath, 206 F.3d 821, 826 (9th Cir.2000) (a party "abandons an issue when it has a full and fair opportunity to ventilate its views with respect to an issue and instead chooses a position that removes the issue from the case," such as by failing to raise the issue in a complaint or develop it during discovery).

Furthermore, because Plaintiff's licensing challenge is predicated on the erroneous contention that the Second Amendment requires a state to authorize open carry, it fails for the same reasons that his Second Amendment

challenge to Sections 25850, 26350 and 26400 fails. Because the Second Amendment does not guarantee a specific mode of carry, California's firearm licensing scheme as it applies solely to a purported "right" to open carry does not raise constitutional concerns

**[17 F.Supp.3d 1011]** and need only be rationally related to a legitimate government interest. Peruta, 742 F.3d at 1172–73; Nordyke, 681 F.3d at 1043 n. 2. The state plainly has an interest in public safety that is furthered by setting conditions on firearm licenses. Although Plaintiff has not identified which licensing conditions he believes infringe on open carry, it is self-evident that California may place some conditions on the issuance of a firearms license, as even Plaintiff admits that felons and the mentally ill may be screened. (SAC at 27). In this facial challenge, Plaintiff must show that no circumstances exist in which California's licensing regime as it affects open carry is constitutional. Alphonsus, 705 F.3d at 1042. Bare assertions of a right to open carry fail to meet that burden. After the SAC was filed, the Ninth Circuit has clarified that the Second Amendment does not protect any particular mode of public carry. Peruta, 742 F.3d at 1172–73. Accordingly, Defendant is entitled to judgment on the pleadings on Plaintiff's claim that California's licensing regime violates the Second Amendment as it pertains to an alleged "right" to open carry.

## 2. Fourth Amendment

The Court addressed Plaintiff's Fourth Amendment challenge to Section 25850(b) in Part VI.A.3 above. Because the Court considered only facts included in the pleadings or properly subject to judicial notice in its discussion of Section 25850(b), and because the issues presented in this facial challenge involve solely issues of law, the Court's analysis applies to both Plaintiff's MSJ and Defendant's MJP. Fleming, 581 F.3d at 925; Xcentric Ventures, 934 F.Supp.2d at 1134. The Court therefore concludes that Defendant is entitled to judgment on the pleadings to the extent that the SAC alleges that Section 25850(b) violates the Fourth

Amendment.

### 3. Fourteenth Amendment

Plaintiff alleges that California's firearms licensing scheme is unconstitutional to the extent that it restricts "licenses to openly carry a loaded handgun only to persons within counties of a population of fewer than 200,000 persons which is valid only in those counties, to only those residents who reside within those counties and leaves the issuance of such licenses solely to the discretion of the issuing authority...." (SAC at 29); see also Cal.Penal Code §§ 26150(b)(2) & 26155(b)(2). Construed liberally, Plaintiff alleges an equal protection claim under the Fourteenth Amendment based on the allegedly improper classification of open carry license applicants according to the population size of the county in which they reside.

The Equal Protection Clause directs that "all persons similarly circumstanced shall be treated alike." Plyler v. Doe, 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). The Constitution does not "forbid classifications[,]" but "simply keeps governmental decision makers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). In determining whether a classification violates the Equal Protection Clause, the first step is to identify "the proper level of scrutiny to apply for review." Honolulu Weekly, 298 F.3d at 1047.

A Court will apply strict scrutiny if the statute "targets a suspect class or burdens the exercise of a fundamental right." Wright v. Incline Village Gen. Improvement Dist., 665 F.3d 1128, 1141 (9th Cir.2011) (internal quotation marks omitted); see also Kahawaiolaa v. Norton, 386 F.3d 1271, 1277 (9th Cir.2004) (identifying race, ancestry, and alienage as "suspect classifications" and rights such as privacy,

[17 F.Supp.3d 1012] marriage, voting, travel and freedom of association as "fundamental"). Under strict

scrutiny, a law will survive an equal protection challenge only if "the state can show that the statute is narrowly drawn to serve a compelling state interest." Green v. City of Tucson, 340 F.3d 891, 896 (9th Cir.2003). "Laws are subject to intermediate scrutiny when they discriminate based on certain other suspect classifications, such as gender." Kahawaiolaa, 386 F.3d at 1277. Under intermediate scrutiny, "the statute will be upheld if the government can demonstrate that the classification 'substantially furthers an important government interest.' " Green, 340 F.3d at 896 (quoting Kirchberg v. Feenstra, 450 U.S. 455, 460, 101 S.Ct. 1195, 67 L.Ed.2d 428 (1981)). However, if a classification "does not concern a suspect or semi-suspect class or a fundamental right, [the courts] apply rational basis review and simply ask whether the ordinance is rationally-related to a legitimate government interest." Honolulu Weekly, 298 F.3d at 1047 (internal quotation marks omitted).

Here, the Court has already concluded that California's licensing regime, including the classification of applicants by county size, as it pertains solely to a purported right to open carry does not implicate the Second Amendment. Accordingly, rational basis review applies. See Nordyke, 681 F.3d at 1043 n. 2. It is readily apparent that restricting open carry licenses to residents of sparsely-populated counties "rationally further[s] a legitimate state purpose." Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 54, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). The Legislature could rationally determine that openly carrying firearms poses a greater threat to public safety in densely-populated urban areas than in sparsely-populated rural areas. Accordingly, Plaintiff's facial challenge to the restrictions on the issuance of open carry licenses to applicants living in counties of fewer than 200,000 residents fails. Defendant is entitled to judgment on the pleadings on Plaintiff's equal protection claim.

### 4. Vagueness

Plaintiff alleges that Section 25850, as part of a statutory

regime regulating the carriage of loaded firearms in public, is unconstitutionally vague. (SAC at 28). However, as the Court observed in denying Plaintiff's Motion for Preliminary Injunction, "facial challenges on the ground of unconstitutional vagueness that do not involve the First Amendment are not cognizable pursuant to Ninth Circuit precedent." (PI Order at 10) (citing United States v. Purdy, 264 F.3d 809, 811 (9th Cir.2001)). Plaintiff is mounting a facial challenge, and his claims concerning Section 25850 do not implicate the First Amendment. Accordingly, Defendant is entitled to judgment on the pleadings to the extent that the SAC can be construed as raising a void-for-vagueness claim as to Section 25850.

As described more fully above, all of Plaintiff's challenges to California's laws regulating open carry and the issuance of firearms licenses related to the purported right to open carry are without merit. In analyzing Plaintiff's claims, the Court relied solely on facts alleged in the SAC or facts that are properly subject to judicial notice. After the SAC was filed, the Ninth Circuit has clarified that the Second Amendment does not guarantee any particular mode of public carry. Peruta, 742 F.3d at 1172–73. Accordingly, it is recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED.

## VII.

## CONCLUSION

For the reasons stated above, it is recommended that the Court (1) DENY

**[17 F.Supp.3d 1013]** Plaintiff's Motion for Partial Summary Judgment; (2) GRANT Defendant's Motion for Judgment on the Pleadings; and (3) DISMISS this action WITH PREJUDICE.

Dated: March 18, 2014.

--------

Notes:

Plaintiff's Objections to the Eisenberg Declaration are directed to the exhibits attached to the declaration, which consist of: (1) the Los Angeles County Sheriff's Department's Concealed Weapons Licensing Policy, (2) a brief biography of former Assistant Sheriff Paul Tanaka, available at www. paultanaka. com, and (3) a web article describing the instant litigation, including comments, available at http:// lagunaniguel- danapoint. patch. com. ( See Dkt. No. 146 at 1–2) (citing Eisenberg Decl., Exhs. A–C). However, the exhibits did not affect the outcome of the Court's recommendation. Accordingly, Plaintiff's Objections to the Eisenberg Declaration and its exhibits are overruled. See PacifiCorp v. Northwest Pipeline GP, 879 F.Supp.2d 1171, 1194 n. 7 & 1214 (D.Or.2012) (declining to address evidentiary objections where the court would reach the same conclusions whether or not it considered the challenged materials).

(a) A person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory.

(b) In order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on the person or in a vehicle while in any public place or on any public street in an incorporated city or prohibited area of an unincorporated territory. Refusal to allow a peace officer to inspect a firearm pursuant to this section constitutes probable cause for arrest for violation of this section. Cal.Penal Code § 25850.

A person is guilty of openly carrying an unloaded handgun when that person carries upon his or her person an exposed and unloaded handgun outside a vehicle while in or on any of the following:

(A) A public place or public street in an incorporated city or city and county.

(B) A public street in a prohibited area of an unincorporated area of a county or city and county.

(C) A public place in a prohibited area of a county or city and county.

Cal.Penal Code § 26350(a)(1) (emphasis added). Subsection 26350(a)(2) prohibits carrying an " exposed or unloaded handgun inside or on a vehicle, whether or not on his or her person" in any of the same areas. Id. § 26350(a)(2) (emphasis added).

