

| | |
|---|---|
| **XAVIER BECERRA**<br>*Attorney General* | State of California<br>**DEPARTMENT OF JUSTICE** |

300 SOUTH SPRING STREET, SUITE 1702<br>
LOS ANGELES, CA 90013-1230<br><br>
Main Telephone: (213) 269-6000<br>
Direct Telephone: (213) 269-6246<br>
Facsimile: (213) 897-5775<br>
E-Mail: Jonathan.Eisenberg@doj.ca.gov

May 25, 2018

Ms. Molly C. Dwyer, Clerk
U.S. Court of Appeals, Ninth Circuit
95 Seventh Street
San Francisco, CA 94103

    RE:   *Nichols v. Brown*
             U.S. Court of Appeals, Ninth Circuit, Case No. 14-55873

Dear Ms. Dwyer:

Under Federal Rule of Appellate Procedure 28(j), Defendant-Appellee Xavier Becerra notifies the Court of new legal authority that is significant to this case. On May 7, 2018, in the pertinent case styled *Flanagan v. Harris*, Case No. LA CV16-06164 JAK (ASx), the U.S. District Court, Central District of California, issued a written ruling on cross-motions for summary judgment (the "Ruling"). A copy of the Ruling is attached (and is also available through Westlaw, with citation 2018 WL 2138462). (Defendant-Appellant referenced the *Flanagan* case in footnote 6 of Appellees' Brief herein.)

The question that the *Flanagan* decision resolved is also presented in the *Nichols* appeal: whether the Second Amendment specifically protects the right of ordinary, law-abiding people to carry firearms openly—as opposed to concealed—for any lawful purposes in any non-sensitive places outside their homes, despite the lack of applicable statutory authorization. *See* Appellees' Br. 4. The *Flanagan* Court determined that enforcement of California's open-carry statutes neither severely burdens nor destroys the Second Amendment right, and therefore warrants intermediate scrutiny, not more stringent scrutiny. Ruling 7-8. That holding is consistent with Defendant-Appellee's argument in this case. *See* Appellees' Br. 34-37. The *Flanagan* Court also held that the challenged statutes survive intermediate scrutiny, because the statutes were enacted to advance the important governmental objectives of promoting public safety and reducing firearm violence, and the evidence adduced by the defense—including the reports and deposition testimony of two expert witnesses and the statutes' legislative history—showed a

May 25, 2018
Page 2

reasonable fit between the statutes and those objectives.  Ruling 8-12.  That conclusion also supports Defendant-Appellant's argument in this case.  *See* Appellees' Br. 37-43.

(The body of this letter is 268 words long.)

                          Sincerely,

                          */s/ Jonathan M. Eisenberg*
                          JONATHAN M. EISENBERG
                          Deputy Attorney General

          For      XAVIER BECERRA
                          Attorney General

JME:je

Enclosure

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-06164 JAK (ASx) | Date | May 7, 2018 |
| Title | Michelle Flanagan, et al. v. Kamala Harris, et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

| Proceedings: | (IN CHAMBERS) ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. 48) |
|---|---|
| | DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF (DKT. 45) |
| | EVERYTOWN FOR GUN SAFETY'S MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANTS (DKT. 54) |

**I.     Introduction**

Michelle Flanagan, Samuel Golden, Dominic Nardone, Jacob Perkio ("Individual Plaintiffs") and the California Rifle & Pistol Association ("CRPA") (collectively, "Plaintiffs") brought this action against then California Attorney General Kamala Harris, in her official capacity ("California"), and Los Angeles County Sherriff James McDonnell, in his official capacity ("LASD"). Compl., Dkt. 1. The Complaint challenges the California statutes regulating both the open and concealed carry of firearms in public, as well as the policy of the LASD for the issuance of permits for the concealed carry of firearms. It seeks declaratory and equitable relief under both the Second Amendment and the Equal Protection Clause of the Fourteenth Amendment of the Constitution. Dkt. 1.

In October 2016, California and LASD brought parallel motions to dismiss the Complaint ("California Motion to Dismiss" and "LASD Motion to Dismiss"). Dkts. 24, 27. The LASD Motion to Dismiss was granted and LASD was dismissed. The California Motion to Dismiss was granted in part and denied in part. It was granted as to the Second Amendment claims challenging California's concealed-carry statues, as well as to the Equal Protection claim. Those claims were dismissed. The California Motion to Dismiss was denied as to the Second Amendment claims challenging California's open-carry statutes. Dkt. 39.

