**No. 14-55873 [DC 2:11-cv-09916-SJO-SS]**

==========================================

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
———————————

**Charles Nichols**
**Plaintiff-Appellant**

**V.**

**GAVIN NEWSOM, in his official capacity**
**as Governor of California; Rob Bonta, Attorney General in his official**
**capacity as Attorney General of California,**
**Defendants-Appellees.**

———————————

**On Appeal from the United States District Court**
**for the Central District of California**
**No. DC 2:11-cv-09916-SJO-SS**

———————————

**PLAINTIFF-APPELLANT NICHOLS' SUPPLEMENTAL BRIEF**
———————————

**Charles Nichols**
**PO Box 1302**
**Redondo Beach, CA 90278**
**Tel. No. (424) 634-7381**
**e-mail: CharlesNichols@Pykrete.info**
**In Pro Per**

**July 18, 2022**

==========================================

## TABLE OF CONTENTS

**Page**

INTRODUCTION AND STATEMENT......................................................................1

ARGUMENT .........................................................................................................4

I.   The United States Supreme Court Mandates the One-Step Test. ................9

     A.   The Second Amendment Applies to Private Property. ..........................11

     B.   The Historical Tradition Begins in 1791. ...........................................11

     C.   The Burden of Proof is on the Government. .........................................13

     D.   The Supreme Court Applied its One-Step Test to Public Carry. ........13

     E.   The One-Step Test takes Public Safety out of the Equation. ...............14

     F.   The Text of the Second Amendment Controls.......................................15

     G.    Judges are the Only Ones to Decide the Historical Evidence..............15

II.  The Appellees Failed to Meet their Burden under the One-Step Test. ........16

III.  The Appellees Failed to Prove any law Survives the One-Step Test............17

CONCLUSION......................................................................................................20

# TABLE OF AUTHORITIES

**Page**

## CASES

*District of Columbia v. Heller*
  554 U.S. 570 (2008) ......................................................................... *passim*

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
  597 U. S. \_\_\_\_ (2022) ....................................................................... *passim*

*Nunn v. State,*
  1 Ga. 243 (1846) ...................................................................................15

*People v. Jones,*
  278 P. 3d 821 (2012) .............................................................................13

*People v. Robinson,*
  124 P. 3d 363 (2005) .............................................................................13

*State v. Chandler,*
  5 La. Ann. 489 (1850) ...........................................................................15

*US v. Chovan,*
  735 F. 3d 1127 (2013) ...........................................................................17

*US v. Dreyer,*
  804 F. 3d 1266 (2015) ...........................................................................17

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. II ......................................................................passim
U.S. Const. amend. IV ...................................................................... 6, 9
U.S. Const. amend. XIV ...........................................................4, 6-7, 9, 11-12

## STATUTES

Cal. Penal Code
  § 626.9 ............................................................................................2, 18

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**STATUTES (continued)**
 Cal. Penal Code (continued)

§ 26150 ................................................................................18
§ 26155 ................................................................................18
§ 26215 ................................................................................18
§ 26350 ................................................................................18
§ 26362 ................................................................................18

Federal
 18 U.S. Code § 926A ..........................................................2

**OTHER AUTHORITIES**

California Senate Bill No. 918 AMENDED IN ASSEMBLY JUNE 29, 2022 .... 2-4

## INTRODUCTION AND STATEMENT

On July 8, Defendant-Appellee Attorney General Bonta filed a F.R.A.P. 28(j) letter in the related case *Michelle Flanagan, et al. v. Rob Bonta, et al*., Case No. 18-55717 (*Flanagan* Docket #64). His letter referenced and linked his Legal Alert No. OAG-2022-02, dated June 24, 2022, in which he instructed all "issuing agencies" that the California "good cause" requirement for issuing licenses to carry handguns, openly and concealed, is no longer constitutional. He further instructed that all other provisions of the licensing laws remain in effect, including the limiting of licenses to openly carry a firearm to residents in counties with a population of fewer than 200,000 people and limiting the validity of those licenses to the county of issuance. Plaintiff resides in Los Angeles County.  SAC ¶3

Appellee Bonta then advised all county sheriffs and police chiefs to withhold the issuance of licenses Appellee Bonta has approved to be issued to individuals and to withhold them for a variety of reasons such as engaging in constitutionally protected speech, for arrests in the previous five years (regardless of disposition) or for convictions in the previous seven years that did not result in an individual being prohibited from possessing firearms. See https://oag.ca.gov/system/files/media/legal-alert-oag-2022-02.pdf  Appellee Bonta is not the one withholding the license.  He no doubt believes that gets him off the hook should a sheriff or police chief follow his advice to violate the Constitution.

