14-55873

## IN THE UNITED STATES COURT OF APPEALS

### FOR THE NINTH CIRCUIT

---

**CHARLES NICHOLS,**

                                                        Plaintiff,

    **v.**

**GAVIN NEWSOM., in his official capacity as Governor of California, ROB BONTA, Attorney General, in his official capacity as Attorney General of California, CITY OF REDONDO BEACH, CITY OF REDONDO BEACH POLICE DEPARTMENT, CITY OF REDONDO BEACH POLICE CHIEF JOSEPH LEONARDI and DOES 1 to 10,**

                                                Defendants.

---

On Appeal from the United States District Court
for the Central District of California

No. 2:11-cv-09916-SJO-SS
The Honorable Suzanne H. Segal, Judge

**DEFENDANTS-APPELLEES'
SUPPLEMENTAL BRIEF**

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
P. PATTY LI
Supervising Deputy Attorney General
ROBERT L. MEYERHOFF
Deputy Attorney General
State Bar No. 298196
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013-1230
  Telephone: (213) 269-6177
  Fax: (916) 731-2144
  Email:  Robert.Meyerhoff@doj.ca.gov
*Attorneys for Defendants-Appellees
Gavin Newsom in his Official Capacity
as Governor of California and Rob
Bonta in his Official Capacity as
Attorney General of California*

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................ 1

Statement of the Case ................................................................ 4

Argument .................................................................................... 6

    I.    The Judgment Could Be Affirmed Because California's Open Carry Laws Are Consistent with *Bruen* ......................... 6

        A.    *Bruen* Alters the Legal Standard for Analyzing Second Amendment Claims ........................................... 6

        B.    This Court Could Affirm the Judgment Based on *Bruen* ................................................................................ 9

    II.    If the Court Does Not Affirm the District Court's Judgment, It Should Remand to the District Court for Further Proceedings .................................................................. 16

    III.    This Court Should Not Direct the District Court to Enter Judgment in Plaintiff's Favor ................................................. 18

Conclusion ................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

CASES

*Abed v. United States*
  No. 20-CF-223, 2022 WL 2720863 (D.C. July 14, 2022) ......................15

*Ecological Rts. Found. v. Pac. Gas & Elec. Co.*
  713 F.3d 502 (9th Cir. 2013) .....................................................................19

*Martinez v. Villanueva*
  No. 20-56233 (July 6, 2022) (9th Cir. Dkt. 45) .......................................18

*McDougall v. Cty. of Ventura*
  No. 20-56220 (June 29, 2022) (en banc) (9th Cir. Dkt. 55).....................18

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*
  142 S. Ct. 2111 (2022) .................................................................... *passim*

*Nichols v. Newsom, et al.*
  Case No. 14-55873 (9th Cir.) [Dkt. No. 128] ...........................................3

*Norman v. State*
  215 So. 3d 18 (Fla. 2017).........................................................................14

*Rupp v. Bonta*
  No. 19-56004 (June 28, 2022) (9th Cir. Dkt. 71).....................................18

CONSTITUTIONAL PROVISIONS

U.S. Const. Amendment II ..............................................................................8

## INTRODUCTION

The Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), fundamentally altered the legal standard for evaluating Second Amendment challenges to firearm regulations. Instead of the "two-step test" that this Court and most other federal courts of appeals had adopted for resolving those claims, *Bruen* held that courts must apply a standard "rooted in the Second Amendment's text, as informed by history," *id.* at 2127. Under this novel "text-and-history" standard, courts must determine whether "the Second Amendment's plain text" protects the conduct in which the plaintiff wishes to engage, and if it does, then decide whether the regulation "is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2129-2130.

In light of *Bruen*, the Attorney General has argued that vacatur and remand is appropriate in most pending Second Amendment challenges to California's firearm regulations, and the Court has disposed of several pending Second Amendment cases in that manner.[1] That approach may be appropriate in this case as well.