California Penal Code section 26400 provides in relevant part that "[a] person is guilty of carrying an unloaded firearm that is not a handgun in an incorporated city or city and county when that person carries upon his or her person an unloaded firearm that is not a handgun outside a vehicle while in the incorporated city or city and county." Cal.Penal Code § 26400(a) (emphasis added).

In addition, even Plaintiff's argument regarding the county population cap where open carry licenses may be issued does not appear to be based on the Second Amendment. The gravamen of that argument appears to be grounded in the Fourteenth Amendment's equal protection clause. (SAC at 5 & 29).

* * *

1. Plaintiff objected to the Notice of Errata on the ground that Defendant's corrected Memorandum in Opposition to the MSJ was untimely, as it was filed the day after the Court's deadline for opposing the MSJ. (Dkt. No. 145 at 2–3). However, the corrected Opposition is substantively similar to the inadvertently-filed earlier version, which Plaintiff concedes was timely. ( Id.). Accordingly, Plaintiff's Objections to the Notice of Errata are overruled.

2. Plaintiff objects to Exhibit A of Defendant's RJN, which is a copy of CRB's Opposition to Plaintiff's Ex Parte Application for Stay Pending Appeal, on the ground that "[t]he facts [asserted in CRB's Opposition brief] and exhibits attached to [the Opposition] ... were and are very much in dispute...." (P MJP Evid. Obj. at 1). The exhibits attached to CRB's Opposition are copies of the criminal complaint in CRB's misdemeanor action against Plaintiff and the court minutes in that matter. ( See MJP RJN, Exh. A). While contested facts are not properly subject to judicial notice, the Court may take judicial notice of the criminal complaint and court minutes as they are public records "whose accuracy cannot reasonably be questioned." See Louis v. McCormick & Schmick Restaurant Corp., 460 F.Supp.2d 1153, 1155, fn. 4 (C.D.Cal.2006) ( "Under Rule 201 of the Federal Rules of Evidence, the court may take judicial notice of the records of state courts, the legislative history of state statutes, and the records of state administrative agencies."). Furthermore, Plaintiff does not deny that he was charged with carrying a weapon into a City of Redondo Beach park and that he pled nolo contendere to the misdemeanor violation. To that extent, Plaintiff's Objections are overruled and Defendant's Request for Judicial Notice is GRANTED.

3. Defendant's Objections to the supplemental briefs accompanying Plaintiff's Notices of Supplemental Authority are well taken. "Filing a notice of supplemental authority to inform the Court of a new judicial opinion that has been issued is appropriate, but it is an improper occasion to argue outside the pleadings." Rosenstein v. Edge Investors, L.P., 2009 WL 903806 at *1 n. 1 (S.D.Fla. Mar. 30, 2009); see also C.D. Cal. L.R. 7–10 (prohibiting further briefing after a reply is filed absent written authorization from the Court); Hagens Berman Sobol Shapiro LLP v. Rubinstein, 2009 WL 3459741 at *1 (W.D.Wash. Oct. 22, 2009) (notice of supplemental authority improper "because it contained argument regarding the case" submitted for the court's review). In sum, filing a Notice of Supplemental Authority with a copy of or a citation to a recently published case is proper; including a memorandum with the Notice explaining why the case is relevant is not. However, the largely repetitive arguments presented in the briefs accompanying Plaintiff's Notices of Supplemental Authority did not affect the outcome of the Court's recommendation. Accordingly, while it would be proper to strike Plaintiff's supplemental briefs, the Court exercises its discretion instead to overrule Defendant's Objections as moot. PacifiCorp, 879 F.Supp.2d at 1194 n. 7 & 1214.

4. Plaintiff purports to assert both facial and "as applied" challenges to the California statutes at issue in the SAC. ( See SAC at 26–30). A "claim is 'facial' [if] ... it is not limited to plaintiffs' particular case, but challenges the application of the law more broadly...." John Doe No. 1 v. Reed, 561 U.S. 186, 130 S.Ct. 2811, 2817, 177 L.Ed.2d 493 (2010). The SAC does not allege that the challenged statutes are unconstitutional due to the particular manner in which they were applied to Plaintiff. Indeed, Plaintiff does not allege facts showing that the majority of the statutes were enforced against him at all and thus provides no facts for an "as applied" challenge. Rather, the gravamen of Plaintiff's action is that the laws are unconstitutional because they generally inhibit the purported right to open carry. Accordingly, as the Court has already found, Plaintiff's claims are facial, not "as applied," challenges to the relevant state statutes. (PI Order at 4).

5. On May 13, 2013, Plaintiff entered a plea of nolo contendere to violating the CRB anti-carrying ordinance and was found guilty. ( See RJN, Exh. A at 16). The Court will cite to the exhibits in Defendant's RJN as though each separate exhibit were consecutively paginated.

6. California Penal Code section 25850 provides, in relevant part:

7. California Penal Code section 26350 provides in relevant part:

8. As noted above, Plaintiff has limited his suit solely to laws infringing on the "right" to open carry and is not challenging California's firearms scheme in its entirely. (SAC at 29). Accordingly, statutory provisions requiring applicants for firearms licenses to meet certain conditions, which Plaintiff does not specifically identify, are relevant only to the extent that they "pertain to licenses to carry firearms openly." ( Id. at 29–30).

9. Plaintiff alleges that Section 25850 is unconstitutionally vague for three reasons. First, Plaintiff claims that it is vague because a "reasonable person would not conclude that either his private residential property or the inside of his motor vehicle is a public place." (SAC

at 27). Second, it is vague because exceptions to the prohibition on open carry are "scattered throughout the California Penal Code to such an extent that … a reasonable person would have to spend days searching through the California statutes and case law and still be uncertain as to whether or not a particular act … is in violation of Section 25850." ( Id. at 28). Third, Plaintiff claims the statute is vague because "[m]ere possession of matching ammunition cannot make an unloaded handgun [or firearm] 'loaded.' " ( Id.).

10. In addition, the MSJ raises a new Fourteenth Amendment challenge based on the allegedly racist origins and application of Section 25850 that is not squarely put at issue in the SAC. (MSJ at 11–13). Accordingly, while the arguments raised by the parties in connection with the MSJ and the MJP largely overlap, they are not fully co-extensive and will be addressed separately in this Report and Recommendation where necessary.

11. Plaintiff's arguments concerning the existence or non-existence of exceptions to California's general open carry prohibitions are confusing and contradictory. He appears to find it significant that sections 25850 (loaded firearms), 26350 (unloaded handguns) and 26400 (unloaded firearms) do not contain any exceptions within the "plain text" of those specific sections. (MSJ Reply at 12). At the same time, he appears to acknowledge that those statutes are subject to exceptions found elsewhere in the Penal Code that allow for open carry in certain circumstances or by certain classes of people. ( Id. at 13). It is unclear to the Court why or if Plaintiff believes that these statutory exceptions are somehow ineffective if not included in the specific section setting forth the general prohibition.

12. The Chovan court concluded that where the core Second Amendment right of self-defense of hearth and home is not at issue but the burden on the right to bear arms is substantial, "intermediate rather than strict scrutiny is the proper standard to apply." Chovan, 735 F.3d at 1138.

13. "California law delegates to each city and county the power to issue a written policy setting forth the procedures for obtaining a concealed-carry license." Peruta, 742 F.3d at 1148 (citing Cal.Penal Code § 26160).

14. Accordingly, Plaintiff's case is not simply the mirror image of the challenge at issue in Peruta. According to the Ninth Circuit, the plaintiffs in Peruta accepted that the Second Amendment does not require a state to authorize a particular mode of public carry, but argued that once a state has made a choice to favor one form of public carry, it cannot foreclose the other form of public carry without offending the Second Amendment. Peruta, 742 F.3d at 1172–73. In the current action, Plaintiff claims that the Second Amendment requires a state to authorize open carry. ( See SAC at 3).

15. Furthermore, because the Second Amendment does not protect the right that Plaintiff seeks to assert, the cases submitted as Supplemental Authority in support of Plaintiff's Second Amendment challenge are irrelevant.

16. The Court takes judicial notice of the legislative histories of A.B. Nos. 144 and 1527. See Anderson v. Holder, 673 F.3d 1089, 1094 fn. 1 (9th Cir.2012).

17. For example, each of the challenged statutes is subject to an exception for self-defense. Cal.Penal Code §§ 26045(a) (self-defense exception to Section 25850's prohibition on carrying loaded firearms in public), 26362 (incorporating certain Section 25850 exceptions, including the self-defense exception, and applying them to Section 26350's prohibition on the open carry of unloaded handguns), 26405(f) (incorporating certain Section 25850 exceptions, including the self-defense exception, and applying them to Section 26400's prohibition on the open carry of unloaded firearms). In addition, Sections 25850, 26350 and 26400 are each subject to numerous other exceptions, including, for example, exceptions for defense of property, hunters, target shooters, police officers, members of the military, security guards, persons who possess firearms on their own property, and persons who possess a firearm at their lawful residence, "including any temporary residence or campsite." Id. §§ 25900–26060, 26361–62, 26405(e-f).