On September 11, 2017, California filed a motion for summary judgment ("California Motion"). Dkt. 45. Plaintiff opposed the California Motion (Dkt. 57), and California replied. Dkt. 63. Plaintiffs also filed a motion for summary judgment ("Plaintiffs' Motion"). Dkt. 48. California opposed the Plaintiffs' Motion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-06164 JAK (ASx) | Date | May 7, 2018 |
|---|---|---|---|
| Title | Michelle Flanagan, et al. v. Kamala Harris, et al. | | |

(Dkt. 55), and Plaintiffs replied. Dkt. 65.[1] On September 18, 2017, Everytown for Gun Safety filed a motion for leave to file an amicus curiae brief in support of the California Motion ("Motion for Leave"). Dkt. 54. Plaintiffs did not oppose the Motion for Leave.

On November 6, 2017, a hearing on the motions was held and they were taken under submission. Dkt. 68. The Court instructed the parties to file supplemental briefs regarding the standard to be applied to the competing evidence submitted with respect to the fit between the challenged laws and the stated governmental interests. On November 13, 2017, the parties filed their respective supplemental briefs. Dkts. 74, 75.

For the reasons stated in this Order, the California Motion is **GRANTED** and Plaintiffs' Motion is **DENIED**. The Motion for Leave is **GRANTED**.

**II.      Factual and Procedural Background**

      A.      Plaintiffs

The Individual Plaintiffs are residents of Los Angeles County and members of the CRPA, which is an entity organized under Section 501(c)(4) of the Internal Revenue Code. Plaintiffs' Statement of Uncontroverted Facts ("Plaintiffs' SUF"), Dkt. 50 ¶¶ 1, 31; Compl., ¶¶ 13-20, 22. Each of the Individual Plaintiffs is at least 21 years old, and none is prohibited from owning firearms under the laws of the United States or California. Plaintiffs' SUF ¶¶ 2, 5.

Each of the Individual Plaintiffs separately applied to the LASD for a concealed carry permit. Each Individual Plaintiff asserted that his or her permit request was supported by "good cause" based on a need for self-defense. Plaintiffs' SUF, ¶¶ 16-17, 22, 25, 28. Each application was denied by the LASD for a lack of showing sufficient "good cause." *Id.* ¶¶ 18, 23, 26, 29; Compl., ¶¶ 15-19.

Each of the Individual Plaintiffs wishes to carry a firearm in public for self-defense, but all of them "are precluded from doing so because they are unable to obtain a license to carry a firearm and California law generally prohibits them from carrying a firearm in any manner openly or concealed, without such a license." Plaintiffs' SUF ¶ 37; Compl. ¶ 23.

Other members of the CRPA who reside in Los Angeles County applied for Carry Licenses to carry a firearm for self-defense. Their applications were denied by LASD. Plaintiffs' SUF ¶ 35. These members of the CRPA wish to obtain a Carry License "but refrain from applying and wasting their time and financial resources given that such application would be futile in light of Los Angeles County Sheriff James McDonnell's official 'good cause' policy." *Id.* ¶ 36; Compl. ¶ 63.

---

[1] Defendant has submitted evidentiary objections to the evidence proffered by Plaintiffs in support of their motion for summary judgment (Dkt. 60) and in opposition to the California Motion. Dkt. 66. Plaintiffs have also submitted evidentiary objections to the evidence proffered by California in support its motion for summary judgment. Dkt. 59. These objections are addressed in separate orders. Dkt. 78-80.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-06164 JAK (ASx) | Date | May 7, 2018 |
| Title | Michelle Flanagan, et al. v. Kamala Harris, et al. | | |

      B.      California Statutes that Apply to the Open Carry of Firearms

California statutes place substantial limitations on carrying firearms in public, but provide certain exceptions to those rules. In general, any loaded or unloaded firearm may not be carried in public within either an incorporated city or an unincorporated area in which discharging a firearm is prohibited. Cal. Penal Code §§ 17030, 25400, 25850, 26350, 26400.

The statutes provide exceptions that allow persons who work in certain occupations to carry loaded firearms in public. They apply to those who are peace officers, military personnel and private security officers. *Id.* §§ 25450, 25620, 25630, 25900, 26030, 26405. There are also exceptions for carrying firearms for certain specified purposes. These include: carrying a firearm in public for hunting where it is permitted; keeping a loaded firearm in a person's home or business; transporting unloaded handguns in the locked trunk of, or inside a locked container in a motor vehicle; and carrying a firearm in public when a person believes that any person or the property of any person is in immediate, grave danger, which can be addressed by the carrying of the weapon. *Id.* §§ 25605, 25610, 25640, 26035, 26045, 26389, 26405. None of the exceptions authorizes a person to carry a firearm in public, whether loaded or unloaded, unless the aforementioned statutory requirements are satisfied. *Id.* §§ 26361-26391.