Defendant-Appellee Attorney General Bonta also referenced California Senate Bill 918 (SB-918) in which he is the sponsor and which is supported by Defendant-Appellee Governor Newsom who, according to the author of the bill who testified in committee that Appellee Newsom is collaborating in the writing of the bill as is the bill's sponsor, Appellee Bonta.

SB-918 adds additional layers of bans on top of the existing layers of bans at issue in this appeal and increases the penalties for violations of those bans.

For example, California Penal Code Section 626.9 ("PC 626.9) does not apply to long guns under current law. When the bill passes, long guns will no longer be exempt from PC 626.9. When SB-918 becomes law, it will be a crime for Plaintiff to simply transport any firearm, be it handguns or long guns, modern or antique, loaded or unloaded, through a California Gun-Free School Zone. And that prohibition extends to interstate travel which violates 18 U.S. Code § 926A - Interstate transportation of firearms.

Like most people in California, Plaintiff Nichols resides within 1,000 feet of a K-12 public or private school. A conviction for the "crime" of transporting an unloaded firearm in a fully enclosed, locked container would result in Plaintiff being prohibited from possessing a firearm for 10 years. PC 626.9, like the loaded and unloaded Open Carry bans, does not have either an exception for self-defense or a severability clause. Even if they did, they still fail the *Bruen* One-Step Test.

2

See

https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=202120220SB918

During the Committee hearing on SB-918, Assemblymember Quirk said that the justices of the United States Supreme Court are a bunch of political hacks, and he praised President Jackson for refusing to follow Supreme Court orders. At the end of his diatribe, Assemblymember Quirk said that it is time for Congress and the Executive Branch to eliminate the Supreme Court.

Assemblymember Bryan then arrogantly challenged the bill's opponents to "Take it to court." Apparently, he is oblivious to the fact that much of SB-918 is already "in court" and has been in court for going on 11 years now in this case *Charles Nichols v. Gavin Newsom et al*.

The California legislature has absolute immunity, and Plaintiff suspects that Appellee Newsom and Appellee Bonta will say that when they act as a legislator by writing laws they then enforce they have absolute immunity. Eleven years of litigation has taught Plaintiff–Appellant Nichols that there is no limit to the state's Orwellian objectives or legal arguments.

Regardless, neither of the Appellees in this case is immune from the prospective injunctive and declaratory relief sought by Plaintiff. Perhaps the Appellees believe that once a law has been enjoined and/or declaratory relief been

granted in this case then they are free to enforce the bans carrying greater penalties in SB-918 when it becomes law?

The video of the Public Safety Committee hearing on SB-918 is online at the California Legislature website. The hearing begins at 1 hour and 13 minutes. Assembly member Quirk's diatribe begins at 1:43 immediately followed by Assembly member Bryan throwing down the gauntlet while hiding behind his wall of absolute legislative immunity. https://www.assembly.ca.gov/media/assembly-public-safety-committee-20220628/video

## ARGUMENT

In his opening brief ("AOB") Plaintiff-Appellant Nichols argued for the One-Step Test now commanded by the United States Supreme Court. Appellant argued that California's Open Carry bans fail every test and every standard of review. The Appellees argued that California's Open Carry bans survive every test and every standard of review, including the One-Step test and rational basis review.

Although Appellant Nichols dropped his race based equal protection plan in his AOB, he did not drop his claim that the Open Carry bans failed the rational basis test. Why would he?