---

[1] *See* Pet. for Panel Rehearing or Rehearing En Banc, *Jones v. Bonta*, No. 20-56174 (July 25, 2022) (9th Cir. Dkt. 93); Stipulation to Vacate & Remand to District Ct., *Cupp v. Bonta*, No. 21-16809 (July 15, 2022) (9th Cir. Dkt. 22). This Court *sua sponte* remanded another appeal involving a Second Amendment challenge to portions of California's Assault Weapons Control Act (AWCA). *See Rupp v. Bonta*, No. 19-56004 (June 28, 2022) (9th Cir. Dkt. 71). And in another appeal challenging portions of the AWCA, this Court granted the Attorney General's motion to vacate the judgment and remand the case for further

(continued…)

But as explained below, certain unique aspects of this case also allow this Court to conclude that Plaintiff's Second Amendment challenge fails as a matter of law and affirm the district court's judgment under *Bruen*'s new analysis. Plaintiff's claim is that the Second Amendment guarantees him a right to publicly carry a firearm in a specific manner—*openly*. *See* Appellant's Opening Br. at 24-25. But *Bruen*'s review of the history of Anglo-American restrictions on public carry indicates that states and local governments may, consistent with the Second Amendment, regulate "*the manner* of public carry," so long as they generally allow "law-abiding citizens with ordinary self-defense needs" to carry firearms in public in *some* fashion—and there is no dispute that California permits otherwise-eligible individuals to carry *concealed* firearms in public. 142 S. Ct. at 2150. Indeed, the Supreme Court identified a number of state and colonial laws that regulated the manner in which law-abiding residents could carry, and expressly recognized those laws as part of our Nation's historical tradition of reasonable firearm regulation. *Id.* at 2144-47, 2155 n.30. That could provide a sufficient basis to affirm the district

---

proceedings consistent with *Bruen*. *See Miller v. Bonta*, No. 21-55608 (Aug. 1, 2022) (9th Cir. Dkt. 27). The Attorney General has acknowledged that *Bruen* directly controls the outcome in one other case involving a challenge to California's "good cause" requirement. *See Flanagan v. Bonta*, No. 18-55717 (July 8, 2022) (9th Cir. Dkt. 64).

court's judgment rejecting Plaintiff's Second Amendment claim on alternative grounds.[2]

If, however, this Court concludes that *Bruen* does not directly control the outcome of this case or prefers the district court to consider the issues in the first instance, then it should vacate the district court's judgment and remand to allow for additional proceedings in light of *Bruen*—consistent with what this Court has done in four other appeals raising Second Amendment claims that were pending when *Bruen* was decided.[3] Doing so would allow the parties to develop additional evidence about whether California's restrictions on open carry are "consistent with the Nation's historical tradition of firearm regulation," *Bruen*, 142 S Ct. at 2126, in light of the new guidance that *Bruen* provides about how to analyze that history in determining whether a modern firearms regulations comports with the Second Amendment.

---

[2] As requested in the Court's Order, this Supplemental Brief addresses only the impact of the Supreme Court's decision in *Bruen* on this case. *Nichols v. Newsom*, No. 14-55873 (July 11, 2022) (9th Cir. Dkt. 128). Defendants previously explained why Nichols' Fourth and Fourteenth Amendment, void-for-vagueness, and California constitutional claims fail, and why the district court properly dismissed the Governor on Eleventh Amendment grounds. *See* Answering Br. 43-57. *Bruen* does not affect the analysis of those claims.

[3] *See Rupp v. Bonta*, No. 19-56004 (June 28, 2022) (9th Cir. Dkt. 71); *McDougall v. Cty. of Ventura*, No. 20-56220 (June 29, 2022) (en banc) (9th Cir. Dkt. 55); *Martinez v. Villanueva*, No. 20-56233 (July 6, 2022) (9th Cir. Dkt. 45); *Miller v. Bonta*, No. 21-55608 (Aug. 1, 2022) (9th Cir. Dkt. 27).