18. The Court notes that Section 25850, like all of the statutes at issue in this litigation, is facially race-neutral. Cal.Penal Code § 25850.

19. Even if Plaintiff had standing to assert a race-based equal protection claim and had properly put the claim at issue here, Plaintiff would

still not be entitled to summary judgment on this claim. The record is simply not sufficiently developed for Plaintiff to establish the absence of a genuine issue of material fact as to the origins and application of Section 25850 and its predecessor. ( See MSJ at 3 & 8); see also Celotex Corp., 477 U.S. at 323, 106 S.Ct. 2548.

20. The Court disagrees with Defendant that Plaintiff's misdemeanor conviction for violation of Redondo Beach Municipal Section 4–35.20(a), which prohibits carrying a weapon "across, in, or into a park," necessarily bars Plaintiff's challenge to California Penal Code Section 25850(b). ( See MJP RJN, Exh. A (CRB criminal complaint); see also MSJ Opp. at 17). Pursuant to the Heck doctrine, a Section 1983 complaint must be dismissed if judgment in favor of the plaintiff would undermine the validity of his conviction or sentence, unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. Heck, 512 U.S. at 486–87, 114 S.Ct. 2364. Even if Plaintiff's constitutional challenge to Section 25850(b) were successful, a favorable finding on that claim would not undermine the validity of Plaintiff's misdemeanor conviction. While the record is not entirely clear, it appears that Plaintiff was arrested (and convicted) for carrying a firearm in a city park, not for refusing to consent to a search of his weapon. ( See MJP RJN, Exh. A (CRB criminal complaint)).

21. Plaintiff merely asserts that "no license is required for a private citizen to exercise his Second Amendment right to self-defense," or, in the alternative, that the only requirements for the issuance of an open carry license should be the provision of information "required to undergo a background check through the FBI National Instant Criminal Background Check System (NICS)." (SAC at 36, ¶ 85). Plaintiff does not identify the information an applicant is required to provide for a NICS background check. ( Id.).

ADDENDUM 2
*NICHOLS v. BROWN*, 859 F. Supp.2d 1118 (2012). Challenged dismissal with prejudice of Plaintiff-Appellant's claims under the California Constitution and dismissal with prejudice of California Governor Brown in his official capacity.

# NICHOLS v. BROWN

Charles NICHOLS, Plaintiff, v. Edmund G. BROWN, in his official capacity as
Governor of California, et al., Defendants.

859 F.Supp.2d 1118

United States District Court, C.D. California.

May 7, 2012.

Charles Nichols, Redondo Beach, CA, pro se.

Jonathan Michael Eisenberg, Office of the California Attorney General, Los Angeles, CA,
Michael W. Webb, City of Redondo Beach, Redondo Beach, CA, for Defendants.

\* \* \*

ORDER ACCEPTING FINDINGS, CONCLUSIONS AND RECOMMENDATIONS OF
UNITED STATES MAGISTRATE JUDGE

S. JAMES OTERO, District Judge.

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Complaint in the above-captioned matter, Plaintiff's Motion for Review of Magistrate Judge's Report and Recommendation, which the Court construes as Objections, Plaintiff's Notice of Errata, the Response of Defendants Gov. Edmund G. Brown, Jr. and Atty. Gen. Kamala D. Harris to Plaintiff's Objections, all the records and files herein, and the Report and Recommendation of the United States Magistrate Judge. After having made a de novo determination of the portions of the Report and Recommendation to which Objections were directed, the Court accepts and adopts the findings, conclusions and recommendations of the Magistrate Judge, excluding the citation to Oklevueha Native American Church of Hawai'i, Inc. v. Holder, 719 F.Supp.2d 1217 (D.Hawai'i 2010) on page 15, lines 15-23.

Accordingly, IT IS ORDERED THAT:

1. Plaintiff's claims against Attorney General Kamala D. Harris are DISMISSED WITH LEAVE TO AMEND for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

2. Plaintiff's claims against Governor Edmund G. Brown, Jr. are DISMISSED WITH PREJUDICE for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and the Eleventh Amendment.

3. Plaintiff's claims against the City of Redondo Beach and City of Redondo Beach Police Chief Leonardi are DISMISSED WITH LEAVE TO AMEND for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).

4. Plaintiff's claims against City of Redondo Beach Police Department are DISMISSED WITH PREJUDICE for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule

12(b)(6).

5. Plaintiff's Seventh Claim for Relief alleging a violation of state constitutional law is DISMISSED WITH PREJUDICE pursuant to the Eleventh Amendment.

6. If Plaintiff desires to proceed with his claims against Attorney General Harris, City of Redondo Beach, and Police Chief Leonardi, Plaintiff shall file a First Amended Complaint within thirty (30) days of the date of this Order.

The Clerk shall serve copies of this Order by United States mail on Plaintiff and on counsel for Defendants.

## [859 F.Supp.2d 1123] REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

SUZANNE H. SEGAL, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable S. James Otero, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.

## INTRODUCTION

On November 30, 2011, plaintiff Charles Nichols ("Plaintiff"), a California resident proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. On January 30, 2012, Defendants California Attorney General Kamala D. Harris ("Harris"), and the City of Redondo Beach, City of Redondo Beach Police Department, and City of Redondo Beach Police Chief Joseph Leonardi (collectively, the "Redondo Beach Defendants" or "RBD"), separately filed Motions to Dismiss. Plaintiff filed Oppositions to the Motions on February 8, 2012. Harris and the Redondo Beach Defendants filed Replies on February 14, 2012. On

March 8, 2012, Governor Edmund G. Brown, Jr. ("Brown"), the only other individually-named defendant, filed a Motion to Dismiss. Plaintiff filed an Opposition on March 12, 2012. On March 19, 2012, Brown filed a Reply.

For the reasons discussed below, it is recommended that the Motions to Dismiss be GRANTED. It is recommended that the claims against the Attorney General, the City of Redondo Beach, and City of Redondo Beach Police Chief Leonardi be DISMISSED with leave to amend. It is further recommended that the claims against the Governor and the City of Redondo Beach Police Department be DIMISSED without leave to amend. Finally, it is recommended that Plaintiff's Seventh Claim for Relief be DISMISSED without leave to amend.

## II.

## ALLEGATIONS OF THE COMPLAINT

The Complaint names five Defendants: Attorney General Harris, Governor Brown, the City of Redondo Beach, the City of Redondo Beach Police Department and City of Redondo Beach Police Chief Leonardi. (7AC 3-4). All Defendants are sued in their official capacity. (Id.).

Plaintiff raises seven related claims challenging the constitutionality of California Penal Code 25850, which provides in relevant part:

(a) A person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory.

(b) In order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on the person or in a vehicle while in any public place or on any public street in an incorporated city or prohibited area of an unincorporated territory. Refusal to allow a peace officer to inspect a firearm pursuant to this section constitutes probable cause for arrest for violation of this section.

Cal. Penal Code § 25850(a)(b).[1]

**[859 F.Supp.2d 1124]** In Claim One, Plaintiff raises a facial challenge to section 25850(a) under the Second Amendment because it prohibits him from openly carrying in public a "fully functional loaded handgun[] for the purpose of self-defense and for other lawful purposes." (Complaint at 18). In Claim Two, Plaintiff raises a facial challenge to section 25850(b) under the Fourth Amendment because the "mere possession of a loaded firearm ... cannot support a finding of probable cause ... such that the Fourth Amendment's warrant requirement can be legislatively disregarded." (Id. at 19-20). In Claim Three, Plaintiff alleges that section 25850(a), as applied, violates his "right to openly carry a loaded handgun in public" as guaranteed by the Second Amendment. In Claim Four, Plaintiff alleges that section 25850(b), as applied, violates his right to be "free from unreasonable search and/or seizure under the Fourth Amendment" in the exercise of his Second Amendment rights. (Id. at 21).

In his Fifth and Sixth Claims, Plaintiff raises facial challenges under the Equal Protection and Due Process clauses of the Fourteenth Amendment on the grounds that section 25850 inhibits "the fundamental right of self-defense" (Claim Five) and "is arbitrary or irrational" (Claim Six). (Id. at 22). In Claim Seven, Plaintiff alleges that section 25850 is unconstitutional under Article I, Section I of the California Constitution because the prohibition on "openly carrying a loaded handgun in nonsensitive public places for the purpose of self-defense" denies Plaintiff and other legal residents of the state "the instrument by which he and they may defend their life, liberty, property and safeguard their liberty."[2] (Id. at 23).

Plaintiff seeks a declaration that section 28580 is "null and void" under the United States and California Constitutions. (Id. at 24). Plaintiff further seeks

preliminary and permanent injunctions enjoining Defendants **[859 F.Supp.2d 1125]** from enforcing the provisions of section 28580 against "Plaintiff and private citizens who are otherwise qualified to possess handguns." (Id. at 25).