      C.      Limitations on the Carry of Concealed Weapons

California law also generally prohibits any person from carrying a concealed firearm in any place outside his or her residence, place of business, or other private property. *Id.* §§ 25400, 25605. In order to do so, a person must apply for and obtain a Carry License. *Id.* § 26150. California authorizes the Sheriff of a County, or the Police Chief of a City, to issue a Carry License to residents of their jurisdictions. *Id.* To qualify for a Carry License, a resident must, among other things, establish "good cause" for the license as that term is defined by the local sheriff or police chief. *Id.* § 26150(a). A Sheriff in a county whose population is greater than 200,000 -- which includes Los Angeles County -- can issue a Carry License for a concealed firearm, but not for the open carry of one. *Id.* §§ 26150(b)(2), 26155(b)(2).

The Complaint alleges that, because California law generally prohibits the carrying of firearms in public in any manner, a Carry License is the only means by which any person may carry a firearm in public for use in self-defense. Compl. ¶ 55.

      D.      Requests for Judicial Notice

The parties seek judicial notice of various documents in conjunction with the cross motions for summary judgment. Pursuant to Fed. R. Evid. 201, a court may take judicial notice of facts that are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably be questioned." Fed. R. Evid. 201(b).

California seeks judicial notice of the following: (i) the final, chaptered version of California Assembly Bill No. 144 and its legislative history; (ii) the final, chaptered version of California Assembly Bill No. 1527 and its legislative history; (iii) a worksheet titled "County and State Population Estimates, January

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-06164 JAK (ASx) | | Date | May 7, 2018 |
|---|---|---|---|---|
| Title | Michelle Flanagan, et al. v. Kamala Harris, et al. | | | |

1, 2016 and 2017" from a spreadsheet published by the California Department of Finance, Demographic Research Unit and (iv) statutes regulating the carrying of firearms in public that have been enacted across the United States. California's Request for Judicial Notice ("California's RJN"), Dkt. 45-15. "Legislative history is properly a subject of judicial notice." *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012). District courts may also take judicial notice of "records and reports of administrative bodies," *id.* (quoting *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir.1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)), as well as "undisputed matters of public record." *Harris v. County of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012). Because the applicable standard has been met, and there has been no opposition to California's request for judicial notice, it is **GRANTED**. Fed. R. Evid. 201(c)(2).

Plaintiffs seek judicial notice of the following: (i) the population of Los Angeles County as reported by the U.S. Census Bureau; (ii) various provisions of the Los Angeles County Code; (iii) the LASD policy regarding the issuance of licenses for concealed weapons; (iv) California Assembly Bill No. 7 and (v) the signing statement by Governor Brown with respect to California Assembly Bill No. 7. Plaintiffs' Requests for Judicial Notice ("Plaintiffs' RJN"), Dkts. 49, 64. For the same reasons that judicial notice is proper as to the aforementioned legislative enactments, it is proper as to these legislative materials. Additionally, information on government agency websites is properly subject to judicial notice. *Molina v. Wash. Mut. Bank*, 2010 WL 431439, at *3 (S.D. Cal. Jan. 29, 2010). Because the applicable standards have been met, and there has been no opposition to Plaintiffs' requests for judicial notice, they are **GRANTED**. Fed. R. Evid. 201(c)(2).

**III.     Analysis**

        A.     Legal Standards

                1.     Summary Judgment

A motion for summary judgment will be granted where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations[,] . . . admissions, interrogatory answers, or other materials" show that there is "no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a), (c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden to show the basis for its motion and to identify those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 322. Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Where the nonmoving party will have the burden of proof on an issue, however, the movant need only demonstrate that there is an absence of evidence to support the claims of the nonmoving party. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth "specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex*, 477 U.S. at 324).

Only admissible evidence may be considered in connection with a motion for summary judgment. Fed. R. Civ. P. 56(c). However, in considering such a motion, a court is not to make any credibility determinations or weigh conflicting evidence. All inferences are to be drawn in the light most favorable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-06164 JAK (ASx) | | Date | May 7, 2018 |
|---|---|---|---|---|
| Title | Michelle Flanagan, et al. v. Kamala Harris, et al. | | | |

to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). However, conclusory, speculative testimony in declarations or other evidentiary materials is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

  2. <u>The Second Amendment</u>

The Second Amendment protects the "individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). *Heller* held that the complete prohibition on possessing loaded handguns within a residence precluded citizens from using guns "for the core lawful purpose of self-defense and [was] hence unconstitutional." *Id.* at 630. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010), held "that the Second Amendment right is fully applicable to the States." *McDonald* stated that the "central holding" of *Heller* was "that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." *Id.* at 780.