The rational basis test would not have been reached unless this Court held that Appellant's Second Amendment and Fourteenth Amendment claims fail. But

for the Appellees to prevail, this Court would have had to have held that racial animus and state created danger survive the rational basis test.

Given the clear command of the United States Supreme Court that this Court apply the One-Step Test to all Second Amendment claims, it is highly unlikely that this Court will reach Appellant's claims that California's Open Carry bans fail the rational basis test or the Appellees argument that the bans pass the rational basis test. But if this Court cannot find a right to openly carry firearms outside of the home for the purpose of self-defense and for other lawful purposes then Appellant's rational basis claims are still before this Court.

The facts of this case are well pleaded, and not in dispute. This lawsuit was filed on November 30, 2011. This is an appeal of a judgment on the pleadings entered by the district court on May 1, 2014. Plaintiff-Appellant Nichols filed a timely notice of appeal. This appeal has been fully briefed on the merits as well as argued before this three-judge panel on February 15, 2018.

Plaintiff-Appellant Nichols seeks to vindicate his right to openly carry loaded and unloaded firearms (handguns, rifles, and shotguns both modern and antique) for the purpose of self-defense and for other lawful purposes in the curtilage of his home, on his private residential property, in and on his motor vehicles including any attached camper or trailer, and regardless of whether or not

they are being used as his residence (temporarily or permanent) and in non-sensitive public places throughout the state of California.

"Plaintiff-Appellant Nichols asked for both an application and a license to openly carry a loaded firearm from the City of Redondo Beach police chief but was denied not because he lacked "good cause" or because he is not a person of "good moral character" but because California law prohibits the issuance of handgun Open Carry permits." Appellant's Opening Brief ("AOB") at 18.

"California law (PC25850), as it has been interpreted by its courts, has defined the curtilage of the home as a "public place" where one is prohibited from carrying a loaded firearm. Plaintiff-Appellant Nichols seeks declaratory and prospective injunctive relief against this and various California Penal Code statutes and any other California law that infringes on his Second, Fourth, and Fourteenth Amendment rights." AOB at 23.

The Appellees conceded in oral argument that Plaintiff wins his Fourth Amendment claim if he succeeds on his Second Amendment claim.

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, No. 20-843 (June 23, 2022) to be cited as 597 U. S. ____ (2022) ("*Bruen'*) has greatly simplified Plaintiff's Fourteenth Amendment and Second Amendment claims. Plaintiff does not need to show (although he has) that he has been treated differently from persons similarly situated, or that he has been denied due process, or

6

that he has a 14th Amendment substantive due process right. A law that violates Plaintiff's Second Amendment right violates his Fourteenth Amendment right. Full Stop.

"A final word on historical method: Strictly speaking, New York is bound to respect the right to keep and bear arms because of the Fourteenth Amendment, not the Second. *See, e.g., Barron ex rel. Tiernan v. Mayor of Baltimore*, 7 Pet. 243, 250–251 (1833) (Bill of Rights applies only to the Federal Government). Nonetheless, we have made clear that individual rights enumerated in the Bill of Rights and made applicable against the States through the Fourteenth Amendment have the same scope as against the Federal Government." *Bruen*, Slip Op at 28.

Plaintiff is not prohibited from possessing firearms under California state or Federal law. If he were such a person then he would not have standing to challenge California's bans on openly carrying loaded and unloaded firearms because prohibited persons cannot be punished under California law for carrying a loaded or unloaded firearm, openly or concealed. AOB at 79. Likewise, prohibited persons cannot obtain a license to possess or carry a firearm, openly or concealed.

Plaintiff's operative complaint is his Second Amended Complaint (SAC) ER Vol 2, beginning at page 216. Even though the laws at issue in this case have no severability clauses, and even though the laws at issue in this case do not apply to prohibited persons, and even though the laws at issue in this case do not apply to sensitive places, and even though the laws at issue in this case do not apply to dangerous and unusual weapons, Plaintiff-Appellant Nichols limited the scope of his complaint to himself and similarly situated persons who are not prohibited from

possessing firearms,. SAC ¶8, and excluded everything else. The SAC and briefs mirrored the right in *Heller*, and reaffirmed by *Bruen*.