By contrast, there is no basis for granting Plaintiff's request to reverse the district court's judgment on this record and "grant Plaintiff the relief he requested in his pleadings and briefs as well as [s]uch other and further relief as this Court may deem appropriate." Pl.'s Supp. Br., 20 (quotation omitted). As explained below, the analysis required by *Bruen* no more supports Plaintiff's Second Amendment claim than did the two-step test that applied when the district court ruled. Moreover, it would be especially inappropriate to enjoin state law on the basis of a newly applicable legal standard without providing the State the opportunity to develop a record tailored to that new standard. And finally, in his Supplemental Brief Plaintiff introduces new allegations, raises new arguments, challenges new (and not-yet-enacted) laws, and appears to seek new forms of relief. This Court should reject plaintiff's attempt to expand the issues on appeal beyond those he pleaded in the operative complaint and those that were actually pressed and passed upon below.

## STATEMENT OF THE CASE

This is an appeal from a final judgment. Plaintiff's original complaint challenged California's prohibition on openly carrying firearms on the basis of an asserted categorical right under the Second Amendment to openly carry firearms in public. *Nichols v. Newsom*, No. 2:11-cv-9916 (Oct. 30, 2011) (C.D. Cal. Dkt. 1). In early 2012, defendants filed several motions to dismiss the original complaint on

various grounds, and, in May 2012, the district court granted all the motions, with leave to amend in some respects. From those May 2012 rulings, Plaintiff now appeals: (1) the dismissal with prejudice of Governor Brown (who has been subsequently substituted by Governor Newsom), and (2) the dismissal with prejudice of Plaintiff's claims that California's open carry laws violate the California Constitution. 1-ER-110.

Plaintiff timely amended his complaint, which led to another round of dismissal motions and further rulings by the district court. 1-ER-5–60. Plaintiff then filed the operative complaint, the second amended complaint, in March 2013. 2-ER-216–56. The central issue raised in that pleading—and by this appeal—is whether a state or local government may prohibit Plaintiff and similarly situated individuals from "openly carrying a fully functional firearm (loaded and unloaded) for the purpose of self-defense (or for other lawful purposes) in non-sensitive public places." 2-ER-219.

In the district court, Plaintiff sought to invalidate California's open carry statutes (2-ER-24–46) and the City of Redondo Beach's open carry municipal ordinances (2-ER-250–51). Plaintiff moved for summary judgment, the Attorney General moved for judgment on the pleadings, and, in May 2014, the district court denied Plaintiff's motion and granted the Attorney General's motion. 1-ER-7, 9–11. In its dispositive rulings, the district court interpreted Plaintiff's complaint as

stating only facial challenges to California's open carry laws (1-ER-24) and held that restrictions on open carry did not burden the Second Amendment right as that right was historically understood (1-ER-28–29). The district court also granted judgment on the pleadings to Defendants as to Plaintiff's claims under the Fourth Amendment, the Fourteenth Amendment, and Plaintiff's vagueness claims. 1-ER-33–42.

In this appeal, Plaintiff challenges only the constitutionality of California's open carry laws, specifically California Penal Code sections 25850, 26350, and 26400. 2-ER-241–46.

## ARGUMENT

### I.  THE JUDGMENT COULD BE AFFIRMED BECAUSE CALIFORNIA'S OPEN CARRY LAWS ARE CONSISTENT WITH *BRUEN*

#### A.  *Bruen* Alters the Legal Standard for Analyzing Second Amendment Claims

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court considered the constitutionality of New York's requirement that individuals show "proper cause" as a condition of securing a license to carry a firearm in public. *Id.* at 2123. Before turning to the merits, the Court addressed the proper methodology for analyzing Second Amendment claims. It recognized that the lower courts had "coalesced around a 'two-step' framework for analyzing Second Amendment challenges" after its earlier decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742

(2010). *Id.* at 2125. That approach "combine[d] history with means-end scrutiny."
*Id.* At the first step of that approach, the government could "justify its regulation
by establishing that the challenged law regulates activity falling outside the scope
of the [Second Amendment] right as originally understood." *Id.* at 2126 (brackets
and quotation marks omitted). If that inquiry showed that the regulation did not
implicate conduct protected by the Second Amendment, lower courts would
uphold it without further analysis. *Id.*[4] Otherwise, courts would proceed to the
second step, which asked "how close[ly] the law c[ame] to the core of the Second
Amendment right and the severity of the law's burden on the right," applying
intermediate scrutiny unless the law severely burdened the "'core' Second
Amendment right" of self-defense of the home, in which case strict scrutiny
applied. *Id.*