## III.

## DEFENDANTS' MOTIONS TO DISMISS

All Defendants seek dismissal of the Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. In addition, the RBD seek dismissal under Rule 12(b)(6) for failure to state a claim.

Harris contends that Plaintiff lacks Article III standing because he has not suffered an injury-in-fact. (Harris MTD at 7). She notes that Plaintiff has not been arrested for violating section 25850 and argues that arrest is not imminent because "the Attorney General has not threatened to enforce Section 25850" against Plaintiff. (Id. at 7-8). For the same reasons, Harris contends that Plaintiff's suit is not ripe. (Id. at 9). Harris further contends that Plaintiff's claims are barred by the Eleventh Amendment and do not meet the narrow circumstances in which federal suits against state officials for their oversight of state law are permitted, as articulated in Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Specifically, Harris argues that even though Plaintiff seeks only prospective declaratory and injunctive relief, the Complaint does not show a "credible" threat of enforcement, and even if it did, the Attorney General's general law enforcement powers are insufficient to draw more than a "tenuous connection" between the Attorney General and Plaintiff's alleged injury. (Harris MTD at 10-11; Harris Reply at 5). Finally, Harris contends that the Eleventh Amendment bars Plaintiff's seventh claim, which alleges that section 25850 violates the California Constitution. (Harris MTD at 12).

Governor Brown also argues that Plaintiff lacks standing and that the case is not ripe for the same reasons presented by the Attorney General. (Brown MTD at 1, 6, 10-11). Brown further argues that suit against him is barred by the Eleventh Amendment and that the Ex Parte Young exception does not apply because Plaintiff cannot establish that the Governor has a direct connection with the enforcement of section 25850. (Id. at 7-10). Brown also argues that Plaintiff's state constitutional claim is barred by the Eleventh Amendment. (Id. at 14).

The RBD contend that Plaintiff does not have standing to bring suit against them because he "cannot show that any of his alleged injuries are traceable to the actions of Redondo Beach Defendants." (RBD MTD at 5). They note that all but two of Plaintiff's claims are facial challenges to a state law and that the Third and Fourth Claims for Relief, which challenge section 25850 as applied, "do not even make an allegation that the Redondo Beach Defendants are applying the challenged provisions at all...." (Id.). Furthermore, the RBD cannot grant the relief Plaintiff seeks because even if "the City's assumed policies or customs [were] enjoined by this Court, the general state law provisions that [Plaintiff] alleges cause his supposed injuries would remain in effect." (Id. at 6). The RBD also seek dismissal of the Complaint under Rule 12(b)(6) for failure to state a claim because Plaintiff "does not allege that the Redondo Beach Defendants even have a policy or custom concerning any of the general law provisions he challenges as unconstitutional." (Id. at 7). They also seek dismissal of Plaintiff's state constitutional claim pursuant to the Eleventh Amendment and because California's Constitution does not guarantee a right to bear arms. (Id. at 9).

## **[859 F.Supp.2d 1126]** IV.

## STANDARDS GOVERNING MOTIONS TO DISMISS

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for lack of subject matter jurisdiction. It is well established that the party seeking

to invoke the jurisdiction of the federal courts has the burden of establishing that jurisdiction exists. Assoc. of Medical Colleges v. United States, 217 F.3d 770, 778-779 (9th Cir.2000). A motion under Rule 12(b)(1) can either be "facial," attacking a pleading on its face and accepting all allegations as true, or "factual," contesting the truth of some or all of the pleading's allegations as they relate to jurisdiction. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir.2004). The standards that must be applied vary according to the nature of the jurisdictional challenge.

Here, the challenge to jurisdiction is a facial attack. Defendants contend that the allegations of jurisdiction contained in the Complaint are insufficient on their face to demonstrate the existence of jurisdiction. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir.2004). In a Rule 12(b)(1) motion of this type, the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made. See Sea Vessel Inc. v. Reyes, 23 F.3d 345, 347 (11th Cir.1994). The material factual allegations of the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. Savage v. Glendale Union High Sch. Dist. No. 205, 343 F.3d 1036, 1039 n. 1 (9th Cir.2003); see also Maya v. Centex Corp., 658 F.3d 1060, 1068 (9th Cir.2011) ("`For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party.'") (quoting Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).

Under Rule 12(b)(6), a defendant may also seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A court may grant such a dismissal only where the plaintiff fails to present a cognizable legal theory or to allege sufficient facts to support a cognizable legal theory. See Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir.2008).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). The court must accept all factual allegations as true even if doubtful in fact. Twombly, 550 U.S. at 555-56, 127 S.Ct. 1955. However, the court does not have to accept as true mere legal conclusions. See Iqbal, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

A court considering a motion to dismiss must also decide, if it grants the motion, whether to grant the plaintiff leave to amend. Even when a request to amend is not made, "[l]eave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts, and should be granted more liberally to pro se plaintiff's." Lira v. Herrera, 427 F.3d 1164, 1176 (9th Cir.2005) (internal quotation marks omitted). However, if amendment of the pleading would be futile, leave to amend may be denied. See Ventress v. Japan Airlines, 603 F.3d 676, 680 (9th Cir.2010).

# V.

# DISCUSSION

Plaintiff lacks standing to bring his claims as currently alleged against all named Defendants. Even liberally construed, the Complaint fails to establish that Plaintiff has suffered an injury-in-fact sufficiently particularized to bring this preenforcement challenge. Additionally, even if Plaintiff were able to show an injury-in-fact, he cannot show a direct connection between the Governor or the Redondo Beach Defendants and his alleged injuries, or that his injuries would be redressed by a favorable decision against those Defendants. For the

same reasons, Plaintiff's claims are not ripe for adjudication. Even if Plaintiff could establish jurisdiction, he has failed to state a claim against the RBD. Finally, the Eleventh Amendment bars Plaintiff's claims against the Governor and Plaintiff's state constitutional claim.

## A. Plaintiff Lacks Standing To Bring This Preenforcement Challenge

"Article III, § 2, of the Constitution restricts the federal `judicial Power' to the resolution of `Cases' and `Controversies.' That case-or-controversy requirement is satisfied only where a plaintiff has standing." Sprint Communications Co., L.P. v. APCC Servs., Inc., 554 U.S. 269, 273, 128 S.Ct. 2531, 171 L.Ed.2d 424 (2008). To establish Article III standing, a plaintiff must show that (1) he "has suffered an `injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Maya, 658 F.3d at 1067 (internal quotation marks omitted). A failure to meet any one of these three criteria constitutes a "lack of Article III standing [and] requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." Id.

### 1. Injury-in-Fact

The first factor a court will consider in addressing a plaintiff's standing is whether he "has suffered an `injury in fact' that is (a) concrete and particularized and (b) actual or imminent." Maya, 658 F.3d at 1067. Plaintiff does not allege that he has ever violated section 25850 or been charged with a violation. Rather, Plaintiff states that after receiving a "not so thinly veiled death threat" on September 1, 2011, he "would openly carry a loaded and functional handgun in public for the purpose of self-defense, but he refrains from doing so because he fears arrest, prosecution, fine, and imprisonment as he understands it is unlawful to openly carry a handgun in California for the purpose of self-defense." (Complaint at 6, ¶ 15).

Because Plaintiff has not been arrested, prosecuted, or incarcerated for violating section 25850, he must satisfy the criteria for an injury-in-fact that apply to preenforcement challenges to statutes regulating conduct.[3] Plaintiff "must show a **[859 F.Supp.2d 1128]** genuine threat of imminent prosecution," not the "mere possibility of criminal sanctions." San Diego Cnty. Gun Rights Comm. v. Reno, 98 F.3d 1121, 1126 (9th Cir.1996) (internal quotation marks omitted; emphasis in original). "In evaluating the genuineness of a claimed threat of prosecution, [the court] look[s] to whether the plaintiff's have articulated a `concrete plan' to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged statute." Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1139 (9th Cir.2000) (en banc); see also Babbitt v. United Farm Workers, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (a plaintiff challenging the constitutionality of a criminal statute need not "first expose himself to actual arrest or prosecution" but must establish Article III standing by "alleg[ing] an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," and demonstrating that "there exists a credible threat of prosecution thereunder."). "A general intent to violate a statute at some unknown date in the future does not rise to the level of an articulated, concrete plan." Thomas, 220 F.3d at 1139. Additionally, "neither the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the `case or controversy' requirement." Id.; see also Stoianoff v. State of Montana, 695 F.2d 1214, 1223 (9th Cir. 1983) ("The mere existence of a statute, which may or may not ever be applied to plaintiff's, is not sufficient to create a case or controversy within the meaning of Article III.").