*Heller* also explained that "the right secured by the Second Amendment is not unlimited." 554 U.S. at 626. It is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* The Court listed examples of presumptively lawful regulatory measures that would not infringe Second Amendment rights, including "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27. The Court added that, "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues." *Id.* at 626.

The Ninth Circuit has "adopted a two-step inquiry in deciding Second Amendment cases: first, the court asks whether the challenged law burdens conduct protected by the Second Amendment; and if so, the court must then apply the appropriate level of scrutiny." *Silvester v. Harris*, 843 F.3d 816, 820-21 (9th Cir. 2016). This two-step analysis "flows from *Heller*'s identification of the Amendment's core purpose of self defense in the home and *Heller*'s charge to the lower courts to evaluate the appropriate level of review, as well as the scope of the Amendment's protections." *Id.* at 821; *see also United States v. Chovan*, 735 F.3d 1127, 1139 (9th Cir. 2013) ("We believe this two-step inquiry reflects the Supreme Court's holding in *Heller* that, while the Second Amendment protects an individual right to keep and bear arms, the scope of that right is not unlimited.").

Under the first step of this inquiry, courts ask "if the challenged law burdens conduct protected by the Second Amendment, based on a 'historical understanding of the scope of that right.'" *Silvester*, 843 F.3d at 821 (quoting *Heller*, 554 U.S. at 625). The Ninth Circuit observed that

> whether the challenged law falls outside the scope of the Amendment involves examining whether there is persuasive historical evidence showing that the regulation does not impinge on the Second Amendment right as it was historically understood. Laws restricting conduct that can be traced to the founding era and are historically understood to fall outside of the Second Amendment's scope may be upheld without further analysis. A challenged law may also fall within the limited category of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-06164 JAK (ASx) | Date | May 7, 2018 |
|---|---|---|---|
| Title | Michelle Flanagan, et al. v. Kamala Harris, et al. | | |

presumptively lawful regulatory measures identified in *Heller*.

*Id.* (internal citations and quotation marks omitted).

In the second step of the inquiry, courts must determine the appropriate level of scrutiny. The Ninth Circuit has offered the following guidance on making this determination:

> [i]n ascertaining the proper level of scrutiny, the court must consider: (1) how close the challenged law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on that right. The result is a sliding scale. A law that imposes such a severe restriction on the fundamental right of self defense of the home that it amounts to a destruction of the Second Amendment right is unconstitutional under any level of scrutiny. That is what was involved in *Heller*. A law that implicates the core of the Second Amendment right and severely burdens that right warrants strict scrutiny. Otherwise, intermediate scrutiny is appropriate.

*Id.* (internal citations omitted).

The "core of the Second Amendment is 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'" *Chovan*, 735 F.3d at 1138 (quoting *Heller*, 554 U.S. at 635); *see, e.g., id.* (regulation that prohibits persons convicted of misdemeanor domestic violence from possessing firearms for life "does not implicate this core Second Amendment right because it regulates firearm possession for individuals with criminal convictions").

Certain factors are appropriate to consider when assessing the severity of the burden, if any, that a regulation imposes on rights guaranteed by the Second Amendment. "[L]aws which regulate only the '*manner* in which persons may exercise their Second Amendment rights' are less burdensome than those which bar firearm possession completely." *Jackson v. City and Cnty. of S.F.*, 746 F.3d 953, 961 (9th Cir. 2014) (emphasis in original) (quoting *Chovan*, 735 F.3d at 1138); *see also Chovan*, 735 F.3d at 1138 (burden imposed by regulation "substantial" because it "amounts to a 'total prohibition' on firearm possession for a class of individuals"). "Similarly, firearm regulations which leave open alternative channels for self-defense are less likely to place a severe burden on the Second Amendment right than those which do not." *Jackson*, 746 F.3d at 961. Also material is whether the challenged regulation contains any exceptions limiting its scope and applicability. *Chovan*, 735 F.3d at 1138 (burden imposed by regulation prohibiting persons convicted of domestic violence misdemeanors from possessing firearms "lightened by" various exceptions for persons with "expunged, pardoned, or set-aside convictions, or those who have had their civil rights restored").