Plaintiff did not and does not concede that the state can require a license to openly carry firearms. "PLAINTIFF submits that no license is required for a private citizen to exercise his Second Amendment right to self-defense." But if a license can be required then Plaintiff did not want his SAC to be construed as seeking licenses for prohibited persons and so he stated, "PLAINTIFF and persons not prohibited from possessing firearms would not have to provide any identifying information beyond that which is required to undergo a background check through the FBI National Instant Criminal Background Check System (NICS). SAC ¶85.

The Appellees know Plaintiff has passed this background check many times because nearly all of the handguns he possesses were purchased through a California FFL and are registered with the State of California. Not all, because neither the State nor the Federal government requires antique firearms to be registered or be purchased through a licensed dealer of firearms.

Over seven years ago, on May 16, 2015, during the en banc Oral Argument to *Edward Peruta, et al v. County of San Diego, et al* No. 10-56971 the State of California conceded that Plaintiff has a right to openly carry firearms beyond the curtilage of his home for the purpose of self-defense. AOB at 40.

Four and a half years ago, on February 15, 2018, the Appellees (the state) stood before this panel and demanded that this Court conduct its own historical analysis and then overrule *District of Columbia v. Heller 554* U.S. 570 (2008) because, they argued, the English 1328 Statute of Northampton was the controlling law in the United States when the Second Amendment was enacted (December 15, 1791). Clearly, it is not. *Bruen* at 31-32, 34-36, 38, 42-43.

The Appellees argued that nobody openly carried firearms for any reason because the mere sight of a firearm was threatening. The Appellees, nearly in the same breath, conceded that Americans openly carried firearms in public before and after the enactment of the Second Amendment. The Appellees did not explain how or why the Statute of Northampton did not prohibit Americans from openly carrying firearms (for any purpose) before or after the enactment of the Second Amendment. The bearing of firearms in and of itself is not threatening. *Id* at 38.

Plaintiff again submits that the California laws at issue in this case that prohibit him from carrying loaded and unloaded firearms in the curtilage of his home, on his private residential property, and the other places stated in his SAC and in his briefs previously filed, violate his Second, Fourth, and Fourteenth Amendment rights, and fail every level of scrutiny as well as the One-Step and Two-Step tests even if levels of scrutiny and the Two-Step Test were allowed.

## I.    The United States Supreme Court Mandates the One-Step Test

"This Court is not allowed to engage in judicial interest-balancing, ends means testing, or to engage in its own historical analysis. The Second Amendment comes with its own standard of judicial review. If a law infringes on the Second Amendment right then it is unconstitutional." Appellant's Opening Brief ("AOB") at 38. The test Plaintiff Nichols argued for is a One-Step Test.

When Plaintiff's SAC was written, he knew of two competing Second Amendment tests. The "Substantial Burden" test would not consider Second Amendment challenges unless the challenged law "substantially burdened" the Second Amendment right, and the two-step test this circuit adopted in *US v. Chovan*, 735 F. 3d 1127 (2013).

Both of those tests conflict with the text, history, and tradition One-Step Test used in *Heller* and now required by *Bruen*. "Despite the popularity of this two-step approach, it is one step too many." *Bruen* Slip Op at 10.

The first paragraph of *Bruen* on page 15 of the slip opinion unequivocally and explicitly rejected the two-step test, and concisely reiterated the One-Step Test. The One-Step Test is as fatal to the state's case here as it was in *Bruen*.

> "In sum, the Courts of Appeals' second step is inconsistent with *Heller's* historical approach and its rejection of means-end scrutiny. We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude

that the individual's conduct falls outside the Second Amendment's "unqualified command."'" *Konigsberg*, 366 U. S., at 50, n. 10." *Bruen* at 15.

## A.   The Second Amendment Applies to Private Property.

Appellant Nichols' conduct is protected in public and in private.

"In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen* at 8.  The Appellees failed to prove the right does not apply to private property. The curtilage of his home was all that was necessary. AOB at 71.