In *Bruen*, the Supreme Court "decline[d] to adopt" this approach. *Id.* at 2126.
Instead, the Supreme Court announced a new framework for analyzing Second
Amendment claims. *Id.* at 2125-2126. In lieu of the "two-step test," *Bruen* held
that courts must apply a standard "rooted in the Second Amendment's text, as

---

[4] In many cases, this and other federal courts of appeals assumed without deciding
that a challenged regulation burdened conduct protected by the Second
Amendment at step one if the regulation satisfied the appropriate level of scrutiny
at step two. *See, e.g.*, *Duncan v. Bonta*, 19 F.4th 1087, 1102-1103 (9th Cir. 2021)
(en banc), *vacated and remanded*, ___ S. Ct. ___, 2022 WL 2347579 (U.S. June 30,
2022); *Pena v. Lindley*, 898 F.3d 969, 976 (9th Cir. 2018); *Woollard v. Gallagher*,
712 F.3d 865, 876 (4th Cir. 2013).

informed by history." *Id.* at 2127. Under that approach, courts must initially assess whether the "Second Amendment's plain text covers" the regulated conduct, *id*. at 2129-30—*i.e.*, whether the regulation at issue prevents any "people" from "keep[ing]" or "bear[ing]" "Arms," U.S. Const. amend. II. If the answer to that question is yes, then the burden shifts to the government to show that the challenged law is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130.

*Bruen* provides that, in some cases, this historical inquiry will be "fairly straightforward," such as when a challenged law addresses a "general societal problem that has persisted since the 18th century." *Bruen*, 142 S. Ct. at 2131. But in others—particularly those where the challenged laws address "unprecedented societal concerns or dramatic technological changes"—this historical analysis requires a "more nuanced approach." *Id.* at 2132. Governments can justify regulations of that sort by "reasoning by analogy," a process that requires the government to show that its regulation is "'relevantly similar'" to a "well-established and representative historical analogue." *Id.* at 2333 (emphasis omitted). While the Court did not "provide an exhaustive survey of the features that render regulations relevantly similar under the Second Amendment," it did identify "two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense," *id.* at 2132-33, as "'*central*' considerations," *id.* at 2133 (quoting

*McDonald*, 561 U.S. at 767). Under *Bruen*, a modern regulation is consistent with the Second Amendment if it "impose[s] a comparable burden on the right of armed self-defense" as its historical predecessors, and the modern and historical laws are "comparably justified." *Id.* at 2133.

### B. This Court Could Affirm the Judgment Based on *Bruen*

Although *Bruen* dramatically changed the way Second Amendment claims are analyzed, it also provides a basis for affirming the district court's judgment in this case. In particular, *Bruen* indicates that so long as a State allows law-abiding residents to carry firearms in public, it may reasonably regulate the manner in which they do so. *Bruen*'s understanding of the Anglo-American history of public carry regulations thus forecloses Plaintiff's claim that the Second Amendment guarantees him an absolute right to carry *openly*. This Court could affirm the judgment on that basis. *See Thompson v. Paul*, 547 F.3d 1055, 1058-59 (9th Cir. 2008) (court may affirm on any basis fairly supported by the record).

1. Similar to California, *see generally Peruta v. Cty. of San Diego*, 919, 925-927 (9th Cir. 2016) (en banc), New York prohibits most people from carrying firearms in most public places unless they obtain a license, *Bruen*, 142 S. Ct. at 2123. Before *Bruen*, to get a license in New York applicants had to meet certain criteria, including that "'proper cause exist[ed]' to issue" a license. *Id.* New York law defined proper cause as a showing that an applicant had a "special need for

self-protection distinguishable from that of the general community." *Id.* This was a "demanding" standard, *id.* at 2123, that made it "virtually impossible for most New Yorkers" to secure a license, *id.* at 2156 (Alito, J., concurring).