### a. Plaintiff Fails To Allege A Concrete Plan To Violate Section 25850

The first element of the injury-infact analysis for preenforcement challenges is whether the plaintiff has articulated a "concrete plan" to violate the contested statute. Thomas, 220 F.3d at 1139. Even liberally construed, the Complaint fails to allege that Plaintiff has a concrete plan to violate section 25850. The Complaint merely alleges that Plaintiff "would openly carry a loaded and functional handgun in public for the purpose of self-defense" but for his fear of arrest and prosecution. (Complaint at 6, ¶ 15).[4] The mere assertion of a desire to engage in a prohibited activity, particularly when the "acts necessary to make plaintiff's' injury — prosecution under the challenged statute — materialize are almost entirely within plaintiff's' own control" is too indefinite to constitute a "concrete plan." San Diego Cnty. Gun Rights Comm., 98 F.3d at 1127.

Plaintiff is not required to violate section 25850 and subject himself to prosecution to establish an injury-infact, but must articulate a concrete plan in sufficient detail to convey the timing and circumstances of the anticipated action. See Babbitt, 442 U.S. at 298, 99 S.Ct. 2301; Thomas, 220 F.3d at 1139. In Thomas, landlords claimed that their pro-marriage religious beliefs prevented them from renting housing to unmarried couples and would therefore compel **[859 F.Supp.2d 1129]** them to violate a law banning housing discrimination on the basis of marital status. The Ninth Circuit found that the landlords' general "intent" to violate the law "on some uncertain day in the future," coupled with their inability even to specify "when, to whom, where, or under what circumstances" they had refused to rent to unmarried couples in the past, "does not rise to the level of an articulated, concrete plan." Id. at 1139-40. Similarly, a complaint challenging federal drug laws on the ground that they infringed on a Native American church's use of cannabis, but that failed to "allege exactly how, where, in what quantities, and under what circumstances Plaintiff's intend[ed] to consume cannabis" and to articulate how the church planned to acquire, cultivate and distribute the drug, did not "describe a concrete plan to violate a federal drug law." Oklevueha Native American Church of Hawai'i,

Inc. v. Holder, 719 F.Supp.2d 1217, 1222 (D.Hawai'i 2010). Plaintiff's vague assertion that he "would" openly carry a firearm does not provide any of the specificity required to identify a concrete plan to violate section 25850.

b. Plaintiff Fails To Allege That Prosecuting Authorities Have Communicated An Intent To Prosecute Him

The second element of the injuryin-fact analysis for preenforcement challenges is whether prosecuting authorities "have communicated a specific warning or threat to initiate proceedings" against the plaintiff should he violate the contested statute. Thomas, 220 F.3d at 1139 The mere allegation of a fear of prosecution that "amounts to no more than a `generalized grievance shared in substantially equal measure by ... a large class of citizens'" who may also desire to violate the challenged statute "does not warrant the exercise of jurisdiction." National Rifle Assoc. of America v. Magaw, 132 F.3d 272, 294 (6th Cir.1997) (quoting Warth, 422 U.S. at 499, 95 S.Ct. 2197); see also Seegars v. Gonzales, 396 F.3d 1248, 1255 (D.C.Cir.2005) (challenge to firearm regulatory statutes failed to show "a threat of prosecution reaching the level of imminence" required to establish a preenforcement injury where plaintiff's did not allege any specific prior threats by authorities and "nothing ... indicates any special priority placed upon preventing these parties from engaging in specified conduct") (internal quotation marks omitted; emphasis in original). However, a plaintiff may establish a "real and immediate" threat of an injury where, for example, the plaintiff has been previously charged with violating the challenged statute, see American-Arab Anti-Discrimination Committee v. Thornburgh, 970 F.2d 501, 508 (9th Cir.1992), or has received a specific warning of intent to prosecute. See Ripplinger v. Collins, 868 F.2d 1043, 1047 (9th Cir.1989).

Plaintiff does not allege that he has been previously charged with violating section 25850 or has received any specific warning, directed to him, that he will be

prosecuted if he openly carries a loaded firearm in public. His fear of prosecution, based on his "understanding" of California law, is no different than the "generalized grievance" of any gun owner who wishes to openly carry a handgun and is insufficient to establish a particularized, imminent preenforcement threat of prosecution. (See Complaint at 6, ¶ 15); Warth, 422 U.S. at 499, 95 S.Ct. 2197; see also San Diego Cnty. Gun Rights Comm., 98 F.3d at 1128 ("[A] possibility of ... eventual prosecution... is clearly insufficient to establish a `case' or `controversy.'").

### c. The Attorney General's Concession That Violations of Section 25850 Are Prosecuted Is Not Dispositive

The third element of the injury-in-fact analysis for preenforcement challenges examines the "history of past prosecution or enforcement under the challenged statute." **[859 F.Supp.2d 1130]** Thomas, 220 F.3d at 1139. An absence of past prosecutions "undercuts [plaintiffs'] argument that they face a genuine threat of prosecution." San Diego Cnty. Gun Rights Comm., 98 F.3d at 1128. Here, the Attorney General concedes that "statewide, law enforcement authorities have appropriately enforced Section 25850...." (Harris MTD at 11). While this factor weighs in favor of finding a preenforcement injury-in-fact, it is not dispositive. See, e.g., Seegars, 396 F.3d at 1255 (government's prior admission that it prosecutes all gun law violators "under normal prosecutorial standards" is insufficient to establish an imminent preenforcement threat of prosecution where plaintiffs alleged no prior threats of prosecution "against them"). Consequently, because Plaintiff has failed to allege a concrete plan to violate section 25850 or any specific communication directed to him threatening to enforce the statute, he has stated only a "generalized grievance" that does not constitute a preenforcement injury-in-fact. Consequently, Plaintiff's jurisdictional allegations fail to establish standing to bring these preenforcement claims.

2. Causation

Even though Plaintiff has failed to allege an injury-in-fact, and therefore lacks standing on that ground alone, the Court will address the other factors of the standing analysis raised by Defendants to provide guidance to the parties. The second factor a court will consider is whether "the injury is fairly traceable to the challenged action of the defendant." Maya, 658 F.3d at 1067. "To survive a motion to dismiss for lack of constitutional standing, plaintiffs must establish a `line of causation' between defendants' action and their alleged harm that is more than `attenuated.' A causal chain does not fail simply because it has several `links,' provided those links are `not hypothetical or tenuous' and remain `plausible.'" Id. at 1070 (internal citations and alterations omitted). However, "if it appears that plaintiff's alleged injuries are the result of conduct of a third person not a party-defendant, or the result of other circumstances not within the control of the defendant, there can be no finding that a sufficient causal nexus exists between the plaintiff's alleged injuries and the defendant's challenged conduct." NAACP v. State of California, 511 F.Supp. 1244, 1261 (E.D.Cal.1981).

### a. Attorney General Harris

Harris argues that Plaintiff "draws only a tenuous connection between himself and the Attorney General" based on her general law enforcement powers, a connection which she claims is insufficient to "satisfy the requirement that enforcement be threatened, so as to establish standing and an Ex Parte Young exception to the Eleventh Amendment."[5] (Harris Reply at 5). The California Attorney General is the "head of the Department of Justice" and "has charge, as attorney, of all legal matters in which the state is interested." Cal. Gov't Code §§ 12510 & 12511. The Attorney General has particularly **[859 F.Supp.2d 1131]** broad responsibility and expansive powers in the enforcement of criminal law:

The Attorney General has direct supervision over the district attorneys of the several counties of the State. When he deems it advisable or necessary in the public interest, or when directed to do so by the Governor, he shall assist any district attorney in the

discharge of his duties, and may, where he deems it necessary, take full charge of any investigation or prosecution of violations of law of which the superior court has jurisdiction. In this respect he has all the powers of a district attorney, including the power to issue or cause to be issued subpoenas or other process.

Cal. Gov't Code § 12550; see also Pitts v. County of Kern, 17 Cal.4th 340, 357, 70 Cal.Rptr.2d 823, 949 P.2d 920 (1998) (California Constitution, Art. V, sec. 13, "confers broad discretion upon the Attorney General to determine when to step in and prosecute a criminal case") (internal quotation marks omitted).

The Ninth Circuit has found that where a state Attorney General may assume the role of County Prosecutor, the Attorney General has a sufficient connection to the enforcement of the state's criminal laws to be a proper defendant in suits challenging their constitutionality:

State attorneys general are not invariably proper defendants in challenges to state criminal laws. Where an attorney general cannot direct, in a binding fashion, the prosecutorial activities of the officers who actually enforce the law or bring his own prosecution, he may not be a proper defendant.... However, and determinatively here ... the [Idaho] attorney general may in effect deputize himself (or be deputized by the governor) to stand in the role of a county prosecutor, and in that role exercise the same power to enforce the statute the prosecutor would have. That power demonstrates the requisite causal connection for standing purposes. An injunction against the attorney general could redress plaintiffs' alleged injuries....