Where a regulation does not severely burden the core of the Second Amendment right or "amount to a destruction of that right," *Jackson*, 746 F.3d at 961, it will be upheld in the application of intermediate scrutiny if "the government's stated objective . . . [is] significant, substantial, or important" and there is "a 'reasonable fit' between the challenged regulation and the asserted objective." *Silvester*, 843 F.3d at 821-22 (quoting *Chovan*, 735 F.3d at 1139). "When reviewing the reasonable fit between the government's stated objective and the regulation at issue, the court may consider 'the legislative history of the enactment as well as studies in the record or cited in pertinent case law.'" *Fyock v. Sunnyvale*, 779 F.3d 991, 1000 (9th Cir. 2015) (quoting *Jackson*, 746 F.3d at 966). A challenged regulation will

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-06164 JAK (ASx) | Date | May 7, 2018 |
| Title | Michelle Flanagan, et al. v. Kamala Harris, et al. | | |

survive intermediate scrutiny even if it is not the least restrictive means of achieving the government's stated important interest. *See Jackson*, 746 F.3d at 966 ("Intermediate scrutiny does not require that section 4512 be the *least* restrictive means of reducing handgun-related deaths." (emphasis in original)). "Instead, it requires only that the law be 'substantially related to the important government interest . . . .'" *Silvester*, 843 F.3d at 827 (quoting *Jackson*, 746 F.3d at 966).

    B.    Application

        1.    <u>The Appropriate Standard of Review</u>

California contends that its open-carry laws do not burden a right protected by the Second Amendment based on a historical understanding of the scope of that right. Plaintiffs respond that the Second Amendment encompasses a right to carry firearms outside of the home.

The Ninth Circuit has not addressed "whether the Second Amendment protects some ability to carry firearms in public, such as open carry." *Peruta v. County of San Diego*, 824 F.3d 919, 927 (9th Cir. 2016) (en banc) ("The Second Amendment may or may not protect, to some degree, a right of a member of the general public to carry firearms in public . . . . We hold only that there is no Second Amendment right for members of the general public to carry concealed firearms in public."). However, this question need not be addressed to resolve the issues presented by the present motions. Thus, even assuming that the open-carry laws of California impinge the Second Amendment right as it was historically understood, for the reasons discussed below, they do not "destruct" or "severely burden" that right. Accordingly, intermediate scrutiny is the most stringent level that may be applied to California's open-carry laws. The challenged laws survive the application of that scrutiny.

California's open-carry laws do not infringe upon the "core" Second Amendment right of self-defense within the home. Thus, they do not prohibit, or even restrict, Plaintiffs' ability to use "arms in defense of hearth and home." *Heller*, 554 U.S. at 635; *Chovan*, 735 F.3d at 1138 ("[T]he core of the Second Amendment is 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'" (quoting *Heller*, 554 U.S. at 635)); *Silvester*, 843 F.3d at 821 ("[T]he Amendment's core purpose [is] self defense in the home. . . ."). Instead, they limit the open carrying of such arms in public, *i.e.,* outside the home.

Plaintiff's argument that these laws are presumptively unconstitutional is not persuasive. As noted, a law that impinges on a right protected by the Second Amendment is categorically invalid only if it "imposes such a severe restriction on the fundamental right of *self defense of the home* that it amounts to a destruction of the Second Amendment right . . . . That is what was involved in *Heller*." *Silvester*, 843 F.3d at 821 (emphasis added). In *Heller*, the challenged statute effected a complete ban on the possession of loaded handguns, including within a home. 554 U.S. at 628. The California statutes at issue here, do not effect a complete ban on possessing loaded firearms. Nor do they place limitations on the ability of an individual to protect himself or herself within his or her home.

It is also significant that the challenged statutes include various exceptions that permit the carrying of a loaded firearm in public for certain purposes. These include when a person "reasonably believes that any person or the property of any person is in immediate, grave danger and that the carrying of the weapon is necessary for the preservation of that person or property." Cal. Penal Code § 26045. These

Case 14-55873, 05/25/2018, ID: 10886404, DktEntry: 113, Page 10 of 14

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-06164 JAK (ASx) | Date | May 7, 2018 |
| Title | Michelle Flanagan, et al. v. Kamala Harris, et al. | | |

provisions thereby "lighten" any burden that the laws impose on rights protected by the Second Amendment. *Chovan*, 735 F.3d at 1138. Thus, the burden that they impose, if any, on a right protected by the Second Amendment, is not severe and does not restrict or impair what is at the core of that right -- to use "arms in defense of hearth and home." *Heller*, 554 U.S. at 635. For these reasons, the strict scrutiny standard does not apply.