Plaintiff-Appellant Nichols seeks to keep and bear firearms outside the doors to his home in the curtilage of his home, on his private residential property, in and on his motor vehicles regardless of whether or not they are used as a temporary or permanent residence, and in non-sensitive public places for the purpose of self-defense and for other lawful purposes.  The U.S. Supreme Court "In *Heller* and *McDonald*....held that the Second and Fourteenth Amendments protect an individual right to keep and bear arms for self-defense." *Id* at 8.  Appellant Nichols' conduct is protected by the Constitution.

## B.   The Historical Tradition Begins in 1791.

The Appellees stated in oral argument that the date of the enactment of 1791 is the relevant date. They were correct, as this case is a pure Open Carry case.  By 1868, concealed carry was not considered to be constitutionally protected conduct, as *Heller's* in-depth analysis of the history and tradition of the Second Amendment

as it applied to concealed carry showed. After all, a concealed carrier had recently

assassinated President Lincoln when the Fourteenth Amendment was adopted.

What moral man or woman at the time would have said anything other than:

> "[C]itizens ha[ve] a right to carry arms openly: "This is the right guaranteed
> by the Constitution of the United States, and which is calculated to incite
> men to a manly and noble defence of themselves, if necessary, and of their
> country, without any tendency to secret advantages and unmanly
> assassinations." *Heller* at 613.

> *Bruen* held that "We need not address this issue today because, as we

explain below, the public understanding of the right to keep and bear arms in both

1791 and 1868 was, for all relevant purposes, the same with respect to public

carry." *Id* at 29.

The Appellees asked this Court to overrule *Heller*. Plaintiff-Appellant

Nichols is not now going to ask this Court to overrule *Bruen* on this point or any

point. The United States Supreme Court has the last word on what the U.S.

Constitution means. Even when it is mistaken as it was when it created a trap door

for concealed carry to emerge from its basement. **"[T]o the extent later history**

**contradicts what the text says, the text controls."** *Bruen* at 27. This Court can

grant Nichols' Prayer for Relief, and by doing so, California will be free to put

concealed carry back into the basement and lock it in a cage.

With the possible exception of Vermont, no state constitution in the Union

recognizes a right to carry a weapon concealed for use against another human.

Concealed carry is a crime of moral turpitude in California which the California courts, including the California Supreme Court, have repeatedly held. "We also agree with defendant that the misdemeanor convictions [for concealed carry of a handgun] suffered by Williams and Aldridge reflected a crime of moral turpitude and therefore were relevant to the witnesses' honesty and veracity." *People v. Robinson*, 124 P. 3d 363 (2005) at 787.

As recently as 2012, the California Supreme Court reiterated the longstanding holding of California courts dating back to the 19th century that "The act of firearm possession, by itself, is innocent." Up until the point the firearm is concealed, at which point the possession is no longer innocent. *People v. Jones*, 278 P. 3d 821 (2012) at 356.

A license to carry a handgun concealed is a defense to a crime of moral turpitude. The license does not remove the moral turpitude of the licensed concealed carrier. A license is neither an indulgence nor a dispensation.

**C.    The Burden of Proof is on the Government.**

In order for California's laws to pass the *Bruen* One-Step Test, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen* at 15. It did not, and can not.

**D.    The Supreme Court Applied its One-Step Test to Public Carry.**

After conducting an intensive examination of the history and tradition of the carrying of arms in public in America, the Supreme Court concluded that the bearing of firearms is protected. Handguns regardless of whether they are three feet in length or small enough to fit in the palm of one's hand are also firearms and thus protected. The Court's in-depth historical analysis in both *Heller* and *Bruen* came to the same conclusion about concealed carry. States could lawfully eliminate *only concealed carry*. *Id* at 51. But there is a right to carry handguns and since New York said that the petitioners' licenses to own a handgun could be revoked if they openly carried their licensed handguns, the Court invalidated the "proper cause" requirement for unrestricted concealed carry licenses.

### E. The One-Step Test takes Public Safety out of the Equation.

The One-Step Test stops at the text, except when delimiting the boundaries, and then only history and tradition are allowed to be considered.