In *Bruen*, the Supreme Court held that the "proper cause" requirement violated the Second Amendment. 142 S. Ct. at 2156. Applying its new text-and-history approach, the Court had "little difficulty" concluding that the "plain text of the Second Amendment protect[ed]" the conduct that the plaintiffs wished to engage in—"carrying handguns publicly for self-defense." *Id.* at 2134. The Court then conducted a survey of "the Anglo-American history of public carry," and concluded that this history showed that the Second Amendment guaranteed a right to bear "commonly used arms" in public, "subject to certain reasonable, well-defined restrictions," which had not historically included a requirement that "law-abiding, responsible citizens … 'demonstrate a special need for self-protection distinguishable from that of the general community' in order to carry arms in public.'" *Id.* at 2156. As such, the Court held that New York failed to meet its burden "to identify an American tradition justifying . . . [its] proper-cause requirement." *Bruen*, 142 S. Ct. at 2130.

Although they were not directly before it, the Court observed that six other states–including California–have adopted "analogues to the 'proper cause' standard," *id.* at 2124; *see also id.* at 2161 (Kavanaugh, J., concurring) (similar),

which would presumably be unsustainable under the standard announced by *Bruen*.
Notably, however, plaintiff does not challenge California's "good cause" standard
or its restrictions on public carry *generally*; rather, he challenges only California's
ban on *openly* carrying firearms. *See* Pls.' Supp. Br. 11 ("[T]his case is a pure
Open Carry case."); 1-ER-17 ("Plaintiff has limited his suit solely to laws
infringing on the 'right' to open carry . . . .").

2. Accordingly, what is most relevant to this appeal is *Bruen*'s discussion of
the limits that States may continue to impose on the manner in which firearms are
carried in public. Although the Court invalidated New York's "proper cause"
requirement, its analysis demonstrates that, throughout this Nation's history, States
have been allowed to prohibit certain methods of carry so long as they do not bar
public carry altogether. The Court rejected New York's assertion that public carry
regulations adopted in antebellum America supported the proper cause
requirement, reasoning that these laws demonstrated only "that the *manner* of
public carry was subject to reasonable regulation." *Bruen*, 142 S. Ct. at 2150.
Indeed, the Court identified historical restrictions on the manner of carry, *i.e.*,
either concealed or open, as part of the American tradition of firearms regulation.

In particular, the Court reviewed several cases from the antebellum era
considering laws regulating the manner of carry and concluded that those decisions
"agreed that concealed-carry prohibitions were constitutional only if they did not

11

similarly prohibit *open* carry." *Id.* at 2146 (citing cases from Alabama, Louisiana and Kentucky). The Court also noted a colonial New Jersey law that "prohibited only the *concealed* carry of pocket pistols . . . [and] presumably did not by its terms touch the open carry of larger [weapons]." *Id.* at 2144. These cases, and the state laws they considered, reflected "a consensus view that States could not *altogether prohibit* the public carry of arms protected by the Second Amendment or state analogues," *id*. at 2147 (emphasis added), but that reasonable restrictions on the *manner* of carry were permissible. Indeed, the Court noted that state courts after the Civil War "continued the antebellum tradition of upholding concealed carry regimes that seemingly provided for open carry." *Id.* at 2155 n.30.

Elsewhere, the Court held that New York's proper cause requirement was not supported by English and early American laws that prohibited the "bearing of arms in a way that spreads 'fear' or 'terror' among the people." *Bruen*, 142 S. Ct. at 2145. These laws demonstrated only that States could prohibit the carrying of "deadly weapons in a *manner* likely to terrorize others." *Id.* at 2150. Similarly, the Court held that "surety statutes" adopted by several States in the mid-19th century did not support New York's proper cause restriction. *Id.* at 2148-2150. Those statutes required individuals who were "reasonably likely to 'breach the peace'" and could not "prove a special need for self-defense" to post a bond before carrying in public. *Id.* at 2148. The Court explained that these statutes were

distinguishable because they were "not *bans* on public carry," *id.*, but instead provided only "financial incentives for responsible arms carrying," *id.* at 2150.