Planned Parenthood of Idaho v. Wasden, 376 F.3d 908, 919-20 (9th Cir.2004). Consequently, because the California Attorney General may stand in for a county prosecutor and "take full charge" of any prosecution, the connection between the Attorney General and Plaintiff's alleged injuries is sufficient to satisfy the second prong of the standing analysis.

### b. Governor Brown

Brown claims that he "does not have a role in enforcing section 25850" and that the Governor's general duty to enforce state law is an insufficient connection to Plaintiff's alleged injuries to confer standing. (Brown

MTD at 8); see also Cal. Const., Art. V, sec. 1 ("The Governor shall see that the law is faithfully executed."). It is well established that "a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." Snoeck v. Brussa, 153 F.3d 984, 986 (9th Cir.1998); see also Los Angeles Branch NAACP v. Los Angeles Unified School Dist., 714 F.2d 946, 953 (9th Cir.1983) (governor's "general duty to enforce California law ... does not establish the requisite connection between him and the unconstitutional acts" alleged in suit claiming de jure segregation of city school system); Shell Oil Co. v. Noel, 608 F.2d 208, 211 (1st Cir.1979) ("The mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute."). Additionally, "[w]here the enforcement of a statute is the responsibility of parties other than the governor ... the governor's **[859 F.Supp.2d 1132]** general executive power [to enforce laws] is insufficient to confer jurisdiction."). Women's Emergency Network v. Bush, 323 F.3d 937, 949-50 (11th Cir.2003).

However, "no ... special charge need be found directly in the challenged statute to meet the requisite `some connection' so long as there is sufficient indicia of the defendant's enforcement powers found elsewhere in the laws of the state." Okpalobi v. Foster, 244 F.3d 405, 419 (5th Cir. 2001). The Governor's connection to a plaintiff's injury may be sufficiently direct based on other duties the law places on him related to the challenged statute. See, e.g., Los Angeles Cnty. Bar Ass'n v. Eu, 979 F.2d 697, 704 (9th Cir.1992) (governor proper party in suit challenging statute limiting the number of judges the governor could appoint to any county due to his "specific connection to the challenged statute"); Artichoke Joe's v. Norton, 216 F.Supp.2d 1084, 1110-11 (E.D.Cal.2002) (governor proper party in suit challenging statute prohibiting certain gaming machines because the governor had a specific duty under state law, "not based on any general duty to enforce state law," to negotiate and approve gaming compacts with tribes),

affd, 353 F.3d 712 (2003).

Here, Plaintiff is suing Brown in his official capacity because "[t]he Governor has the supreme executive power in the State and is responsible for the faithful execution of the laws of the State of California." (Complaint at 3). This generalized enforcement power, however, is insufficient to establish the requisite connection between Brown and Plaintiff's alleged injury. See Young v. Hawaii, 548 F.Supp.2d 1151, 1164 (D.Hawai'i 2008) (suit challenging laws prohibiting the carrying or use of firearms in certain circumstances failed to establish "required nexus" between the governor and plaintiff's injury where complaint relied solely on governor's "general oversight of State laws"). Nor does the fact that Brown signed into law a bill that prohibits openly carrying an unloaded handgun in public, as Plaintiff contends in his Opposition, establish the requisite connection. (Brown Opp. at 4); see also Cal. Penal Code § 26350 (former Assembly Bill 144). A governor is entitled to absolute immunity for the act of signing a bill into law. See Torres-Rivera v. Calderon-Serra, 412 F.3d 205, 213 (1st Cir.2005) ("[A] governor who signs into law or vetoes legislation passed by the legislature is also entitled to absolute immunity for that act."); Women's Emergency Network, 323 F.3d at 950 ("Under the doctrine of absolute legislative immunity, a governor cannot be sued for signing a bill into law.") (citing Supreme Ct. of Va. v. Consumers Union of United States, Inc., 446 U.S. 719, 731-34, 100 S.Ct. 1967, 1974-76, 64 L.Ed.2d 641 (1980)).

Consequently, because Plaintiff's sole basis for suing Brown is based on the Governor's general enforcement powers, Plaintiff has failed to show that his injury is "fairly traceable" to the Governor. See, e.g., Nat'l Audubon Soc'y, Inc. v. Davis, 307 F.3d 835, 847 (9th Cir.2002) (California governor dismissed from challenge to law banning use of certain traps and poisons due to lack of enforcement ability); Confederated Tribes & Bands of Yakama Indian Nation v. Locke, 176 F.3d 467, 469-70 (9th Cir.1999) (Washington governor improper defendant in challenge to state lottery because governor

had no involvement with operation of lottery). Plaintiff's claims against Governor Brown therefore fail to satisfy the second prong of the standing analysis.

## c. Redondo Beach Defendants

Plaintiff has failed to allege facts establishing that the RBD have a sufficient connection to his alleged injury to establish jurisdiction. The Complaint makes four specific allegations concerning the **[859 F.Supp.2d 1133]** RBD. In Paragraph Seven, Plaintiff identifies the City of Redondo Beach as a "municipal division of the State of California" that is responsible for setting the policies and procedures of its Police Department. (Complaint at 3-4). In Paragraphs Eight and Nine, Plaintiff identifies the City of Redondo Beach Police Department as a police department and Police Chief Joseph Leonardi as the person with "final departmental authority in all matters of policy, operation and discipline." (Id. at 4). The only other specific reference to the RBD is in Paragraph Forty-Eight, in which Plaintiff claims that the Redondo Beach Municipal Code "imposes a fine for illegally hunting or discharging a bullet `... in, over, across, along, or upon any public street, sidewalk, lane, alley, or public place in the City.'" (Id. at 15) (citing Redondo Beach Municipal Code §§ 4-25.01, 1-2.03).[6] Nowhere in the Complaint does Plaintiff allege that the RBD actually enforce section 25850 or that the City has a policy that improperly applies or exceeds the state statute's provisions.

Plaintiff's injury, as currently alleged, is not traceable to the RBD. Section 25850 is a state law, not a municipal ordinance. Indeed, the California Legislature has "chosen to preempt `discrete areas of gun regulation,'" including `public handgun possession." Fiscal v. City and County of San Francisco, 158 Cal.App.4th 895, 905, 909, 70 Cal.Rptr.3d 324 (2008). Under California law, "where the Legislature has manifested an intention, expressly or by implication, wholly to occupy the field ... municipal power to regulate in that area is lost." Id. at 904, 70 Cal.Rptr.3d 324 (alterations and internal quotation marks omitted). Section 4-25.01, which Plaintiff

erroneously cites as a gun control ordinance, is in fact in the chapter of the Municipal Code entitled "Ball Games and Hunting" and does not encroach on the field occupied by section 25850. See http://www.qcode.us/codes/ redondobeach/. The ordinance regulates where certain games may be played in the City and prohibits hunting in public places. Id. at § 4.25-01. It says nothing about openly carrying a loaded firearm in public for self-defense and could not because that area of gun regulation has been pre-empted by the state.

At most, Plaintiff's claim against the RBD appears to be based on the fact that these defendants enforce state law, including section 25850. (See, e.g., RBD Opp. at 5) ("As Redondo Beach Defendants are well aware, it has been the `official policy or custom' of the Defendants to enforce PC 12031(e) since at least August 7, 2010."). However, "mere enforcement of a state statute is not a sufficient basis for imposing § 1983 municipal liability." Wong v. City & County of Honolulu, 333 F.Supp.2d 942, 951 (D.Hawai'i 2004); see also Surplus Store and Exchange, Inc. v. City of Delphi, 928 F.2d 788, 791 n. 4 (7th Cir.1991) (refusing to construe state law as a municipal policy in section 1983 claim on the ground that doing so "would allow municipalities to be nothing more than convenient receptacles of liability for violations caused entirely by state actors-here, **[859 F.Supp.2d 1134]** the [state] legislature"). Consequently, Plaintiff's claims do not establish that the RBD have any connection to his alleged injury and fail to satisfy the second prong of the standing analysis.

3. Likelihood That The Injury Will Be Redressed By A Favorable Decision

The third factor of the standing analysis is whether "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Maya, 658 F.3d at 1067. If Plaintiff is able to amend his Complaint to allege an injuryin-fact, it is likely that a favorable decision against the Attorney General would redress Plaintiff's injury due to her direct enforcement powers

over California criminal law. Planned Parenthood of Idaho, 376 F.3d at 919-20. However, as discussed above, because the Governor is not directly responsible for enforcing section 25850, a favorable decision against the Governor is not likely to redress Plaintiff's injury. Furthermore, Plaintiff's injury, as currently alleged, would not be redressed by a favorable decision against the RBD. Even if the Court could construe enforcement of state law by the RBD as a municipal "policy," enjoining the RBD from implementing that "policy" would not provide any real relief if the provisions of section 25850 remain intact. It is possible, however, that Plaintiff may be able to amend his claims against the RBD to identify a municipal policy that exceeds or unconstitutionally applies the provisions of section 25850. If Plaintiff is able to articulate facts establishing that the RBD do not simply enforce state law, but do so in a particular manner that violates the Constitution, Plaintiff may state a claim.