        2.        <u>Whether the California Statutes Regulating the Open Carry of Firearms Survive Intermediate Scrutiny</u>

As noted, a regulation that burdens a right protected by the Second Amendment will be upheld under intermediate scrutiny if "the government's stated objective . . . [is] significant, substantial, or important" and there is "a 'reasonable fit' between the challenged regulation and the asserted objective." *Silvester*, 843 F.3d at 821-22 (quoting *Chovan*, 735 F.3d at 1139).

        a)        Important Government Objective

California contends that its objective in enacting its open-carry laws was "to prevent or at least reduce the danger to public safety created by firearms in public places." California Motion, Dkt. 45 at 29. Plaintiffs do not dispute that promoting public safety is an important governmental interest. *See* Plaintiffs' Motion, Dkt. 48-1 at 34.

The legislative history of California's open-carry laws clearly provides that their purpose is to promote public safety. Cal. Penal Code § 26350 generally prohibits individuals from openly carrying unloaded handguns in public. Its legislative history includes the statement that "the absence of a prohibition on 'open carry' has created an increase in problematic instances of guns carried in public, alarming unsuspecting individuals and causing issues for law enforcement. Simply put, open carry creates a potentially dangerous situation for the Citizens of California." Ex. 1 to California's RJN, Dkt. 45-16 at 30, 41, 58; *cf.* Ex. 2 to California's RJN, Dkt. 45-17 at 21, 30, 43, 55, 60, 64, 66, 72.

Additionally, in connection with their review of California Assembly Bill No. 144, various committees in the California legislature considered that "[i]n most cases when a person is openly carrying a firearm, law enforcement is called to the scene with few details other than one or more people are present at a location and are armed," which can escalate quickly if the armed person makes "the slightest wrong move" once law enforcement arrives on the scene. Ex. 1 to California's RJN at 19, 30-31, 42, 49, 50, 57. These committees also considered that "the increase in 'open carry' calls placed to law enforcement has taxed departments dealing with under-staffing and cut backs . . . preventing them from protecting the public in other ways." *Id.* For these reasons, the California legislature sought to address the "surge in problematic instances of guns carried in public" by generally prohibiting open carry. *Id.* at 50.

The Ninth Circuit has recognized that promoting public safety and reducing violent crime are important government interests. *Silvester*, 843 F.3d at 827 (government objectives of "promoting safety and reducing gun violence" are important); *Fyock*, 779 F.3d at 1000 ("Sunnyvale's interests in promoting public safety and reducing violent crime are substantial and important government interests."); *Jackson*, 746 F.3d at 965 ("[P]ublic safety is an important government interest.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-06164 JAK (ASx) | | Date | May 7, 2018 |
|---|---|---|---|---|
| Title | Michelle Flanagan, et al. v. Kamala Harris, et al. | | | |

The foregoing discussion shows that there is no triable issue as to whether the government interests advanced by California are important.

          b)      Reasonable Fit

California contends that there is a reasonable fit between its open-carry laws and its interest in protecting public safety "by reducing violent-crime rates, conserving law enforcement resources, and protecting law enforcement officers and the public from unnecessary and potentially dangerous confrontations." California Motion at 30. Plaintiffs respond that California's open-carry laws are not a reasonably tailored means of furthering the state's interest in promoting public safety.

          (1)      <u>California's Experts</u>

California relies on the expert report and testimony of Professor John J. Donohue III of the Stanford Law School ("Donohue"). *See* Ex. 8 to Declaration of P. Patty Li ("Li Decl."), Dkts. 45-9, 45-10 ("Donohue Report"); Ex. 4 to Li Decl., Dkt. 45-5 at 13:3-14:12 ("Donohue Depo."). Based on his opinions, California argues that there is a reasonable fit between its open-carry laws and the state's goal of reducing the rate of violent crimes. Donohue's report, which is a National Bureau of Economic Research working paper of which he is a co-author, is titled "Right-to-Carry Laws and Violent Crime: A Comprehensive Assessment Using Panel Data and State-Level Synthetic Controls Analysis." The Donohue Report discusses a study that he and his co-authors performed in which they applied two statistical methodologies -- panel data analysis and synthetic controls analysis -- to a large sample of data about violent crimes. Donohue Depo., Dkt. 45-5 at 29:15-30:4. Based on this study, Donohue and his co-authors found that, within ten years of the enactment of right-to-carry laws, violent crime rates increase by 13 to 15 percent. *Id.* at 30:10-31:3; *see also* Donohue Report, Dkt. 45-9 at 34. The Donohue Report concludes that "the longer the [right-to-carry] law is in effect (up to the tenth year that we analyze), the greater the cost in terms of increased violent crime." Donohue Report, Dkt. 45-9 at 27.