If statistics were allowed under the One-Step Test, because concealed carriers are the ones who account for nearly all homicides committed with weapons, and because concealed carry is evil then *Bruen* would have been decided the other way.

As horrible, and sickening as the murders committed with long guns are, statistics would show that they account for a small percentage of homicides and almost invariably are committed with one type of rifle currently banned in California, and not a type of firearm at issue in this case.

14

**F.    The Text of the Second Amendment Controls.**

"But to the extent later history contradicts what the text says, the text controls." *Bruen* at 27. The majority opinion was correct to exclude English history and to exclude history prior to the enactment of the Second Amendment. But over 200 years of American history and tradition shows that concealed carry was never considered to be a right with the possible exception of travelers while actually on a journey. *Heller* at 618. Perhaps historical tradition plays a role in "delimit[ing] the outer bounds of the right to keep and bear arms." *Bruen* at 10. But *Charles Nichols v. Gavin Newsom et al*., does not test the outer bounds of the right. Plaintiff-Appellant Nichols' lawsuit is controlled by the text of the Second Amendment and if 200 years of American history and tradition has proven anything it has proven "that citizens had a right to carry arms openly: "This is the right guaranteed by the Constitution of the United States, and which is calculated to incite men to a manly and noble defence of themselves, if necessary, and of their country, without any tendency to secret advantages and unmanly assassinations."" *Heller* at 612-613 citing *State v. Chandler*, 5 La. Ann. 489, 490 (1850), which the *Heller* opinion said in conjunction with *Nunn v. State*, 1 Ga. 243, 251 (1846), *perfectly captured* the meaning of the individual right to keep and bear arms and that right "shall not be infringed."

**G.    Judges are the Only Ones to Decide the Historical Evidence.**

Justice Breyer in his dissent at 26 questioned the ability of judges to weigh historical evidence because they, and their staff, are not historians.

Nevertheless, *Bruen* was decided on the pleadings and the briefs by judges as this case is now to be decided on the pleadings and the briefs by judges.

## II.     The Appellees Failed to Meet their Burden under the One-Step Test.

During oral argument, Judge Bybee said, "The state has made a very extensive argument that the scope of the right to keep and bear arms historically has been understood as being limited and one could not carry guns publicly…"

The Appellees' briefs and evidence and addendums on appeal were approximately 500 pages long.  The three opposed Amicus briefs filed in support of the Appellees added another 100 pages or so to that number.  They were all extensive as well as voluminous.  Nevertheless, no matter how many hundreds of pages the Appellees would add if given the opportunity, no amount of historical evidence can make it past the *Bruen* One-Step Test.

The Appellees brief had argued that there is not a broad right to Open Carry. In oral argument, the Appellees abandoned that argument for one in which there is no right to openly carry firearms in public for the purpose of self-defense or for any purpose because the mere sight of a firearm was threatening.  The three opposed Amicus briefs likewise argued that there is either no right to bear arms, especially openly, or the right is virtually non-existent.

The Appellees' brief argued against the Second Amendment in two parts. Part II of their brief argued for Intermediate Scrutiny under the now prohibited two-step test. Part II is now precluded by *Bruen*.

Take a *Bruen* blue-pencil to Part I and all that this Court will find left is "Only a few of Nichols's case cites provide limited support for his claim…"

Under both the two-step test and the One-Step Test, the burden of proof lay with the Appellees. The Appellees admitted in their Answering Brief toward the bottom of page 39 that the Appellees did not submit any "evidence of the efficacy of open-carry laws in maintaining public safety and minimizing firearm violence in public places. "No evidence" failed the prohibited two-step test. *Chovan* at 1137-1142. "No evidence" fails the *Bruen* One-Step Test as well. *Id* at 30.

**III.   The Appellees Failed to Prove any law Survives the One-Step Test**.

Consider, for example, Appellant Nichols' challenge to California's licensing laws and their ancillary conditions, restrictions, and statutes. AOB at 22, 27, 64. SAC ¶¶ 4, 10, 64, 65, 85, Prayer for Relief (G), and (H). Appellees waived their defense of those laws. Even if this court were to conclude that this is an "exceptional case" *US v. Dreyer*, 804 F. 3d 1266, 1277-1278 (2015), *Bruen* does not allow the Appellees another bite at the apple. *Id* at 6.