These aspects of *Bruen* foreclose Plaintiff's Second Amendment claim. Most Californians who obtain a license—including those who, like Plaintiff, live or work in Los Angeles County—may carry firearms in most public places, but must carry concealed. *See* Cal. Penal Code §§ 21650(b)(1), 26155(b)(1).[5] Because concealed carry in most public places is an option for those Californians who obtain a license, California's open carry laws do not function as a ban on public carry.

To be sure, *Bruen* does not expressly pass upon state prohibitions on open carry, because that question was not before the Court and the statutory scheme challenged in that case was the regulation of concealed carry. *See Bruen*, 142 S. Ct. at 2123. But the clear import of *Bruen* is that the Second Amendment merely requires States to allow qualified, law-abiding residents to carry firearms in *some* manner *publicly*. *See, e.g., id*. at 2122 (holding that "ordinary, law-abiding citizens have a . . . right to carry handguns publicly for their self-defense"); *id*. (finding a Second Amendment violation because "New York issues public-carry licenses only when an applicant demonstrates a special need for self-defense"); *id*. at 2134

---

[5] In counties with less than 200,000 people, local licensing authorities have the option of issuing a license to residents that allows them to carry openly "only in that county." Cal. Penal Code §§ 26150(b)(2), 26155(b)(2).

(finding that the "the plain text of the Second Amendment protects [plaintiffs'] proposed course of conduct—carrying handguns publicly for self-defense"). Nothing in *Bruen* suggests that the right to carry handguns publicly can be satisfied only through open carry. On the contrary, *Bruen* shows that, throughout our Nation's history, "*the manner* of public carry was subject to reasonable regulation," *id.* at 2150, including regulation of open or concealed carry, *see supra* p. 11-13.

The conclusion that the Second Amendment does not require States to accommodate the right to public carry via open carry is consistent with decisions that both pre- and post-date *Bruen*. In *Norman v. State*, 215 So. 3d 18 (Fla. 2017), Florida's highest court upheld the state's open carry restrictions against federal (and state) constitutional challenges. *Id*. at 22. The Court applied the now-defunct two-step test. *See id.* at 28-41. But its reasoning is consistent with *Bruen*'s emphasis that so long as the right to public carry is accommodated in some manner, the legislature may choose between open and concealed carry. The Florida Supreme Court explained that the open carry restrictions did not violate the Second Amendment because they did "not diminish an individual's ability to carry a firearm for self-defense, so long as the firearm is carried in a concealed manner and the individual has received a concealed-carry license." *Id*. at 27–28; *see also id.* at 37 ("Significantly, unlike the laws at issue in *Heller* and *McDonald*, which

completely banned the possession of handguns in one's home, Florida's Open Carry Law regulates only <u>how</u> firearms are borne in public.").

Consistent with *Norman*, the first and thus far only appellate court that to comment on *Bruen*'s application to open carry regulations noted that "nothing in the [*Bruen*] opinion implies that a State must allow open carry." *Abed v. United States*, ___ A.3d ____, 2022 WL 2720863, at *11 n.27 (D.C. July 14, 2022). Although the defendant in that case did not directly challenge the constitutionality of a law prohibiting open carry, the court read *Bruen* as merely "suggest[ing] that a State would be required to allow open-carry of a handgun for self-defense *if* it were to broadly prohibit concealed carry." *Id*. (emphasis added).