In sum, Plaintiff has failed to establish a particularized preenforcement injury-infact and therefore lacks standing to bring his claims as currently alleged against any of the named Defendants. However, assuming that Plaintiff will be able to amend his Complaint to allege an injury-in-fact, the Attorney General would appear to be a proper defendant. Therefore, it is recommended that Plaintiff's claims against the Attorney General be DISMISSED, but with leave to amend. Even assuming that Plaintiff can allege an injury-in-fact, however, the Governor does not have a sufficiently direct connection to the enforcement of section 25850 such that a favorable decision against him would be likely to redress Plaintiff's injury. Therefore, because amendment of the Complaint would be futile as to the Governor, it is recommended that Plaintiff's claims against the Governor be DISMISSED without leave to amend. Finally, if Plaintiff is able to allege facts establishing that the RBD do not merely enforce state law but apply section 25850 in a particular manner that violates the Constitution, the RBD would appear to have a sufficient connection to Plaintiff's injury and a favorable decision against them would be likely to redress Plaintiff's injury.

Therefore, it is recommended that Plaintiff's claims against the RBD be DISMISSED, but with leave to amend.[7]

B. Plaintiff's Claims Are Not Ripe For Adjudication

Ripeness is question of timing intended to "prevent the courts, through **[859 F.Supp.2d 1135]** the avoidance of premature adjudication, from entangling themselves in abstract agreements." Thomas, 220 F.3d at 1138 (quoting Abbott Laboratories v. Gardner, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). "[I]n many cases, ripeness coincides squarely with standing's injury-in-fact prong.... [I]n measuring whether the litigant has asserted an injury that is real and concrete rather than speculative and hypothetical, the ripeness inquiry merges almost completely with standing." Thomas, 220 F.3d at 1138-39. In a preenforcement challenge, the ripeness inquiry tracks the analysis articulated in Thomas for determining whether a "genuine threat of imminent prosecution" exists. Stormans, Inc. v. Selecky, 586 F.3d 1109, 1122 (9th Cir.2009). Because Plaintiff has failed to establish a preenforcement injury-in-fact, his claims, as currently alleged, are not ripe for adjudication.

Furthermore, this case is not ripe for review for prudential reasons as well. To evaluate the "prudential component of ripeness," a court considers "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Wolfson v. Brammer, 616 F.3d 1045, 1060 (9th Cir. 2010) (internal quotation marks omitted). A claim is "fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." Id. (internal quotation marks omitted). Although most of Plaintiff's claims are facial challenges, Claims Three and Four purport to challenge section 25850 "as applied." However, the Complaint is devoid of factual allegations describing how the law is applied or explaining what Plaintiff's specific objections are to the manner in which the law is applied. "[A] party bringing a preenforcement challenge must nonetheless present a concrete factual situation... to delineate the boundaries

of what conduct the government may or may not regulate without running afoul of the Constitution." Alaska Right to Life Political Action Comm. v. Feldman, 504 F.3d 840, 849 (9th Cir.2007) (internal quotation marks omitted). Plaintiff has failed to articulate such a "concrete factual situation" and instead presents only a generalized grievance that would impermissibly require the Court to "decide constitutional questions in a vacuum." Id. Consequently, his claims, as currently alleged, are not ripe for review.

C. The Eleventh Amendment Bars Suit Against The Governor

Harris and Brown contend that the Eleventh Amendment bars suit against them.[8] (Harris MTD at 10-11; Brown MTD 6-8). The Eleventh Amendment generally "prohibit[s] federal courts from hearing suits brought by private citizens against state governments without the state's consent." Sofamor Danek Group, Inc. v. Brown, 124 F.3d 1179, 1183 (9th Cir.1997). Pursuant to Ex Parte Young, however, an exception is made for suits against state officers for prospective declaratory or injunctive relief to enjoin official actions that violate federal law. Id. (citing Ex Parte Young, 209 U.S. at 155-56, 28 S.Ct. 441). This exception is "predicated on the notion that a state cannot authorize one of its agents to violate the Constitution and laws of the United States," so a "state officer acting in violation of federal law is considered stripped of his official or representative character" **[859 F.Supp.2d 1136]** and is "not shielded from suit by the state's sovereign immunity." Sofamor Danek Group, Inc., 124 F.3d at 1183 (internal quotation marks omitted). The "obvious fiction" of Ex Parte Young, however, is subject to several constraints. Coeur d'Alene Tribe of Idaho, 521 U.S. at 270, 117 S.Ct. 2028. Among those constraints is the requirement that "the state official sued `must have some connection with the enforcement of the act' to avoid making that official a mere representative of the state." Culinary Workers Union, Local 226 v. Del Papa, 200 F.3d 614, 619 (9th Cir.1999) (quoting Ex Parte Young, 209 U.S. at 157, 28 S.Ct. 441).

While state law determines "whether and under what circumstances a particular defendant has any connection with the enforcement of the law of that state ... it is a question of federal jurisdictional law whether the connection is sufficiently intimate to meet the requirements of Ex Parte Young." Shell Oil Company, 608 F.2d at 211. As discussed above, the Ninth Circuit has found that where, as in California, a state attorney general may "stand in the role of a county prosecutor, and in that role exercise the same power to enforce the statute the prosecutor would have," a sufficient connection is established for the Ex Parte Young exception to apply. Planned Parenthood of Idaho, 376 F.3d at 919-20. Consequently, the Eleventh Amendment does not prohibit suit against Harris. However, where, as here, the Governor does not have "the requisite enforcement connection" to a challenged state law, the Eleventh Amendment prohibits suit against him. Nat'l Audubon Soc'y, Inc., 307 F.3d at 847. Consequently, Plaintiff's claims against Brown are barred by the Eleventh Amendment.

D. Plaintiff Fails To State A Claim Against The Redondo Beach Defendants Under Rule 12(b)(6)

In addition to failing to establish jurisdiction over the Redondo Beach Defendants, Plaintiff has also failed to state a claim against the RBD under Rule 12(b)(6). When an individual sues a local government for violation of his constitutional rights, the municipality is liable only if the individual can establish that the local government "had a deliberate policy, custom, or practice that was the `moving force' behind the constitutional violation he suffered." Galen v. County of Los Angeles, 477 F.3d 652, 667 (9th Cir.2007) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694-95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). The Complaint does not identify any specific City policy, as required by Monell, that caused Plaintiff's alleged injuries. Plaintiff's argument that the RBD have a "policy" of enforcing state law is an insufficient ground for municipal liability under section 1983. (See RBD Opp. at 5); Wong, 333 F.Supp.2d at 951. However, it is possible that Plaintiff

could amend his complaint to state such a claim.

In addition, even if Plaintiff could somehow establish jurisdiction over the City of Redondo Beach and otherwise state a claim against the City, the City of Redondo Beach Police Department would still be an improper defendant. Section 1983 provides a cause of action against any "person" who, under color of law, deprives an individual of federal constitutional or statutory rights. 42 U.S.C. § 1983. The term "person" includes local governmental entities, Cortez v. County of Los Angeles, 294 F.3d 1186, 1188 (9th Cir.2002), but does not encompass municipal or county departments. See United States v. Kama, 394 F.3d 1236, 1239 (9th Cir.2005) (Ferguson, J., concurring) (municipal police departments and bureaus are generally not considered **[859 F.Supp.2d 1137]** "persons" within the meaning of section 1983); Vance v. County of Santa Clara, 928 F.Supp. 993, 995-96 (N.D.Cal. 1996) (dismissing sua sponte Santa Clara Department of Corrections as improper defendant); Garcia v. City of Merced, 637 F.Supp.2d 731, 760 (E.D.Cal.2008) (dismissing Sheriff's Department as improper defendant). Although Plaintiff does not specifically allege what he believes the City of Redondo Beach Police Department, as a unit, did to violate his constitutional rights, it is clear that as a department of the City of Redondo Beach, the Police Department is not a proper defendant in Plaintiff's section 1983 action.

Finally, the Complaint is completely devoid of any allegations at all involving actions taken by Police Chief Leonardi. The Complaint merely observes that Leonardi is the Chief of Police for the City of Redondo Beach and is "the final departmental authority in all matters of policy, operation and discipline." (Complaint at 4). To demonstrate a civil rights violation, a plaintiff must show that the defendant's conduct caused a deprivation of the plaintiff's constitutional or statutory rights. See 42 U.S.C. § 1983; Starr v. Baca, 652 F.3d 1202, 1205-06 (9th Cir. 2011). Where the defendant holds a supervisory position, the plaintiff must still show the defendant's "personal participation in the alleged rights

deprivation" because there is "no respondeat superior liability under section 1983." Jones v. Williams, 297 F.3d 930, 934 (9th Cir.2002). A supervisor's objectionable participation may properly include his "own culpable action or inaction in the training, supervision, or control of his subordinates, his acquiescence in the constitutional deprivations of which the complaint is made, or conduct that showed a reckless or callous indifference to the rights of others." Starr, 652 F.3d at 1205-06 (internal quotation marks omitted).