California relies on other sources in support of the argument that its open-carry laws enhance public safety. These include the legislative history of these laws and the expert report and testimony of former Covina Chief of Police, Kim Raney ("Raney"). Raney's qualifications include a 39-year career in law enforcement. Ex. 10 to Li Decl., Dkt. 45-13 ¶ 2 ("Raney Report"). During that time he served for 15 years as Chief of Police for the Covina Police Department. *Id.*

Raney's report concludes that "restrictions on the open carry of firearms greatly enhance public safety." *Id.* ¶ 21. "From a law-enforcement perspective, the restrictions on the open carry of firearms in California have been critical to the safety of law-enforcement officers, our communities, and those people who would want to openly carry firearms in public." *Id.* ¶ 22. He then explains this in the context of when a law enforcement officer responds to a situation that reportedly involves someone with a firearm. Thus, "[w]hen police officers encounter a person with a firearm, even one that may be legally possessed, [they] usually have few details to help them quickly determine the armed person's intent or whether that person is a threat to the officer, the public or the armed person." *Id.* ¶ 24. As a result, the interaction with that person could escalate quickly "[s]hould the armed person fail to comply with an officer's instructions or move in a way that could be construed as threatening." *Id.* ¶ 22.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-06164 JAK (ASx) | Date | May 7, 2018 |
| Title | Michelle Flanagan, et al. v. Kamala Harris, et al. | | |

For these reasons, Raney opines that, by restricting the open-carry of weapons, there will be fewer occasions when an officer as well as those involved are presented with these risks. He also opines that open-carry restrictions help ensure that law enforcement resources are not unnecessarily diverted from responding to other emergencies. *Id.* ¶ 23.

(2)   Plaintiffs' Experts

In opposition to the California Motion, Plaintiffs rely on three experts -- Gary Kleck, a Professor of Criminology at Florida State University, Guy Rossi, a retired law enforcement officer and a law enforcement trainer, and John Cooke, a Colorado state senator and former of Chief of Police.

Kleck's report was submitted in rebuttal to the Donohue Report. It criticizes the data analysis by Professor Donohue's panel. Kleck states that it was inappropriate to seek to measure the effects of right-to-carry laws on "the violent crime rate," because this variable groups incidents of murder, rape, robbery and aggravated assault. Ex. 6 to Declaration of Sean A. Brady ("Brady Decl."), Dkt. 57-1 at 214 ("Kleck Report"). Kleck opines that because most reported, violent crimes are aggravated assaults, "the violent crime rate" variable primarily reflects incidents involving that crime. Kleck contends that grouping the four crimes as part of a single variable "obscured the weak and mixed character" of Professor Donohue's results. Kleck next opines that, although the availability of firearms may affect murder rates, it has no measureable net effect on how often violent acts occur. For this reason, he states that it is not a reliable measure of the effect on the rates of aggravated assaults.

The reports of Rossi and Cooke were submitted to rebut the report of Raney. Exs. 7-8 to Declaration of Sean A. Brady ("Brady Decl."), Dkt. 57-1 at 228 ("Rossi Report") and 260 ("Cooke Report"). Both Rossi and Cooke state that in their experience, when law-abiding citizens openly carry firearms in public, it does not jeopardize the safety of the public or law enforcement officers in any meaningful way. They contend that law enforcement officers are trained to evaluate threats based in part -- but not entirely -- on whether there is a weapon at the scene, and that Raney overstates the effects that permissive open-carry rules have on safety to law enforcement personnel and the allocation of law enforcement resources.

(3)   Analysis

As noted, in considering the question of fit, courts "review the legislative history of the enactment as well as studies in the record or cited in pertinent case law." *Jackson*, 746 F.3d at 966. "In making this determination, 'substantial deference to the predictive judgments of [the legislature]' is warranted." *Kachalsky v. County of Westchester*, 701 F.3d 81, 97 (2d Cir. 2012) (alteration in original) (quoting *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 195 (1997)).

Based on the evidence California has submitted, it has shown that the State reasonably could have inferred that there was a relationship between prohibiting individuals from carrying firearms openly in public and promoting and achieving the important governmental objective of public safety. That these objectives would be advanced could be inferred from Donohue's findings that the enactment of right-to-carry laws lead to increased violent crime rates and the opinions of Raney as to the adverse effect open-carry laws have on public safety. *Cf. Jackson*, 746 F.3d at 966 ("Based on the evidence that locking firearms increases safety in a number of different respects, San Francisco has drawn a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-06164 JAK (ASx) | Date | May 7, 2018 |
|---|---|---|---|
| Title | Michelle Flanagan, et al. v. Kamala Harris, et al. | | |

reasonable inference that mandating that guns be kept locked when not being carried will increase public safety and reduce firearm casualties.").