If this Court excuses the extensive waiver by Appellees, then Appellant Nichols should be given the opportunity to file a Reply Brief.

During his first meet-and-confer, Plaintiff Nichols found the reasons given by the Defendant Governor and Attorney General so absurd on their face that he jokingly suggested that the state's attorney add the Eleventh Amendment to his list. The state's attorney paused for a minute and then blurted out, "I will!"

Plaintiff Nichols is hesitant to put ideas into the Appellees' heads but one argument the Appellees are likely to make seems obvious. Without stating it, Plaintiff Nichols will observe that a license to carry a loaded firearm concealed issued pursuant to PC 26150 or PC 26155, is an exemption to the statewide ban on openly carrying unloaded firearms with a barrel length of up to 16 inches PC 26350 via PC 26362. If the firearm is listed on the CCW license, then it is legal to carry that firearm in California's K-12 public and private 1,000-foot gun-free school zones PC 626.9. PC 26215 allows a handgun Open Carry license to be amended to statewide concealed carry and a concealed carry license to be amended to include loaded Open Carry, but only in that county. However, *Bruen* did not say that a license could be required to openly carry any firearm, or that carry could be restricted to unloaded firearms, or that carry could be restricted to a single county. *Bruen* said that a background check *or* (nominal) training, as well as a (nominal) license fee, *for concealed carry* permits, can be required to carry a handgun *concealed* in public. There is no limit on the licensing fees California charges because there is no limit on how short a time the license is valid. The maximum

time is two years. The state allows unlimited time place and manner restriction on when and where the license is valid because the plain English reading of the statutes don't limit them. As for training, the state requires a longer course of training than does the United States Navy in its M-9 qualification course.

Plaintiff's handgun carry license from the State of Washington did not require anything more than a background check. His Oregon license required a short training course similar to the Firearm Safety Certificate required to purchase a firearm in California. California's hunter safety course took him a morning and afternoon. No law within the scope of Plaintiff's SAC survives the One-Step Test.

Every gun law is now subject to the One-Step Test. That includes the "presumptively lawful" laws from Section III of *Heller*. There are some laws that *might* survive the One-Step Test, such as prohibitions on the possession of firearms by the mentally ill and some, but not all, felon in possession laws. But those laws can only survive if the government meets its burden of proof in its briefs.

"There are many, many laws which severely restrict and prohibit where a firearm can be possessed and who may possess a firearm which Plaintiff-Appellant Nichols explicitly did not seek to enjoin, not because they are constitutional but because of the practical limitations of civil rights lawsuits." AOB at 16-17. *Bruen* has removed those limitations. All laws that apply to a Plaintiff can be challenged in a pleading. The burden of proof is entirely on the shoulders of the government.

Plaintiff-Appellant Nichols's pleadings, briefs, and declaration are fully incorporated herein by reference.

## CONCLUSION

*Bruen* is a sea change in Second Amendment jurisprudence. Those laws that implicate just the keeping and bearing of arms fail at the threshold of the One-Step Test – "the text controls" *Id* at 27. The history and tradition of the right to bear arms has always been that the Constitution protects the right to bear firearms openly. The 200-year-long debate over whether the right included arms that are easily and ordinarily concealed has ended. Suspect individuals (e.g., felons), specific types of firearms, and sensitive places as well as conduct that might be located at the margins of the right are not at issue here. They never were, and the Appellees never argued that they were. Dred Scott lost his eleven-year battle in the courts. It is long since past time for this Court to make its decision, win or lose.

That decision should be to reverse the district court's judgment in full for the reasons given above and in Plaintiff Nichols' briefs on appeal, and grant Plaintiff the relief he requested in his pleadings and briefs as well as "Such other and further relief as this Court may deem appropriate." SAC, Prayer for Relief (X).

Dated: July 18, 2022                                   Respectfully submitted,

                                                                    s/ Charles Nichols

                                                          CHARLES NICHOLS
                                                          Plaintiff-Appellant In Pro Per

20