In sum, *Bruen* makes clear that a State may reasonably regulate the manner of public carry—including by restricting open carry—so long as it provides some manner, *e.g.*, concealed carry, in which qualified, law-abiding persons may publicly carry firearms. Accordingly, this Court could conclude that *Bruen* directly forecloses Plaintiff's claim that he has an absolute right under the Second Amendment to carry firearms openly in public.[6]

---

[6] The California Legislature is currently considering a bill that would amend California's public carry law in light of *Bruen*. *See* S.B. 918, 2021-2022 Reg. Sess. (Cal. 2022), *available at* https://leginfo.legislature.ca.gov/faces/ billTextClient.xhtml?bill_id=202120220SB918. Relevant here, the bill would formally repeal California's "good cause" requirement and would replace the "good moral character" requirement with a requirement that an applicant be a

(continued…)

## II.    IF THE COURT DOES NOT AFFIRM THE DISTRICT COURT'S JUDGMENT, IT SHOULD REMAND TO THE DISTRICT COURT FOR FURTHER PROCEEDINGS

If this Court concludes that *Bruen* does not directly foreclose Plaintiffs' claim or that the district court should consider the issues in the first instance, then it should vacate the district court's judgment and remand this case for further proceedings consistent with *Bruen.* Among other things, remand would allow development of the record on the specific question of whether California's restrictions on open carry are "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. Although *Bruen* recognized that step one of the now-defunct two-step framework—asking whether the challenged law regulates conduct within the scope of the Second Amendment, as originally understood—was "broadly consistent with *Heller*," it also provided important new guidance about how to conduct the historical inquiry. *Id.* at 2127. For example, *Bruen* makes clear that governments are not required to identify a "historical *twin*," only a "well-established and representative historical *analogue*." *Id.* at 2133. And to justify its restriction as a historical matter, California must show that the regulation passes constitutional muster because it imposes a "burden on the right of

---

"qualified" person, meaning that they do not pose an unreasonable danger to themselves or others. But Senate Bill 918 would not materially change California's open carry restrictions. Because Plaintiff is seeking a declaration that the Second Amendment allows him to carry firearms in most public places, this bill—if enacted—would not moot this appeal.

armed self-defense" that is "comparable" to the relevant historical analogues and is "comparably justified." *Id.*

Neither the parties nor the district court employed this sort of reasoning by analogy. *Bruen* also left open other issues, including "whether courts should primarily rely on the prevailing understanding of an individual right when the Fourteenth Amendment was ratified in 1868 when defining its scope" or look to the "public understanding of the right to keep and bear arms" when the Second Amendment was ratified in 1791. *Id.* at 2138. More broadly, the Court "d[id] not resolve" the "manner and circumstances in which postratification practice may bear on the original meaning of the Constitution." *Id.* at 2162-2163 (Barrett, J., concurring). And the Court recognized that the historical analysis that *Bruen* requires "can be difficult," and sometimes requires judges to "resolv[e] threshold questions" and "mak[e] nuanced judgments about which evidence to consult and how to interpret it." *Id.* at 2130 (quoting *McDonald*, 561 U.S. at 803-804 (Scalia, J., concurring)). It also directed lower courts to employ "various evidentiary principles and default rules" when resolving historical questions, including "the principle of party presentation." *Id.* at 2130 n.6.

In light of this new guidance, if this Court concludes that *Bruen* does not directly foreclose Plaintiff's claim, vacatur and remand with respect to the Second Amendment claim would be the most appropriate disposition of this appeal.

Returning this case to the district court would allow that court to answer the questions left open by *Bruen* in the first instance on the basis of a record developed in response to the historical inquiry that *Bruen* requires. This approach would also be consistent with the Court's orders vacating district court judgments and remanding four other appeals raising Second Amendment claims (albeit none of which related to the public carry of firearms) that were pending when *Bruen* was decided—although those cases, unlike this one, were not readily resolvable as a matter of law under *Bruen*. *See Rupp v. Bonta*, No. 19-56004 (June 28, 2022) (9th Cir. Dkt. 71); *McDougall v. Cty. of Ventura*, No. 20-56220 (June 29, 2022) (en banc) (9th Cir. Dkt. 55); *Martinez v. Villanueva*, No. 20-56233 (July 6, 2022) (9th Cir. Dkt. 45); *Miller v. Bonta*, No. 21-55608 (Aug. 1, 2022) (9th Cir. Dkt. 27).