Plaintiff alleges that Leonardi is responsible for setting and implementing the City of Redondo Beach Police Department's policies, but does not indicate how his actions or omissions caused Plaintiff harm. Furthermore, Plaintiff's claim against Leonardi appears to be based solely on the fact that Leonardi and the Police Department have a "policy" of enforcing state law. This fails to state a claim because a municipality's enforcement of a state law is not a ground for liability under section 1983. Wong, 333 F.Supp.2d at 951.

Consequently, it is recommended that the claims against the RBD be dismissed under Rule 12(b)(6) for the additional reason that they fail to state a claim. Because it is at least theoretically possible that Plaintiff may be able to amend his claims against the City of Redondo Beach to identify an objectionable municipal policy and against Police Chief Leonardi to show his personal participation in causing Plaintiff's injury, it is recommended that the claims against these two Defendants be dismissed with leave to amend. However, because municipal departments are improper defendants in section 1983 suits, amendment of Plaintiff's claims against the City of Redondo Beach Police Department would be futile. Therefore, it is recommended that Plaintiff's claims against the Police Department be dismissed without leave to amend.

E. Plaintiff's Seventh Claim For Relief Fails To State A Federal Claim

In his Seventh Claim for Relief, Plaintiff contends that section 25850 violates the California Constitution, which provides that "[a]ll people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining safety, happiness, and **[859 F.Supp.2d 1138]** privacy." (Complaint at 23); see also Cal. Const. Art. I, § I. However, it is wellsettled that the "Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest...." Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 101-02, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Consequently, pursuant to the Eleventh Amendment, a federal court may not grant relief "in a suit against state officials on the basis of state law." Id. at 106, 104 S.Ct. 900; see also Han v. United States Dept. of Justice, 45 F.3d 333, 339 (9th Cir.1995) ("We are barred by the Eleventh Amendment from deciding claims against state officials based solely on state law."). Nor may a federal court exercise pendent jurisdiction over such a claim. Pennhurst, 465 U.S. at 89, 120-21, 104 S.Ct. 900. Consequently, it is recommended that Plaintiff's Seventh Claim for relief be dismissed without leave to amend.

# VI.

# RECOMMENDATION

Consistent with the foregoing, IT IS RECOMMENDED that the District Court issue an Order: (1) accepting and adopting this Report and Recommendation; (2) dismissing this action WITH LEAVE TO AMEND as to Defendant Harris for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1); (3) dismissing this action WITH PREJUDICE as to Defendant Brown for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and the Eleventh Amendment; (4) dismissing this action WITH LEAVE TO AMEND as to Defendants City of Redondo Beach and Police Chief Leonardi for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6); (5) dismissing this action WITH PREJUDICE as to Defendant City of

Redondo Beach Police Department for lack of subject
matter jurisdiction pursuant to Rule 12(b)(1) and for
failure to state a claim pursuant to Rule 12(b)(6); and (6)
dismissing Plaintiff's Seventh Claim for Relief alleging a
violation of state constitutional law WITH PREJUDICE
because it is barred by the Eleventh Amendment.

\* \* \*

1. The Complaint generally cites to Penal Code section 12031, the prior statute codifying California's ban on carrying a loaded weapon in public. However, "[e]ffective January 1, 2012, section 12031 was repealed and section 25850, which similarly prohibits carrying a loaded firearm in public, became operative." People v. Elliott, 53 Cal.4th 535, 587 n. 7, 137 Cal.Rptr.3d 59, 269 P.3d 494 (2012). Plaintiff acknowledges that former subsection 12031(a)(1), the prohibition on carrying a loaded firearm in public, is now codified in section 25850(a), and that former subsection 12031(e), the authorization for officers to conduct a warrantless search of a loaded weapon, is now codified in section 25850(b). (Complaint at 24). For ease of reference, the Court will cite to section 25850.

2. Plaintiff filed two Requests for Judicial Notice with his Oppositions to the Harris and RBD Motions. (See Dkt. Nos. 17, 24). Plaintiff also filed a "Notice of Lodging of Computer Disc Containing Videos" in support of his Opposition to the RBD Motion. (Dkt. No. 20). The RBD filed Objections to the Requests for Judicial Notice, in which Harris joined, and to the Notice of Lodging. (See Dkt. Nos. 25-26; Harris Reply at 6 n. 1). "When ruling on a motion to dismiss, [a court] may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Colony Cove Properties, LLC v. City Of Carson, 640 F.3d 948, 955 (9th Cir.2011) (internal quotation marks omitted). "[N]otice may be taken where the fact is `not subject to reasonable dispute,' either because it is `generally known within the territorial jurisdiction,' or is `capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" Castillo-Villagra v. I.N.S., 972 F.2d 1017, 1026 (9th Cir.1992) (quoting Fed. R.Evid. 201(b)). The Court GRANTS Plaintiff's First Request for Judicial Notice with respect to attached Exhibits A and B and Plaintiff's Second Request for Judicial Notice, all of which involve court opinions and dockets, to the extent that they are compatible with Federal Rule of Evidence 201 and do not require the acceptance of facts "subject to reasonable dispute." The Court DENIES Plaintiff's First Request for Judicial Notice with respect to the news articles attached as Exhibits C, D and E and similarly declines to take notice of the video clips submitted in the Notice of Lodging. The Court notes, however, that even if it were to take notice of these materials, the analysis of Plaintiff's claims and the Court's recommendations would remain the same.

3. Article III standing jurisprudence distinguishes between preenforcement challenges to statutes regulating speech and statutes regulating conduct. The Supreme Court has recognized that chilling protected speech may by itself constitute a cognizable Article III injury because "self-censorship" of speech is "a harm that can be realized even without an actual prosecution." Virginia v. Am. Booksellers Ass'n, 484 U.S. 383, 393, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988). The Ninth Circuit has found, however, that where the constitutional challenge involves a statute regulating conduct, not speech, mere allegations of selfcensorship are insufficient to establish an injury and "the standing requirements for preenforcement challenges set out in Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134 (9th Cir.2000), apply." Humanitarian Law Project v. U.S. Treas. Dep't, 578 F.3d 1133, 1138 (9th Cir.2009); see also id. at 1143 ("[N]either self-censorship nor subjective chill is the functional equivalent of a well-founded fear of enforcement when the statute on its face does not regulate expressive activity.").

4. In a Declaration submitted with his Oppositions to the Harris and RBD Motions to Dismiss, Plaintiff similarly asserts that he "do[es] not openly carry a loaded handgun or long gun in non-sensitive public places because [he] would in all certainty be arrested, prosecuted, fined and imprisoned for doing so." (Decl. of Charles Nichols, Dkt. No. 21, at 4).

5. A state official's enforcement connection with a plaintiff's alleged injuries is a factor in both Article III standing and Eleventh Amendment sovereign immunity analyses. However, "[w]hile the Eleventh Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial power ... it is not coextensive with the limitations on judicial power in Article III." Calderon v. Ashmus, 523 U.S. 740, 745 n. 2, 118 S.Ct. 1694, 140 L.Ed.2d 970 (1998) (before reaching Eleventh Amendment issues, the court "must first address whether this action" satisfies the Article III "case or controversy" requirement); see also Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267, 117 S.Ct. 2028, 2033, 138 L.Ed.2d 438 (1997) (state may waive Eleventh Amendment immunity but not Article III case or controversy requirement).

6. Section 4-25.01 of the Redondo Beach Municipal Code reads: "Places to play ball and hunt restricted. It shall be unlawful for any person to play ball or any game of sport with a ball or football or to throw, cast, shoot, or discharge any stone, pellet, bullet, arrow, or other missile in, over, across, along, or upon any public street, sidewalk, lane, alley, or public place in the City. Persons may play ball or any game of sport with a ball or football in any area in any public park or playground designated or set apart for such purpose by the Council by resolution." See http://www. qcode.us/codes/redondobeach/. Section 1-2.03 provides that a violation of section 4-25.01 "shall constitute an infraction and not a misdemeanor." Id.

7. Specifically, it is recommended that Plaintiff's claims against the City of Redondo Beach and Police Chief Leonardi be dismissed with leave to amend. For the reasons stated in Part V.D. below, which do not involve standing, the City of Redondo Beach Police Department is an improper defendant in a section 1983 suit. Consequently, it is recommended that Plaintiff's claims against the City of Redondo Beach Police Department be dismissed without leave to amend.

8. The Eleventh Amendment does not prohibit suit against political subdivisions of states, such as counties and municipalities, and as such, does not apply to the claims against the Redondo Beach Defendants. See Alaska v. EEOC, 564 F.3d 1062, 1085-86 (9th Cir. 2009).