In enacting the challenged open-carry laws, the California legislature also relied on the position advanced by the Peace Office Research Association that prohibiting the open carrying of firearms in public "will be very helpful in preventing . . . potentially unsafe incidents from happening." Ex. 1 to California's RJN, Dkt. 45-16 at 45. "The connection between promoting public safety and regulating handgun possession in public is not just a conclusion reached by [California]." *Kachalsky*, 701 F.3d at 98. Other states have reached the same conclusion. *See, e.g., id.* ("Restricting handgun possession in public to those who have a reason to possess the weapon for a lawful purpose is substantially related to New York's interests in public safety and crime prevention."); *Piszczatoski v. Filko*, 840 F. Supp. 2d 813, 835 (D.N.J. 2012) ("New Jersey's Handgun Permit Law is no political whim. . . . The legislature has continually made the reasonable inference that given the obviously dangerous and deadly nature of handguns, requiring a showing of particularized need for a permit to carry one publicly serves the State's interests in public safety.").

The expert reports California has submitted also are sufficient to show a reasonable fit between its open-carry laws and important governmental interests, *i.e.,* reducing the rate of violent crimes and promoting public safety. *See Kachalsky*, 701 F.3d at 99 (relying on the evidence New York submitted, including "studies and data demonstrating that widespread access to handguns in public increases the likelihood that felonies will result in death and fundamentally alters the safety and character of public spaces" in assessing the fit between New York's public-carry licensing scheme and the important government interest in public safety).

The expert reports and testimony that Plaintiffs have submitted contest the analysis on which California relies, but are not sufficient to warrant a different conclusion. Thus, the issue is not whether different experts could reasonably disagree. Instead it is whether the evidence on which California relies is sufficient to support the inference that the State reasonably saw a link between restrictions on the open carry of guns and the aforementioned public safety benefit.

This issue was addressed in *Kachalsky* with respect to a similar presentation of evidence by the parties who challenged the laws restricting open carry. 701 F.3d at 99 (acknowledging such evidence in the context of the parties' cross motions for summary judgment). However, as *Kachalsky* explained, "[i]t is the legislature's job, not ours, to weigh conflicting evidence and make policy judgments. Indeed, assessing the risks and benefits of handgun possession and shaping a licensing scheme to maximize the competing public-policy objectives, as [California] did, is precisely the type of discretionary judgment that officials in the legislative and executive branches of state government regularly make." *Id.* at 99; *see also Heller v. District of Columbia*, 801 F.3d 264, 273 (D.C. Cir. 2015) ("We do not, however, review de novo the District's evidence of the harm to be prevented and the likely efficacy of the regulation in preventing that harm. Rather, it is our remit to determine only whether the District has drawn reasonable inferences based on substantial evidence. If it has done so, and if the means chosen are not overbroad, then summary judgment is appropriate regardless of whether the evidence is in conflict." (internal citations and quotation marks omitted)); *Woollard v. Gallagher*, 712 F.3d 865, 880-81 (4th Cir. 2013) ("[W]e cannot substitute [plaintiffs'] views for the considered judgment of the General Assembly that the good-and-substantial-reason requirement strikes an appropriate balance between granting handgun permits to those persons known to be in need of self-protection and precluding a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-06164 JAK (ASx) | Date | May 7, 2018 |
|---|---|---|---|
| Title | Michelle Flanagan, et al. v. Kamala Harris, et al. | | |

dangerous proliferation of handguns on the streets of Maryland. . . . '[i]t is the legislature's job, not ours, to weigh conflicting evidence and make policy judgments.'" (quoting *Kachalsky*, 701 F.3d at 99)).

For the foregoing reasons, Plaintiffs' challenges to the California statutes fail to meet the applicable standards.

**IV.     Conclusion**

For the reasons stated in this Order, the California Motion is **GRANTED** and the Plaintiffs' Motion is **DENIED**. The Motion for Leave is **GRANTED**. On or before May 14, 2018, California shall email a copy of the proposed judgment it lodged (Dkt. 47-1) to the Court's Chambers' email at: JAK_Chambers@cacd.uscourts.gov. On or before the same date, Plaintiffs shall file any objections to the proposed judgment in accordance with the Local Rules.

**IT IS SO ORDERED**.

|  | : |  |
|---|---|---|
| Initials of Preparer | ak | |