## III.  THIS COURT SHOULD NOT DIRECT THE DISTRICT COURT TO ENTER JUDGMENT IN PLAINTIFF'S FAVOR

Finally, there is no basis for this Court to direct the district court to enter judgment in Plaintiff's favor. *See* Pl.s' Supp. Br. 20 (asking this Court to "grant Plaintiff the relief he requested in his pleadings and briefs"). As an initial matter, as explained above, the standard announced by the *Bruen* decision does not lead to a different result with respect to Plaintiff's argument that the Second Amendment guarantees him a right to carry firearms in public openly. Moreover, this Court should not order the district court to enter judgment in Plaintiff's favor because it is unclear what relief he actually seeks. In the district court and before this Court,

Plaintiff suggested that he was only challenging California's statutes to the extent that those statutes prohibited him from openly carrying a firearm. *See* 1-ER-21; Appellant's Opening Br. at 33. But now, Plaintiff argues that "[n]o law within the scope of Plaintiff's SAC survives" post-*Bruen*. Pl.'s Supp. Br., 19. Plaintiff also appears to broaden his challenge to include an attack on the Attorney General's Legal Alert—which he argues advised issuing authorities to withhold issuance of *concealed* carry licenses "for a variety of reasons such as engaging in constitutionally protected speech, for arrests in the previous five years (regardless of disposition) or for convictions in the previous seven years that did not result in an individual being prohibited from possessing firearms." *Id*. at 1. Plaintiff also seeks to challenge a bill—Senate Bill 918 (discussed above, *see supra* p. 15 n.6)— that, as of the date of this writing, has not yet been enacted, *id*. at 2; the constitutionality of requiring Plaintiff to secure a permit at all, *id*. at 8; and the licensing fees and training requirements that California imposes to obtain a concealed carry license, *id*. at 18-19.

There is no basis for reaching these issues. Appellate courts do not consider allegations or claims raised for the first time on appeal and inconsistent with the complaint. *See Ecological Rts. Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 511 (9th Cir. 2013) (plaintiff "may not try to amend its complaint through its arguments on appeal") (brackets omitted). In this case, Plaintiff makes new

allegations, raises new claims and seeks new relief, none of which was raised below or during the course of regular briefing in this Court. These allegations, claims and requests for relief should not be considered now.

## CONCLUSION

The Court should affirm the district court's judgment. In the alternative, it should vacate the district court's order granting judgment in the Attorney General's favor with respect to the Second Amendment claim, affirm the judgment with respect to Plaintiffs' other claims, and remand this case for further proceedings.

Dated: August 8, 2022               Respectfully submitted,

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
P. PATTY LI
Supervising Deputy Attorney General

/s/ Robert L. Meyerhoff
ROBERT L. MEYERHOFF
Deputy Attorney General
State Bar No. 298196
  300 South Spring Street, Suite 1702
  Los Angeles, CA 90013-1230
  Telephone: (213) 269-6177
  Fax: (916) 731-2144
  Email: Robert.Meyerhoff@doj.ca.gov
*Attorneys for Defendants-Appellees Gavin Newsom in his Official Capacity as Governor of California and Rob Bonta in his Official Capacity as Attorney General of California*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Defendants-Appellees' Supplemental Brief in Response to the Court's July 11, 2022 Order complies with the page limit designated by court order, dated July 11, 2022, because it is 20 pages in length. 9th Cir. Dkt. 128. This document complies with the typeface and the type style requirements of Federal Rule of Appellate Procedure 32 because it has been prepared in a proportionally spaced typeface using 14-point font.

Dated: August 8, 2022 _s/ Robert L. Meyerhoff_

# CERTIFICATE OF SERVICE

Case Name:  __*Nichols v. Newsom, et al.*__          No.  __14-55873__

I hereby certify that on <u>August 8, 2022,</u> I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

### DEFENDANTS-APPELLEES' SUPPLEMENTAL BRIEF

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>August 8, 2022</u>, at Los Angeles, California.


| Robert Leslie Meyerhoff | *Robert M* |
|:---:|:---:|
| Declarant | Signature |